Thomas F. Smegal, Jr. (Bar No. 34,819)
One Sansome Street, 35th Floor
San Francisco, CA 94104
Telephone: (415) 217-8383
Facsimile: (415) 399-5093
Email: tomsmegal@smegallaw.com

Lee L. Kaplan (Texas Bar No. 11094400)
Jeffrey A. Potts (Texas Bar No. 00784781)
Raj Duvvuri (Texas Bar No. 24054185)
(admitted *pro hac vice*)
700 Louisiana Street, Suite 2300
Houston, TX 77002
Telephone: (713) 221-2300
Facsimile: (713) 221-2320
Email: lkaplan@skv.com

Jay D. Ellwanger (Texas Bar No. 24036522)
P.O. Box 201690
Austin, Texas 78720
Telephone: (512) 681-4060
Facsimile: (512) 628-3410
Email: jellwanger@dpelaw.com

Attorneys for Defendants L. Daniel Egger, Software
Rights Archive, LLC, and Site Technologies, Inc.

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

**GOOGLE INC., AOL LLC, YAHOO!
INC., IAC SEARCH & MEDIA, INC., and
LYCOS, INC.**

        **Plaintiffs,**

v.

**L. DANIEL EGGER, SOFTWARE
RIGHTS ARCHIVE, LLC, and SITE
TECHNOLOGIES, INC.**

        **Defendants.**

Case No. CV08-03172RMW

**DEFENDANTS' MOTION TO DISMISS,
TRANSFER, OR STAY UNDER THE
FIRST-TO-FILE RULE, UNDER RULE
12(B)(2) FOR LACK OF PERSONAL
JURISDICTION, AND UNDER RULE
12(B)(1) FOR LACK OF SUBJECT
MATTER JURISDICTION**

Date of Hearing: January 23, 2009

Time of Hearing: 10:30 am

Dockets.Justia.com

# TABLE OF CONTENTS

TABLE OF CONTENTS................................................................................................ii

TABLE OF AUTHORITIES ......................................................................................iv

SUMMARY OF ARGUMENT ......................................................................................1

ARGUMENT AND AUTHORITIES..........................................................................3

I.   This Court should dismiss this case under the first-to-file rule, because a
     virtually identical case has been pending in the Eastern District of Texas since
     November 2007............................................................................................................3

     A.   Facts ..................................................................................................................3

     B.   Argument and Authorities.............................................................................4

          1.   All three threshold factors apply here, rendering the first-to-file
               rule *prima facie* applicable.................................................................5

          2.   None of the exceptions to the first-to-file rule applies in this
               case..............................................................................................7

     C.   Conclusion .........................................................................................................9

II.  This Court should dismiss Plaintiffs' claims against SRA and Daniel Egger
     under Rule 12(b)(2), because it lacks personal jurisdiction over them...............10

     A.   Facts ................................................................................................................10

          1.   SRA's contacts with California. ........................................................10

          2.   Daniel Egger's contacts with California. .........................................10

     B.   Argument and Authorities.............................................................................10

          1.   This Court lacks general jurisdiction over SRA and Egger,
               because neither party has even remotely established a
               "substantial and continuous presence" in California. ...............11

          2.   This Court lacks specific jurisdiction over SRA and Egger,
               because neither party made pre-suit accusations of patent
               infringement against Plaintiffs or engaged in other required
               patent-related activities in California.........................................14

     C.   Conclusion .........................................................................................................19

III. No case or controversy exists between Plaintiffs and Egger or Site
     Technologies, because Egger and Site Technologies neither own the patents-
     in-suit nor have expressed any intention to assert that Plaintiffs are infringing
     the patents. ..........................................................................................................20

ii

| | | |
|---|---|---|
| A. | "Case or controversy" standards | 20 |
| B. | No case or controversy exists between Plaintiffs and Egger. | 21 |
| C. | No case or controversy exists between Plaintiffs and Site Technologies. | 21 |
| CONCLUSION | | 22 |

DEFENDANTS' MOTION TO DISMISS, TRANSFER, OR STAY UNDER
THE FIRST-TO-FILE RULE AND FOR LACK OF PERSONAL JURISDICTION
CASE NO. CV08-03172

# TABLE OF AUTHORITIES

## Cases

*Akro Corp. v. Luker*, 45 F.3d 1541, 1546 (Fed. Cir. 1995) ............................... 14

*Alibaba.com, Inc. v. Litecubes, Inc.*, 2004 WL 443712 (N.D. Cal. Mar. 8, 2004) ................................................................................................................... 7

*Alioto v. Hoiles*, 2004 WL 2326367, at *5 (N.D. Cal. Oct. 12, 2004) ................... 6

*Amoco Egypt Oil Co. v. Leonis Navig'n Co.*, 1 F.3d 848, 851 n.3 (9th Cir. 1993) ................................................................................................................... 12

*Benitec Australia, Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1344 (Fed. Cir. 2007) ................................................................................................................... 20

*Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1366 (Fed. Cir. 2006) .............................................................................................. 14

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) ............................. 18

*Centocor, Inc. v. MedImmune, Inc.*, 2002 WL 31465299, at *3 (N.D. Cal. Oct. 22, 2002) ..................................................................................................... 6

*Church of Scientology of Cal. v. U.S. Dept. of Army*, 611 F.2d 738, 750 (9th Cir. 1979) ..................................................................................................... 4

*Dainippon Screen Mfg. Co., Ltd. v. CFMT, Inc.*, 142 F.3d 1266, 1271 (Fed. Cir. 1998) .............................................................................................. 15

*Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.*, 297 F.3d 1343, 1352 (Fed. Cir. 2002) ...................................................................... 14

*Dist. Council 37 Health & Sec. Plan v. McKesson Corp.*, 2006 WL 1305235, at *1 (N.D. Cal. May 11, 2006) ......................................................... 6

*Electronics for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1352 (Fed. Cir. 2003) ................................................................................................................. 15

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 411 (1984) ............................................................................................................ 12, 13

*Humphrey v. Snap Sys., Inc.*, 1993 WL 13556390, at *2 (N.D. Cal. Aug. 6, 1993) ..................................................................................................................... 5

*In re Com21, Inc.*, 357 B.R. 802, 807 (Bankr. N.D. Cal. 2006). ................... 6, 14

*Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1361 (Fed. Cir. 2001) ...................... 15

*Inherent.com v. Martindale-Hubbell*, 420 F. Supp. 2d 1093, 1097 (N.D. Cal. 2006) ............................................................................................................. 7

*Long v. Postorivo*, 2007 WL 2990457, at *1 (N.D. Cal. Oct. 11, 2007) ............ 18

iv

DEFENDANTS' MOTION TO DISMISS, TRANSFER, OR STAY UNDER
THE FIRST-TO-FILE RULE AND FOR LACK OF PERSONAL JURISDICTION
CASE NO. CV08-03172

*LSI Indus. Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 (Fed. Cir. 2000) .......................................................................................................... 11

*Octel Commc'ns Corp. v. Theis Research, Inc.*, 1993 WL 172087, at *2 (N.D. Cal. May 17, 1993. ............................................................................ 4

*Pacesetter Systems, Inc. v. Medtronic, Inc.*, 678 F.2d 93 (9th Cir. 1982) .................. 8, 9

*Pennington Seed, Inc. v. Produce Exchange No. 299*, 457 F.3d 1334, 1344 (Fed. Cir. 2006) ................................................................................................ 11

*Pharmachemie B.V. v. Pharmacia S.p.A.*, 934 F. Supp. 484, 489 (D. Mass. 1996) ........................................................................................................... 21

*Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1335 (Fed. Cir. 2008). .......................................................................................................... 20

*Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1357 (Fed. Cir. 1998) ...................................................................................... 15

*Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1200 (Fed. Cir. 2003) .................................................................................................... 11, 15

*Trintec Indus., Inc. v. Pedre Promotional Products, Inc.*, 395 F.3d 1275, 1279 (Fed. Cir. 2005) ...................................................................................... 11

*Viam Corp. v. Iowa Export-Import Trading Co.*, 84 F.3d 424, 426 (Fed. Cir. 1996) ................................................................................................... 14

*Ward v. Follett Corp.*, 158 F.R.D. 645, 649 (N.D. Cal. 1994) ............................... 8

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980) .................... 16

v

Defendants L. Daniel Egger, Software Rights Archive, LLC ("SRA"), and Site Technologies, Inc. file this motion to dismiss, transfer, or stay under the first-to-file rule, under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, and under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. This motion is scheduled to be heard on January 23, 2009 at 10:30 am.

For the reasons asserted herein, Defendants request this Court to dismiss this case. In the alternative, Defendants request this Court to transfer this case to the Eastern District of Texas or to stay this case until Case No. 2:07-cv-00511-TJW-CE, currently pending in the Eastern District of Texas, has been resolved.

## SUMMARY OF ARGUMENT

This lawsuit suffers from three fatal defects:

(1)     The first-to-file rule requires that this case be dismissed, transferred, or stayed. This action is merely duplicative of a first-filed action in the Eastern District of Texas. In November 2007, SRA filed suit in the Eastern District of Texas alleging that Google Inc., AOL LLC, Yahoo! Inc., IAC Search & Media, Inc., and Lycos, Inc. infringed U.S. Patent Nos. 5,544,352, 5,832,494, and 6,233,571. In July 2008, Google, AOL, Yahoo!, IAC, and Lycos— the same parties that are defendants in the Texas action—filed this action in the Northern District of California alleging that they did not infringe the '352, '494, and '571 patents—the same patents at issue in the Texas action. The issues in the Eastern District of Texas and in this case are the same standard issues in patent litigation—infringement, invalidity, laches, unclean hands, ownership of the patents, and others. The case is brought against SRA—the plaintiff in the Texas action—and against two additional parties who are not real parties in interest.[1]

---

[1] Plaintiffs have added the additional parties—Daniel Egger and Site Technologies, Inc.—in an apparent attempt to create a non-identity of the parties and thereby provide an argument for keeping this case in California. In truth, Plaintiffs admit in their complaint, and Defendants agree, that Egger does not own the patents-in-suit and therefore is not a real party in interest. The parties disagree whether Site Technologies is a real party in interest, but Plaintiffs have already raised that issue in the Texas action, with a pending motion that will be submitted for ruling in November 2008.

1

(2)    This Court lacks personal jurisdiction over SRA and Egger. Courts have general jurisdiction only over defendants who maintain a "substantial and continuous presence"—as opposed to "sporadic contacts"—with the forum state. Here, SRA had no pre-suit contacts with California whatsoever, and any contacts SRA had after filing the Texas action occurred only in connection with that case and only because Google, Yahoo!, and IAC happen to be domiciled in California. Plaintiffs have alleged no continuing contacts between Egger and California, but instead, only four sporadic contacts—three isolated transactions and the filing of the Texas action (which actually was filed by SRA, not Egger). In patent declaratory judgment actions, courts possess specific jurisdiction over defendants only where the defendants (1) contacted the forum state plaintiffs prior to the suit to allege patent infringement; and (2) in addition, engaged in "other patent-related activities" in the forum state, such as attempting extra-judicial enforcement of the patents in the forum state, granting an exclusive license of the patented technology in the forum state, selling the patented product in the forum state, or hiring a patent attorney in the forum state. Here, there is no allegation that SRA or Egger ever contacted Plaintiffs in California to allege patent infringement. Further, there is no allegation that SRA or Egger engaged in any of the "other activities" required to give rise to specific jurisdiction.

(3)    This Court lacks subject matter jurisdiction over Plaintiffs' claims against Egger and Site Technologies. Courts possess subject matter jurisdiction over claims only when a case or controversy exists between the parties. In patent declaratory judgment actions, this requires that the defendants possess an "underlying legal cause of action" against the plaintiffs and that the defendants have, by "affirmative acts," shown that they "believe or plan to assert that the plaintiffs' product infringes their patents." Here, neither Egger nor Site Technologies even owns the patents-in-suit. Further, there is no evidence that either party believes or plans to assert infringement by Plaintiffs. Indeed, Site Technologies has repeatedly disclaimed any interest in the patents-in-suit or any intention to enforce the patent rights.

Therefore, for multiple reasons this case should be dismissed. Alternatively, under the first-to-file rule this case should be transferred to the Eastern District of Texas, or, at a minimum, stayed in favor of the Texas action.

## ARGUMENT AND AUTHORITIES

**I.     This Court should dismiss this case under the first-to-file rule, because a virtually identical case has been pending in the Eastern District of Texas since November 2007.**

This case should be dismissed because this is a second-filed action that involves the same core parties and presents the same core issues as an action that has been pending in the Eastern District of Texas since November 2007.

### A.     Facts

SRA owns the patents-in-suit. On November 21, 2007, it filed a lawsuit in the Eastern District of Texas against Google, AOL, Yahoo!, IAC, and Lycos—the same parties that are Plaintiffs in this case—alleging that they were infringing its patents. (*Tex. Compl.*, ¶¶ 1-6.) The Eastern District of Texas has an extensive patent litigation docket, has extensive patent expertise, is centrally located among the parties, whose principal offices range in location from Massachusetts to Virginia to Texas to California, and is located near SRA's counsel. SRA served each of the infringing defendants promptly and agreed to extensions of the answer dates. In their answers, filed in early 2008, the defendants asserted various affirmative defenses: non-infringement, invalidity, laches, unclean hands, estoppel, waiver, prosecution history estoppel, statutory damage limitations, and others. (*See, e.g., Google Answer*, ¶¶ 26-32.) The defendants also counterclaimed for declaratory relief on the issues of non-infringement and invalidity. (*See, e.g., Google Answer*, ¶¶ 42-43.) Further, the defendants reserved the right to plead further affirmative defenses. (*See, e.g., Google Answer*, ¶ 32.) Subsequently, in a motion to dismiss filed in July 2008, the defendants also claimed that SRA lacked ownership over the patents-in-suit. (*Defs.' Mot. to Dismiss*.) SRA has responded to that motion. (*Pl.'s Opp.*)

In July 2008—over seven months after SRA filed the original suit—all five of the Eastern District of Texas defendants filed this suit against SRA. (*Cal. Compl.*) Included in the suit also

were Daniel Egger and Site Technologies, former owners of the patents who now have no interest whatsoever either in the patents or in this litigation, as both have testified and as Plaintiffs admit with respect to Egger. (*Cal. Compl.*, ¶¶ 7, 9, 19; *Ait Dec.* ¶ 5.) The defendants—now "Plaintiffs" in this suit—pled in their California complaint "claims for relief" that are virtually identical to the defenses and counterclaims they asserted in the Texas action: non-infringement, invalidity, laches, unclean hands, lack of ownership, expiration of patent, and unenforceability. (*Cal. Compl.*, ¶¶ 39-73.)

### B.    Argument and Authorities

This case should be dismissed under the first-to-file rule. As this Court has explained, "The 'first to file' rule allows a district court to transfer, stay or dismiss an action when a similar complaint has been filed in another federal court." *Z-Line Designs, Inc. v. Bell'O Int'l LLC*, 218 F.R.D. 663, 665 (N.D. Cal. 2003). Under the first-to-file rule, the court first examines three threshold factors to determine whether the rule applies: "(1) the chronology of the two actions; (2) the similarity of the parties, and (3) the similarity of the issues." *Id.* Then, "[e]ven if the threshold factors of the first to file rule are met, . . . [d]istrict courts can, in the exercise of their discretion, dispense with the rule for reasons of equity." *Id* Specifically, "[c]ircumstances under which the first to file rule will not be applied include bad faith, anticipatory suit, and forum shopping. . . . A court may also refuse to apply the first to file rule if the balance of convenience weighs in favor of the later-filed action." *Id.*

As this Court has long recognized, "[t]he general rule is that as a principle of sound judicial administration, the first suit should have priority, absent special circumstances." *Octel Commc'ns Corp. v. Theis Research, Inc.*, 1993 WL 172087, at *2 (N.D. Cal. May 17, 1993). This is because "[t]he purpose of the comity principle is of paramount importance. The doctrine is designed to avoid placing an unnecessary burden on the federal judiciary, and to avoid the embarrassment of conflicting judgments." *Church of Scientology of Cal. v. U.S. Dept. of Army*, 611 F.2d 738, 750 (9th Cir. 1979). Indeed, "[p]articularly in this time of increasingly crowded federal dockets, it is imperative to avoid concurrent litigation in multiple forums." *Humphrey v.*

4

DEFENDANTS' MOTION TO DISMISS, TRANSFER, OR STAY UNDER
THE FIRST-TO-FILE RULE AND FOR LACK OF PERSONAL JURISDICTION
CASE NO. CV08-03172

*Snap Sys., Inc.*, 1993 WL 13556390, at *2 (N.D. Cal. Aug. 6, 1993). Thus, "[t]he first to file rule should not be disregarded lightly." *Z-Line*, 218 F.R.D. at 665 (internal quotation marks omitted).

Here, all three prerequisites of the first-to-file rule apply. Further, none of the special circumstances giving rise to an exception to the rule applies. Therefore, this case should be dismissed. Alternatively, this case should be transferred to the Eastern District of Texas or, at a minimum, stayed in favor of the Texas action.

> 1.  All three threshold factors apply here, rendering the first-to-file rule *prima facie* applicable.

All three threshold factors apply here, rendering the first-to-file rule *prima facie* applicable. First, the requirement that the first-filed suit chronologically precede the second-filed suit is satisfied here. The Texas action was filed on November 21, 2007, while this action was filed on July 1, 2008.

Second, the requirement that the parties in the two suits be similar is satisfied. Here, the parties are virtually identical. The five plaintiffs here—Google, AOL, Yahoo!, IAC, and Lycos—are exactly the five defendants in the Texas action. And the plaintiff in the Texas action—SRA, the true party in interest—is a defendant here. The only difference among the parties in the two suits is that Plaintiffs in this action have added two defendants—Daniel Egger and Site Technologies—who are not parties to the Texas action. This difference does not affect the applicability of the first-to-file rule. For one thing, as argued in detail in later sections of this brief, Egger and Site Technologies are not proper parties to this action. This court lacks personal jurisdiction over Egger, because Egger has had insufficient contacts with California, and it lacks subject matter jurisdiction over Plaintiffs' claims against both Egger and Site Technologies, because neither of those parties owns any interest in the patents. Furthermore, Plaintiffs' only basis for naming Site Technologies as a party to this suit is Plaintiffs' contention that Site Technologies was the true owner of the patents-in-suit at the time the complaint was filed. Yet this disputed issue is already being litigated in the Texas action. In fact, discovery and briefing regarding the issue are nearly complete, and the issue will be presented for decision in a matter

1  of days.[2] Thus, the presence of these two additional defendants adds no factual or legal issues to
2  those already being litigated in Texas.

3      In any event, "the courts in this circuit have generally not required strict identity of the
4  issues or parties. Rather, substantial similarity between the actions is enough. This liberal
5  construction of the 'sameness' requirements makes sense because it better serves the policies
6  against inefficiency and unnecessary duplication that underpin the rule." *In re Com21, Inc.*, 357
7  B.R. 802, 807 (Bankr. N.D. Cal. 2006). Thus, this Court has consistently applied the first-to-file
8  rule even where slight differences existed between the parties in the two actions. *See, e.g., Dist.*
9  *Council 37 Health & Sec. Plan v. McKesson Corp.*, 2006 WL 1305235, at *1 (N.D. Cal. May 11,
10  2006) ("The presence of an additional defendant in the Massachusetts action does not render the
11  actions dissimilar for the purposes of the first to file rule."); *Alioto v. Hoiles*, 2004 WL 2326367,
12  at *5 (N.D. Cal. Oct. 12, 2004) (transferring case despite differences in parties: "Alioto and
13  Hoiles are parties in both cases. Elizabeth Davison, Gail Sanchez, and Jill Hoiles, defendants in
14  the present action, are counter-defendants in the compulsory counterclaim that Alioto filed in the
15  Colorado action."); *Centocor, Inc. v. MedImmune, Inc.*, 2002 WL 31465299, at *3 (N.D. Cal.
16  Oct. 22, 2002) ("[P]laintiffs argue that the rule does not apply because the universities are not
17  named as parties to the Maryland action. . . . But plaintiffs' argument ignores the fact that courts
18  generally do not require identical issues or parties . . . .").

19      Finally, the third prerequisite to the first-to-file rule is satisfied; the issues raised by the
20  two cases are virtually identical. This case identifies seven "claims for relief"—the issues of
21  non-infringement, invalidity, laches, unclean hands, lack of ownership, expiration of a patent,
22  and unenforceability. (*Cal. Compl.*, ¶¶ 39-73.) Five of these seven—non-infringement,
23  invalidity, laches, unclean hands, and lack of ownership—have already been expressly asserted
24

25  _____
    [2] *See* Defendants' Motion to Dismiss for Lack of Standing, filed July 16, 2008, Docket No. 66,
    Case No. 2:07-CV-511-TJW-CE, and Plaintiff's Response to Defendants' Motion to Dismiss,
26  filed Aug. 25, 2008, Docket No. 76. Defendants' Reply is due November 10. Furthermore, it is
    beyond dispute that Site Technologies does not own the patents *now*, since the company recently
27  executed a backup assignment of the patents-in-suit to Egger (who in turn then executed a
    backup assignment to SRA), to make absolutely clear what had been the case since 1998: that it
28  has no interest in the patents.

DEFENDANTS' MOTION TO DISMISS, TRANSFER, OR STAY UNDER
THE FIRST-TO-FILE RULE AND FOR LACK OF PERSONAL JURISDICTION
CASE NO. CV08-03172

1  as affirmative defenses in the Texas action. (The issues of non-infringement and invalidity have

2  also been asserted as declaratory judgment counterclaims in the Texas action.) The other two

3  may be asserted subsequently; Plaintiffs explicitly reserved the right to assert additional defenses

4  in the Texas case. In this respect, this case is just like *Alibaba.com, Inc. v. Litecubes, Inc.*, 2004

5  WL 443712 (N.D. Cal. Mar. 8, 2004). In *Alibaba.com*, this Court stayed the second-filed case

6  under the first-to-file rule and held, "Alibaba's later-filed suit is the kind of which affirmative

7  defenses and counter-claims are made. It seeks declaratory relief of non-infringement and

8  invalidity; it asserts what is often a counter-claim in infringement actions, an antitrust claim; and,

9  for 'good' measure it adds a claim under section 17200 . . . . It is very telling, and the court

10  notes, that the lost race to the court house was responsive and defensive to Litecubes' Missouri

11  action." *Id.* at *2; *see also Dist. Council*, 2006 WL 1305235, at *1 (dismissing second-filed

12  action under first-to-file rule, in part because "the issues in the two cases are substantially

13  similar, resting on identical factual allegations and asserting identical or analogous causes of

14  action . . . ."). In short, all three prerequisites of the first to file rule are satisfied.

15              2.    None of the exceptions to the first-to-file rule applies in this case.

16       The first-to-file rule being *prima facie* applicable, it further is the case that none of the

17  exceptions to the rule applies here. First, there is no evidence of bad faith in SRA's selection of

18  the Eastern District of Texas as the forum for its suit. SRA selected that forum because it is

19  known for its patent expertise, is centrally located, and is near SRA's counsel. Second, SRA's

20  suit is not anticipatory. As this Court has explained, "The anticipatory suit exception is rooted in

21  a concern that a plaintiff should not be deprived of its traditional choice of forum because a

22  defendant with notice of an impending suit first files a declaratory relief action over the same

23  issue in another forum." *Inherent.com v. Martindale-Hubbell*, 420 F. Supp. 2d 1093, 1097 (N.D.

24  Cal. 2006). Here, SRA did not file its suit in Texas to avoid an imminent suit by Plaintiffs

25  elsewhere. In fact, there is no evidence that such a suit was imminent. SRA also did not engage

26  in "transparent forum shopping." *Alibaba.com*, 2004 WL 443712, at *2 n.3. To the contrary, it

27  filed suit in the Eastern District of Texas for legitimate reasons—because that district possesses

28

1  expertise in patent matters, because the Eastern District of Texas is centrally located, and

2  because SRA's counsel are based in Houston and Austin.[3]

3      Finally, the balance of conveniences does not weigh "so strongly in [Plaintiffs'] favor as

4  to justify a departure from the 'first to file' rule." *Ward v. Follett Corp.*, 158 F.R.D. 645, 649

5  (N.D. Cal. 1994). As a threshold matter, "the respective convenience of the two courts normally

6  should be addressed to the court in the first filed action rather than to the court in the later-filed

7  action." *Id.* at 648 (internal quotation marks omitted). Thus, at the outset, this issue is one for

8  Plaintiffs to argue in the Texas action, not this action. This Court therefore need not even

9  consider this issue in its analysis.

10      Either way, this factor weighs, at best, evenly between Plaintiffs and Defendants.

11  Plaintiffs Google, Yahoo!, and IACSAM are located near this Court. But Plaintiffs AOL and

12  Lycos, as well as Defendants Egger and SRA, are located closer to Texas than to California.[4]

13  Further, while Site Technologies used to maintain its principal office in California when it

14  existed, it hardly exists now, and its former CEO and sole director, Jeffrey F. Ait, currently

15  resides in South Carolina, which is closer to Texas. Likewise, the time and expense of

16  transporting the witnesses and documents is likely to be at best equivalent as between Texas and

17  California.

18      This case resembles *Pacesetter Systems, Inc. v. Medtronic, Inc.*, 678 F.2d 93 (9th Cir.

19  1982). In *Pacesetter*, a patent owner sued an alleged infringer for patent infringement in the

20  Southern District of Florida. *Id.* at 94. The patent owner sought damages and an injunction. *Id.*

21  Three days later, the alleged infringer filed a declaratory judgment action in the Central District

22  of California, alleging invalidity, non-infringement, and unenforceability of the same three

23  patents at issue in the Florida case. *Id.* The Central District of California dismissed the second-

24

25  [3] Moreover, as a general matter under Ninth Circuit law, "there is a strong presumption in favor
of plaintiff's choice of forums." *Gherebi v. Bush*, 352 F.3d 1278, 1303 (9th Cir. 2003) (internal
quotation marks omitted).

26  [4] Moreover, in the last two years alone, three of the five Plaintiffs have litigated in the Eastern
District of Texas. *See Fotomedia Techs., LLC v. AOL, LLC*, 2008 WL 4372348 (E.D. Tex. Sept.

27  24, 2008) (AOL); *PA Advisors, LLC v. Google Inc.*, 2008 WL 4136426 (E.D. Tex. Aug. 8, 2008)

28

DEFENDANTS' MOTION TO DISMISS, TRANSFER, OR STAY UNDER
THE FIRST-TO-FILE RULE AND FOR LACK OF PERSONAL JURISDICTION
CASE NO. CV08-03172

filed action in deference to the Florida action. *Id.* On appeal, the Ninth Circuit affirmed. The Ninth Circuit held, "We agree with the district court that the goal of judicial efficiency would not have been served by accepting jurisdiction." *Id.* at 96. Specifically, "permitting multiple litigation of these identical claims could serve no purpose of judicial administration, and the risk of conflicting determinations as to the patents' validity and enforceability was clear. No apparent bar existed to a presentation of [the alleged infringer's] claims and defenses before the Florida court. That forum was capable of efficiently resolving all issues, and economic use of both courts' resources resulted from the California court's refusal to consider [the alleged infringer's] claims." *Id.* The Ninth Circuit in fact chided the alleged infringer for misusing the declaratory judgment action: "Declaratory relief is intended to serve a unique function in patent disputes, eliminating multiple litigation and protecting competitors from infringement actions that are threatened but not pursued. In contrast to those policies, [the alleged infringer's] declaratory judgment action multiplies litigation. It does not shield [the alleged infringer] from an unfair threat of an infringement action, but attempts to remove ongoing litigation from the forum chosen by the plaintiff." *Id.* at 97. The court summed up its reasoning as follows: "The manufacturer who is charged with infringing a patent cannot stretch the Federal Declaratory Judgment Act to give it a paramount right to choose the forum for trying out questions of infringement and validity. He is given an equal start in the race to the courthouse, not a headstart." *Id.* (internal quotation marks omitted).

### C. Conclusion

In short, the first-to-file rule applies here, and Plaintiffs' case should be dismissed. Alternatively, Plaintiffs' case should be transferred to the Eastern District of Texas or, at a minimum, stayed until the Texas action is resolved.

(Google); *Doe v. Bates*, 2006 WL 3813758 (E.D. Tex. Dec. 27, 2006) (Yahoo!); *Prickett v. InfoUSA, Inc.*, 561 F. Supp. 2d 646 (E.D. Tex. 2006) (Yahoo!).

## II. This Court should dismiss Plaintiffs' claims against SRA and Daniel Egger under Rule 12(b)(2), because it lacks personal jurisdiction over them.

This Court should dismiss Plaintiffs' claims against SRA and Egger under Rule 12(b)(2), because it lacks personal jurisdiction over them.

### A. Facts

#### 1. SRA's contacts with California.

SRA is a Delaware limited liability company with its principal office in Texas. It was founded in 2004, and in its four-year history, it has done just two things: in February 2005, it acquired the patents-in-suit from Daniel Egger in a transaction that occurred in North Carolina; and in November 2007, it filed its patent lawsuit against Plaintiffs in the Eastern District of Texas. SRA had no pre-litigation contacts with California. Its only contacts with California occurred post-filing—in the context of maintaining the Texas action—and only because Google, Yahoo!, and IAC happen to have California domiciles.

#### 2. Daniel Egger's contacts with California.

Plaintiffs allege only four contacts between Egger and California. (*See Cal. Compl.*, ¶ 31.) First, Plaintiffs allege that Egger "attempt[ed] to acquire the Patents-in-Suit from Deltapoint (a.k.a. Site Technologies, Inc.), a California corporation." (*Cal. Compl.*, ¶ 31.) Second, Plaintiffs allege that Egger "arrange[d] the sale of Libertech, Inc. to Deltapoint Inc., a California corporation, knowing that Deltapoint, Inc. was a California corporation and did business principally in California." (*Cal. Compl.*, ¶ 31.) Third, Plaintiffs allege that Egger "held himself out to be an officer of the defunct and/or nonexistent Site/Technologies/Inc. (a.k.a. Libertech), and executed the 2005 Assignment in which he purported to dispose of the [patents-in-suit]." (*Cal. Compl.*, ¶ 31.) Finally, Plaintiffs allege that "Egger, through the instrumentality of Defendant SRA, has also sued Google, Yahoo!, and IACSAM—all California companies—for alleged patent infringement . . . ." (*Cal. Compl.*, ¶ 31.)

### B. Argument and Authorities

This Court lacks personal jurisdiction over SRA and Egger. Under federal law, courts cannot exercise jurisdiction over non-resident defendants unless those defendants have "certain

10

minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Pennington Seed, Inc. v. Produce Exchange No. 299*, 457 F.3d 1334, 1344 (Fed. Cir. 2006).[5] Personal jurisdiction comes in two forms—general and specific. *Trintec Indus., Inc. v. Pedre Promotional Products, Inc.*, 395 F.3d 1275, 1279 (Fed. Cir. 2005).[6] Plaintiffs have the burden of establishing that one or the other exists. *Iowa State Univ. Research Found., Inc. v. Greater Continents Inc.*, 81 Fed. Appx. 344, 349 (Fed. Cir. 2003). Plaintiffs cannot establish either type of jurisdiction for either SRA or Egger.

  1. <u>This Court lacks general jurisdiction over SRA and Egger, because neither party has even remotely established a "substantial and continuous presence" in California.</u>

  This Court lacks general jurisdiction over SRA and Egger, because neither party has even remotely established a "substantial or continuous presence" in California.

   a. <u>General jurisdiction standards</u>

  General jurisdiction arises only where the defendant has established "'continuous and systematic' contacts with the forum state." *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1200 (Fed. Cir. 2003). This standard requires demonstrating a "substantial and continuous presence"—as distinguished from "sporadic" contacts—in the forum state. *Campbell Pet Co. v. Miale*, 542 F.3d 879, 884 (Fed. Cir. 2008). Neither the U.S. Supreme Court nor the Federal Circuit has articulated a detailed test for determining general jurisdiction. *LSI Indus. Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 (Fed. Cir. 2000). Federal appellate case law makes clear, however, that the standard is an exacting one. For example, the Ninth Circuit has written, "For general jurisdiction to exist over a nonresident defendant . . . , the defendant must engage in 'continuous and systematic general business contacts,' that approximate physical presence in the

---

[5] There is no separate long-arm jurisdiction analysis in California. Because "California's long-arm statute is coextensive with federal due process requirements, the tests for jurisdiction merge into one analysis." *Park v. Oxford Univ.*, 35 F. Supp. 2d 1165, 1166 (N.D. Cal. 1997).
[6] Federal Circuit personal jurisdiction law governs here: "This court applies the law of the Federal Circuit, rather than that of the regional circuits, to determine personal jurisdiction in a patent infringement case. This choice of governing law applies as well to personal jurisdiction in

forum state. This is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004) (internal quotation marks and citations omitted). Thus, as the Ninth Circuit has reported, courts "regularly have declined to find general jurisdiction even where the contacts were quite extensive." *Amoco Egypt Oil Co. v. Leonis Navig'n Co.*, 1 F.3d 848, 851 n.3 (9th Cir. 1993).

In the leading case on general jurisdiction, *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 411 (1984), the nonresident defendant had negotiated a contract in the forum state, had purchased over $4 million of inventory in the forum state, had sent employees to train in the forum state, and had sent management and maintenance personnel to the forum state to engage in technical consultation. The Supreme Court nevertheless held that general jurisdiction did not exist. *Id.* at 419. The Court identified several types of contacts that had not been established:

> [The defendant] never has been authorized to do business in Texas and never has had an agent for the service of process within the State. It never has performed helicopter operations in Texas or sold any product that reached Texas, never solicited business in Texas, never signed any contract in Texas, never had any employee based there, and never recruited an employee in Texas. In addition, [the defendant] never has owned real or personal property in Texas and never has maintained an office or establishment there. [The defendant] has maintained no records in Texas and has no shareholders in that State.

*Id.* at 411-12.

         b.    <u>This Court lacks general jurisdiction over SRA, because SRA's contacts with California are sporadic and are even fewer than the defendant's contacts in *Helicopteros*.</u>

This Court lacks general jurisdiction over SRA. As in *Helicopteros*, SRA has never been authorized to do business in California, has never had an agent for service of process in California, has never conducted any operations in or sold any products that reached California, has never solicited business in California, has never signed a contract in California, has never

---

declaratory judgment actions that involve patentees as defendants." *Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1358 (Fed. Cir. 1998).

| 1 | recruited or based an employee in California, has never owned property in California, has never |
| 2 | maintained an office in California, and has never maintained records in California. Indeed, SRA |
| 3 | has even fewer contacts than the defendant in *Helicopteros*. Unlike that defendant, SRA has |
| 4 | never negotiated a contract in California, has never made purchases in California, and has never |
| 5 | trained employees or engaged in consultation in California. Indeed, SRA had no pre-suit |
| 6 | contacts with California. Rather, SRA's sole contacts with California arise out of its having filed |
| 7 | a suit against companies based in California, as well as other defendant companies based in |
| 8 | Virginia (AOL) and Massachusetts (Lycos). These contacts scarcely demonstrate a "substantial |
| 9 | and continuous presence" in California. To the contrary, they are "sporadic" in nature; they arise |
| 10 | at particular moments for particular purposes and are limited in duration. Therefore, this Court |
| 11 | lacks general jurisdiction over SRA. |

      c.    <u>This Court lacks general jurisdiction over Egger, because Plaintiffs have alleged no continuing contacts, but instead only four sporadic contacts, between Egger and California.</u>

This Court lacks general jurisdiction over Egger. Plaintiffs have not alleged any "continuous or systematic contacts" between Egger and California. Plaintiffs have not alleged that Egger ever lived in California for any length of time, ever owned property in California, ever maintained an office in California, ever maintained a bank account in California, or ever employed agents in California. Plaintiffs' only allegations, rather, are that Egger engaged in two isolated transactions with California entities, executed an assignment in the purported role of an officer of a California company, and filed a single lawsuit against three California entities (a lawsuit that in fact was not even filed by Egger, but by SRA). Such contacts do not indicate a "substantial and continuing presence" in California. Rather, such contacts are "sporadic,"; arising at particular moments in time and for limited duration. Therefore, this Court lacks general jurisdiction over Egger.

DEFENDANTS' MOTION TO DISMISS, TRANSFER, OR STAY UNDER
THE FIRST-TO-FILE RULE AND FOR LACK OF PERSONAL JURISDICTION
CASE NO. CV08-03172

2.    This Court lacks specific jurisdiction over SRA and Egger, because neither party made pre-suit accusations of patent infringement against Plaintiffs or engaged in other required patent-related activities in California.

This Court lacks specific jurisdiction over SRA and Egger, because neither party made pre-suit accusations of patent infringement against Plaintiffs or engaged in other required patent-related activities in California.

a.    Specific jurisdiction standards

Under Federal Circuit law, specific jurisdiction arises when three criteria are met: (1) the defendant purposefully directs his activities at residents of the forum; (2) the litigation results from alleged injuries that arise out of or relate to those activities; and (3) the assertion of personal jurisdiction would comport with fair play and substantial justice. *Campbell*, 542 F.3d at 884. In declaratory judgment actions brought by alleged patent infringers seeking declarations of non-infringement and invalidity, an indispensable prerequisite to asserting personal jurisdiction is that the defendant have contacted the forum state plaintiff—whether through cease-and-desist letters, phone calls, in-person visits, or otherwise—prior to suit to allege infringement of the defendant's patents. *See, e.g., id.* at 882 (personal jurisdiction upheld where declaratory judgment defendant had, prior to suit, alleged patent infringement to the declaratory judgment plaintiff, a forum state resident, and also had established further patent-related contacts with the forum state); *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1366 (Fed. Cir. 2006) (same); *Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1350-51 (Fed. Cir. 2003) (same); *Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.*, 297 F.3d 1343, 1352 (Fed. Cir. 2002) (same); *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001) (same); *Dainippon Screen Mfg. Co., Ltd. v. CFMT, Inc.*, 142 F.3d 1266, 1271 (Fed. Cir. 1998) (same); *Genetic Implant Sys. v. Core-Vent Corp.*, 123 F.3d 1455, 1458 (Fed. Cir. 1997) (same); *Viam Corp. v. Iowa Export-Import Trading Co.*, 84 F.3d 424, 426 (Fed. Cir. 1996) (same); *Akro Corp. v. Luker*, 45 F.3d 1541, 1546 (Fed. Cir. 1995) (same). As the Federal Circuit has held, this accusation of infringement is "the first and most important point of contact" between a declaratory judgment defendant and the forum state. *Inamed*, 249 F.3d at 1360. Indeed, the

14

1  Federal Circuit has never subjected a defendant to personal jurisdiction in a patent-related

2  declaratory judgment action without such a contact.

3      In addition to this accusation of infringement, for specific jurisdiction to exist in a patent-

4  related declaratory judgment action, the Federal Circuit requires that the defendant have engaged

5  in "other patent-related activities" in the forum state: "For the exercise of personal jurisdiction to

6  comport with fair play and substantial justice, there must be 'other activities' directed at the

7  forum and related to the cause of action besides the letters threatening an infringement suit."

8  *Silent Drive*, 326 F.3d at 1202. Specifically, the following types of forum state activities have

9  been held to constitute the required "other activities": attempting, while in the forum state, to

10  interfere with the forum state plaintiff's business in the forum state by, for example, alleging

11  infringement to the plaintiff's customers in the forum state or to the directors of the market

12  where the plaintiff's products are being sold, *Campbell*, 542 F.3d at 886-87; granting an

13  exclusive license of the patented technology to forum state residents, *Inamed*, 249 F.3d at 1361;

14  *Akro*, 45 F.3d at 1543; selling the patented product directly, through a licensee, or through an

15  exclusive distributor in the forum state, *Dainippon*, 142 F.3d at 1271; *Genetic Implant*, 123 F.3d

16  at 1457; and hiring a patent attorney in the forum state, *Elecs. for Imaging*, 340 F.3d at 1352.

17      This is a high standard, and the Federal Circuit has not hesitated to find specific

18  jurisdiction wanting when it has been unsatisfied. For example, in *Red Wing Shoe Co., Inc. v.*

19  *Hockerson-Halberstadt, Inc.,* 148 F.3d 1355, 1357 (Fed. Cir. 1998), Red Wing (the alleged

20  infringer) filed a declaratory judgment action in the District of Minnesota against HHI (the patent

21  holder), seeking a declaration of non-infringement, invalidity, and unenforceability. Red Wing

22  was a resident of the forum state, Minnesota. HHI, a company whose sole business activity

23  consisted of purchasing, licensing, and enforcing patent rights, was a Louisiana corporation with

24  its principal place of business in New Mexico. HHI had just two relevant contacts with

25  Minnesota. First, it had sent three cease-and-desist letters to Red Wing in Minnesota that alleged

26  infringement and offered to settle the case by negotiating a license. *Id.* at 1359. Second, it had

27  granted licenses to thirty-four companies that sold the licensed products in Minnesota, and had

28

1   gained royalties on those Minnesota sales. *Id.* The Federal Circuit held that Minnesota did not

2   have personal jurisdiction over HHI. *Id.* at 1362. The court held that HHI's cease-and-desist

3   letters were an insufficient contact with the state: "[C]ease-and-desist letters alone do not suffice

4   to create personal jurisdiction." *Id.* at 1360. The licenses and royalties from Minnesota sales

5   were also insufficient: "In simple terms, doing business with a company that does business in

6   Minnesota is not the same as doing business in Minnesota. . . . HHI's receipt of royalty income

7   from its licensees for sales made in Minnesota is equally irrelevant." *Id.* at 1361.

8          The Federal Circuit also considered whether HHI's efforts to settle the case by

9   negotiating a license in Minnesota constituted sufficient contacts with the state. The court held

10  that they were also insufficient:

11              An offer to license is more closely akin to an offer for settlement of a disputed
               claim . . . . Treating such hybrid cease-and-desist letters differently [from cease-
12             and-desist letters not offering settlement] would also be contrary to fair play and
               substantial justice by providing disincentives for the initiation of settlement
13             negotiations. . . . Although the Rules [of Evidence] do not explicitly make
               evidence of [settlement] negotiations inadmissible to establish personal
14             jurisdiction, the policy underlying the Rules supports an approach that fosters
               settlement of infringement claims. Indeed, this policy squarely invokes one of the
15             considerations enumerated by the Supreme Court for the second prong of a proper
               Due Process analysis, namely, "the interstate judicial system's interest in
16             obtaining the most efficient resolution of controversies."

17  *Id.* (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)).

18                          b.    This Court lacks specific jurisdiction over SRA, because SRA
                                  neither made pre-suit infringement allegations against Plaintiffs
19                                nor engaged in the required "other activities" in California.

20         SRA's contacts with California are insufficient to create specific jurisdiction in

21  California. For starters, SRA never contacted Plaintiffs prior to the initiation of litigation to

22  allege infringement of SRA's patents. Rather, SRA directly filed suit against Plaintiffs in the

23  Eastern District of Texas, without making any contact with California whatsoever. Furthermore,

24  SRA has not engaged in any of the "other activities" required to give rise to specific jurisdiction.

25  SRA has not attempted extra-judicial enforcement of its patents by interfering with Plaintiffs'

26  business in California; it has not granted an exclusive license of the patented technology to

27  California residents; it has not sold the patented product in California; and it has not hired a

28

patent attorney in California. Finally, SRA's contacts with California are significantly fewer than the contacts HHI had with Minnesota in *Red Wing*. Unlike HHI, SRA sent no cease-and-desist letters to California, offered no licenses in California prior to initiating its first-filed suit in Texas, granted no licenses to companies doing business in California, and collected no royalties based on sales of products in California. For these reasons, this Court lacks specific jurisdiction over SRA.

c.   Plaintiffs' mishmash of allegations fails to justify exercising specific jurisdiction over SRA.

Plaintiffs implicitly concede that SRA has insufficient contacts with California to create specific jurisdiction. In five full paragraphs of allegations supposedly about SRA's contacts with California, Plaintiffs allege not one activity that SRA took within California, or under California law, or along with a California entity, that could have created jurisdiction in this state. (*Cal. Compl.*, ¶¶ 31-35.) To the contrary, Plaintiffs expressly admit in their complaint that "[a]s of November 21, 2007, Defendant SRA's sole business activity has been to prosecute an action against Plaintiffs for alleged infringement of the Patents-in-Suit." (*Cal. Compl.*, ¶ 33.)

Nevertheless, Plaintiffs attempt to show an attenuated connection between SRA and California. (*See Cal. Compl.*, ¶¶ 31-35.) These attempts fail. Plaintiffs' allegations can be grouped into two categories, both of which are insufficient to establish jurisdiction over SRA. First, Plaintiffs identify various actions taken by Daniel Egger in California. Plaintiffs allege that "Egger has engaged in business in California" by "arrang[ing] the sale of Libertech, Inc., to Deltapoint Inc., a California corporation" (in 1997) and then "attempt[ing] to acquire the Patents-in-Suit from Deltapoint" (in 1998). (*Cal. Compl.*, ¶ 31.) Egger also allegedly engaged in "transactions and attempted transactions with Deltapoint, a California company," as well as an "impersonation of an officer of Site/Technologies/Inc. [], which at relevant times was either a wholly owned subsidiary of a California company and/or was merged into a California company." (*Cal. Compl.*, ¶ 34.) These allegations are all irrelevant to whether this Court has jurisdiction over SRA. First, most of Egger's alleged actions in California were taken years before SRA even existed. It is nonsensical to contend that the nonexistent SRA thereby

1 | established contacts with California. Second, Egger is not SRA. Egger's contacts with
2 | California therefore cannot be imputed to SRA, even if, as Plaintiffs allege, Egger worked "in
3 | concert with and for the benefit of Defendant SRA." (*Cal. Compl.*, ¶ 31.) As this Court has
4 | held, "personal jurisdiction over any non-resident individual must be premised upon forum-
5 | related acts personally committed by the individual. Imputed conduct is a connection too
6 | tenuous to warrant the exercise of personal jurisdiction." *Kipperman v. McCone*, 422 F. Supp.
7 | 860, 873 n.14 (N.D. Cal. 1976). Plaintiffs' one-line allegation that "Defendant SRA is the alter
8 | ego and agent of Defendant Egger" likewise fails. (*Cal. Compl.*, ¶ 35.) As this Court has stated,
9 | "At the pleading stage, conclusory allegations that a corporate entity is the alter ego of the
10 | defendant are insufficient to survive a motion to dismiss." *Long v. Postorivo*, 2007 WL
11 | 2990457, at *1 (N.D. Cal. Oct. 11, 2007).

12 | Plaintiffs also seek to base jurisdiction on the fact that "SRA[] has also sued Google,
13 | Yahoo!, and IACSAM – all California companies – for alleged patent infringement, purporting
14 | to hold legal title to the Patents-in-Suit, which are held in California by a California company."
15 | (*Cal. Compl.*, ¶ 31.) This argument fails for two reasons. First, Plaintiffs' claim that the patents-
16 | in-suit are "held in California by a California company" is wrong. The patents-in-suit are held
17 | by SRA, a Delaware entity located in Texas. And Jeffrey Ait, the former CEO and sole director
18 | of the "California company" referred to, has testified explicitly that the company sold the patents
19 | to Egger in 1998: "On September 16, 1998, Site Tech sold and assigned, among other things,
20 | U.S. Patent No. 5,544,352, and related applications and future patents (which include U.S. Patent
21 | Nos. 5,832,494 and 6,233,571) to Daniel Egger." (*Ait Dec.*, ¶ 5.) Second, it is beyond dispute
22 | that merely filing suit in Texas against a California entity does not create personal jurisdiction in
23 | California. To the contrary, such a proposition squarely conflicts with the U.S. Supreme Court's
24 | longstanding mandate: "[I]t is essential in each case that there be some act by which the
25 | defendant purposefully avails itself of the privilege of conducting activities within the forum
26 | State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*,
27 | 471 U.S. 462, 475 (1985) (internal quotation marks omitted).

28 |

DEFENDANTS' MOTION TO DISMISS, TRANSFER, OR STAY UNDER
THE FIRST-TO-FILE RULE AND FOR LACK OF PERSONAL JURISDICTION
CASE NO. CV08-03172

| | |
|---|---|
| 1 |         d.    <u>This Court lacks specific jurisdiction over Egger because Egger neither made pre-suit infringement allegations against Plaintiffs nor engaged in the required "other activities" in California.</u> |

d.    <u>This Court lacks specific jurisdiction over Egger because Egger neither made pre-suit infringement allegations against Plaintiffs nor engaged in the required "other activities" in California.</u>

Egger's alleged contacts fall well short of those required to establish specific jurisdiction in a patent-related declaratory judgment action. Plaintiffs do not allege that Egger ever contacted any of the Plaintiffs alleging infringement of the patents-in-suit.[7] Further, Plaintiffs do not allege that Egger engaged in any of the "other activities" that, together with threats of infringement, give rise to or relate to a declaratory judgment action. There is no allegation that Egger attempted to interfere with Plaintiffs' business activities in California so as to extra-judicially enforce the patent rights. There is no allegation that Egger granted an exclusive license of the patented technology to anyone in California. There is no allegation that Egger sold the patented technology in California. There is no allegation that Egger hired a patent attorney in California. Thus, this Court cannot exercise specific jurisdiction over Daniel Egger.

**C.    Conclusion**

This Court lacks personal jurisdiction over SRA and Egger. Plaintiffs' claims against SRA and Egger must be dismissed.

---

[7] Indeed, Plaintiffs do not allege that any entity threatened them with an infringement action prior to their filing this case. In truth, this case arose not out of any pre-suit allegations of infringement, but rather out of SRA's filing the first-filed patent infringement action in the Eastern District of Texas. This case thus falls well outside the scenario in which patent-related declaratory judgment actions are justified. The Federal Circuit has described the scenario "that led to enactment of the Declaratory Judgment Act (Act)" as follows: "In the patent version of that scenario, a patent owner engages in a *danse macabre*, brandishing a Damoclean threat with a sheathed sword. Guerrilla-like, the patent owner attempts extra-judicial patent enforcement with scare-the-customer-and-run tactics that infect the competitive environment of the business community with uncertainty and insecurity. Before the Act, competitors victimized by that tactic were rendered helpless and immobile so long as the patent owner refused to grasp the nettle and sue. After the Act, those competitors were no longer restricted to an in terrorem choice between the incurrence of a growing potential liability for patent infringement and abandonment of their enterprises; they could clear the air by suing for a judgment that would settle the conflict of interests." *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 734-35 (Fed. Cir. 1988).

1    **III.    No case or controversy exists between Plaintiffs and Egger or Site Technologies,**
     **because Egger and Site Technologies neither own the patents-in-suit nor have**
2    **expressed any intention to assert that Plaintiffs are infringing the patents.**

3         No case or controversy exists between Plaintiffs and Egger or Site Technologies, because

4    Egger and Site Technologies neither own the patents-in-suit nor have expressed any intention to

5    assert that Plaintiffs are infringing the patents.

6         **A.    "Case or controversy" standards**

7         Under the Declaratory Judgment Act and Article III of the U.S. Constitution, a court has

8    subject matter jurisdiction over a case only if the case presents an actual case or controversy

9    between the parties. *See Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1335 (Fed. Cir.

10   2008).[8]  In turn, an actual case or controversy exists only where "the facts alleged, under all the

11   circumstances, show that there is a substantial controversy, between parties having adverse legal

12   interest, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."

13   *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, no pag. (2007).[9]  The standard "require[s]

14   that there be an underlying legal cause of action that the declaratory defendant could have

15   brought or threatened to bring, if not for the fact that the declaratory plaintiff has preempted it.

16   Without an underlying legal cause of action, any adverse economic interest that the declaratory

17   plaintiff may have against the declaratory defendant is not a legally cognizable interest sufficient

18   to confer declaratory judgment jurisdiction." *Benitec Australia, Ltd. v. Nucleonics, Inc.*, 495

19   F.3d 1340, 1344 (Fed. Cir. 2007) (internal quotation marks omitted).   In patent-related

20   declaratory judgment actions, "[t]he lack of any evidence that the defendants believe or plan to

21   assert that the plaintiff's product infringes their patents creates a high barrier to proving that [the

22   plaintiff] faces an imminent risk of injury." *Prasco*, 537 F.3d at 1340.  Indeed, "jurisdiction

23   generally will not arise . . . without some affirmative act by the patentee." *Id.* at 1339 (internal

24   quotation marks omitted).

25   _____

26   [8] Under Federal Circuit law, "even if there is an actual controversy, the district court is not
     required to exercise jurisdiction to address the merits of the action, as it retains discretion under
     the Act to decline declaratory judgment jurisdiction."  *Teva Pharms. USA, Inc. v. Novartis*
27   *Pharms. Corp.*, 482 F.3d 1330, 1338 n.3 (Fed. Cir. 2007).

28

## B. No case or controversy exists between Plaintiffs and Egger.

There is no case or controversy between Plaintiffs and Egger. Plaintiffs admit, and Defendants agree, that Egger does not own the patents-in-suit.[10] (*Cal. Compl.*, ¶ 19) Thus, Egger has no underlying legal cause of action against Plaintiffs, and Plaintiffs cannot sensibly claim that Egger plans to assert an infringement claim against Plaintiffs. In short, there is no case or controversy between Plaintiffs and Egger. *See Pharmachemie B.V. v. Pharmacia S.p.A.*, 934 F. Supp. 484, 489 (D. Mass. 1996) ("At the time that Pharmachemie filed its original Complaint, S.p.A. possessed merely nominal title to the patents at issue, but by the time the Amended Complaint was filed, even that last indicia of ownership had been removed. Inasmuch as no actual controversy between S.p.A. and Pharmachemie could exist after the transfer of nominal title of the patents to Inc., this Court concludes that it lacks declaratory judgment subject matter jurisdiction over S.p.A.") This Court lacks subject matter jurisdiction over Plaintiffs' claims against Egger.

## C. No case or controversy exists between Plaintiffs and Site Technologies.

There is no case or controversy between Plaintiffs and Site Technologies. First, Site Technologies does not own the patents-in-suit—and has not owned them since September 1998, as its sole representative has testified under oath. (*Ait Dec.*, ¶ 5.)[11] Second, there is no evidence

---

[9] Plaintiffs bear the burden of proving a case or controversy sufficient to create subject matter jurisdiction. *Benitec*, 495 F.3d at 1344.

[10] Perhaps Plaintiffs named Egger as a defendant in this suit out of an abundance of caution, just in case he owns the patents-in-suit. If this is Plaintiffs' rationale, a declaratory judgment action is inappropriate. As the Federal Circuit has made clear, "Article III requires that the dispute . . . admit of specific relief through a decree of conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Caraco Pharm. Labs., Ltd. v. Forest Labs., Inc.*, 527 F.3d 1278, 1290 (Fed. Cir. 2008) (internal quotation marks and modifications omitted). Furthermore, even if Egger by some chance did own the patents when the lawsuit was filed, he certainly does not own them anymore, because he executed a backup assignment of the patents to SRA on September 26, 2008, just to make absolutely clear what had been the case since 2005: that he does not own the patents-in-suit. (*See Egger Assmt.*) Because "an actual controversy must be extant at all stages of review, not merely at the time the complaint was filed," this Court therefore would lack subject matter jurisdiction over Egger's claims even in that instance. *Benitec*, 495 F.3d at 1345.

[11] Plaintiffs of course contend "upon information and belief" that Site Technologies was the owner of the patents-in-suit *at the time this case was filed*; that issue is being heavily litigated in the Texas action. (*Cal. Compl.*, ¶ 38.) But even granting Plaintiffs' erroneous contention, Site Technologies would still have to be dismissed from this suit, because "an actual controversy

21

1 | that Site Technologies "believes or plans to assert that Plaintiffs' products infringe Site
2 | Technologies' patents." Site Technologies certainly has not taken any "affirmative act" to that
3 | effect. The exact opposite is true, in fact. Site Technologies has taken repeated, affirmative
4 | steps to indicate that it has *no* interest in the patents-in-suit and will *not* enforce them in any
5 | fashion.[12]   In September 1998, it sold and assigned the patents to Daniel Egger, accepted
6 | $100,000 in consideration for them, and expressly committed, "[i]n the event any provision of
7 | [the assignment] Agreement shall be held to be invalid, . . . [to] substitute a new enforceable
8 | provision of like economic intent and effect." (*Ait Dec.*, ¶ 5; *Bill of Sale*.)   Further, in August
9 | 2008, its sole representative Jeffrey Ait reaffirmed under oath the validity of the September 1998
10 | assignment and stated that "the Site Tech entities do not claim any title to the Patents and have
11 | long disclaimed any ownership in favor of Daniel Egger." (*Ait Dec.*, ¶ 6.)[13]   In short, there is no
12 | case or controversy between Plaintiffs and Site Technologies.  Plaintiffs' claims against Site
13 | Technologies must be dismissed.

**CONCLUSION**

In conclusion, this case must be dismissed.  Under the first-to-file rule, this case should be dismissed, because a first-filed action has been pending in the Eastern District of Texas since November 2007.  Further, under Rule 12(b)(2), Plaintiffs' claims against SRA and Daniel Egger should be dismissed, because neither party possesses sufficient contacts with California to satisfy

---

must be extant at all stages of review, not merely at the time the complaint was filed," *Benitec*, 495 F.3d at 1345, and it is beyond dispute that Site Technologies does not own the patents *now*; on August 13, 2008, Site Technologies executed a backup assignment of the patents-in-suit to Egger (who in turn then executed a backup assignment to SRA), just to make absolutely clear what had been the case since 1998: that Site Technologies does not own the patents-in-suit. (*See Site Tech. Assmt.*; *Egger Assmt.*)

[12] In fact, Plaintiffs themselves have taken the position, at least in the Eastern District of Texas action, that Site Technologies is legally forbidden to take affirmative actions as a corporation and is required to dissolve at the earliest possible opportunity.  It is disingenuous for Plaintiffs to simultaneously assert, here in the Northern District of California, that they are seriously concerned about an infringement action brought by Site Technologies.

[13] Furthermore, in August 2008—before Egger executed a backup assignment to SRA—it executed a backup assignment to Egger and stated, "[T]he Site Entities are desirous of removing all doubt with respect to Egger's holding full and complete legal title to and ownership of the Patents . . . and . . . are also desirous of Egger obtaining any rights that the Site Entities may have into or under the Patents." (*Site Tech. Assmt.*)

1    the requirements of due process. Finally, under Rule 12(b)(1), Plaintiffs' claims against Egger

2    and Site Technologies should be dismissed, because neither party owns the patents-in suit or has

3    taken any affirmative steps indicating an intent to assert infringement by Plaintiffs.

4         In the alternative, under the first-to-file rule this case should be transferred to the Eastern

5    District of Texas or, at a minimum, should be stayed until the case pending in the Eastern

6    District of Texas has been resolved.

7

8                       Respectfully submitted,

9

10                  *Lee Kaplan (by permission / RD)*
                   Thomas F. Smegal, Jr.

11                    State Bar No. 34819
                   Law Offices of Thomas F. Smegal, Jr.

12                    One Sansome Street, 35th floor
                   San Francisco, CA 94104
                   Telephone: (415) 217-8383

13                    Facsimile: (415) 399-5093

14                    Jay D. Ellwanger
                   State Bar No. 24036522

15                    DiNovo Price Ellwanger & Hardy LLP
                   P.O. Box 201690

16                    Austin, Texas 78720
                   (512) 681-4060

17                    (512) 628-3410 (fax)

18                    Lee L. Kaplan
                   State Bar No. 11094400

19                    (admitted *pro hac vice*)
                   Jeffrey A. Potts

20                    State Bar No. 00784781
                   (admitted *pro hac vice*)

21                    Raj Duvvuri
                   State Bar No. 24054185

22                    (admitted *pro hac vice*)
                   Smyser Kaplan & Veselka, L.L.P.

23                    700 Louisiana, Suite 2300
                   Houston, Texas 77002

24                    (713) 221-2323
                   (713) 221-2320 (fax)

25                    lkaplan@skv.com

26

27

28

DEFENDANTS' MOTION TO DISMISS, TRANSFER, OR STAY UNDER
THE FIRST-TO-FILE RULE AND FOR LACK OF PERSONAL JURISDICTION
CASE NO. CV08-03172

**CERTIFICATE OF SERVICE**

1

2   The undersigned hereby certifies that all counsel of record who are deemed to

3   have consented to electronic service are being served with a copy of this document via the

4   Court's CM/ECF system per Local Rule CV-5(a)(3) on _November 10_, 2008.

5

6   _Lee Kaplan_ (by permission /RD)

7   Lee L. Kaplan

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' MOTION TO DISMISS, TRANSFER, OR STAY UNDER
THE FIRST-TO-FILE RULE AND FOR LACK OF PERSONAL JURISDICTION
CASE NO. CV08-03172

**Index of Exhibits**

Exhibit 1     Cal. Compl.

Exhibit 2     Google Answer

Exhibit 3     Defs' Mot. to Dismiss

Exhibit 4     Pl.'s Opp.

Exhibit 5     Tex. Compl.

Exhibit 6     Ait Dec.

Exhibit 7     Site Tech Assmt.

Exhibit 8     Egger Assmt.

Exhibit 9     Bill of Sale

DEFENDANTS' MOTION TO DISMISS, TRANSFER, OR STAY UNDER
THE FIRST-TO-FILE RULE AND FOR LACK OF PERSONAL JURISDICTION
CASE NO. CV08-03172