[SEE SIGNATURE BLOCK FOR COUNSEL]

1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| **SOFTWARE RIGHTS ARCHIVE, LLC,** | **Case No. CV09-80004 MISC** |
| **Plaintiff** | **Case No. 2:07-cv-511 (CE)**<br>**EASTERN DISTRICT OF TEXAS** |
| **v.** | |
| **GOOGLE, INC., YAHOO!, INC., IAC SEARCH & MEDIA, INC., AOL LLC, and LYCOS, INC.,** | **RESPONDENTS' OPPOSITION TO MOTION TO COMPEL COMPLIANCE WITH YAHOO!'S SUBPOENA ON WILSON SONSINI GOODRICH & ROSATI** |
| **Defendants.** | HEARING DATE:  April 17, 2009<br>HEARING TIME:  9:00 a.m. |

RESPONDENTS' OPPOSITION TO MOTION TO COMPEL COMPLIANCE WITH YAHOO!'S SUBPOENA
ON WILSON SONSINI GOODRICH & ROSATI
CASE NO. CV09-80004 MISC
i

Docket

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS .................................................................................... ii

TABLE OF AUTHORITIES ................................................................................ iii

STATEMENT OF ISSUES TO BE DECIDED .......................................................... 3

STATEMENT OF RELEVANT FACTS .................................................................. 3

ARGUMENT AND AUTHORITIES ....................................................................... 7

I.      The standing issue has already been fully discovered, and the requested
        documents are not reasonably calculated to lead to the discovery of additional
        evidence. ...................................................................................................... 7

II.     The attorney-client privilege protects the requested documents from
        production. .................................................................................................... 8

        A.      The attorney-client privilege applies to a bankrupt or defunct
                corporation. .......................................................................................... 8

        B.      Jeffrey Ait has authority to assert the privilege. .................................. 13

        C.      Yahoo!'s argument that the attorney-client privilege is inapplicable to
                Site Tech is wrong as a matter of fairness. .......................................... 14

III.    The work product privilege protects the requested documents from
        production. .................................................................................................. 15

IV.     The other objections are valid and should be sustained. ................................ 16

CONCLUSION ............................................................................................... 19

**Cases**

*City of Rialto v. United States Department of Defense*,
 492 F. Supp. 2d 1193 (C.D. Cal. 2007) ................................................. 9, 10, 11, 12

*Commercial Standard Title Co. v. Superior Court of San Diego County*,
 155 Cal. Rptr. 393 (Cal. Ct. App. 1979)................................................. 12

*Commodity Futures Trading Comm'n v. Weintraub*,
 471 U.S. 343 (1985).................................................................... 10, 11, 15

*Fisher v. United States*,
 425 U.S. 391, 402 n.8 (1976).......................................................... 14

*Gilliland v. Geramita*,
 2006 WL 2642525 (W.D. Pa. Sept. 14, 2006)......................................... 11

*In re Grand Jury Proceedings*,
 43 F.3d 966 (5th Cir. 1994) ............................................................ 15

*In re Grand Jury Subpoena 92-1(SJ)*,
 31 F.3d 826 (9th Cir. 1994) ............................................................. 9

*In re JMP Newcor Int'l, Inc.*,
 204 B.R. 963 (Bankr. N.D. Ill. 1997) ................................................. 15

*In re:  Grand Jury Subpoena #06-1*,
 2008 WL 1781357 (4th Cir. Apr. 21, 2008) .......................................... 10

*Lewis v. United States*,
 2004 WL 3203121 (W.D. Tenn. Dec. 7, 2004) ....................................... 11

*Nelson Constr. Co. v. United States*,
 2008 WL 5049304 (Fed. Cl. Nov. 18, 2008) ......................................... 10

*Overton v. Todman & Co.*,
 249 F.R.D. 147 (S.D.N.Y. 2008) ...................................................... 12

*Randy Int'l, Ltd. v. Automatic Compactor Corp.*,
 412 N.Y.S.2d 995 (N.Y. Civ. Ct. 1979) .............................................. 12

*Schaaf v. SmithKline Beecham Corp.*,
 233 F.R.D. 451 (E.D.N.C. 2005) ...................................................... 16

*Swidler & Berlin v. United States*,
 524 U.S. 399 (1998)............................................................... *passim*

*Upjohn v. United States*,
 449 U.S. 383 (1981)..................................................................... 10

*Wiwa v. Royal Dutch Petroleum Co.,*
    392 F.3d 812 (5th Cir. 2004) ........................................................................... 17

**Statutes**

CAL. BUS. & PROF. CODE § 6068(e)(1) ................................................................. 12

CAL. CORP. CODE §2001(d) .............................................................................. 14

CAL. EVID. CODE § 953(c) ............................................................................... 13

CAL. EVID. CODE § 953(d) .............................................................................. 13

CAL. EVID. CODE § 954(c) ............................................................................... 13

**Rules**

FED. R. CIV. P. 26(b)(2)(C)(i) .......................................................................... 18

FED. R. CIV. P. 26(b)(2)(C)(iii) ......................................................................... 19

FED. R. CIV. P. 26(b)(3) ................................................................................. 15

FED. R. CIV. P. 45(3)(A)(iv) ............................................................................ 17

FED. R. EVID. 501 ......................................................................................... 9

**Other Authorities**

Cal. R. Prof. Conduct 3-100 ............................................................................ 12

Respondents Software Rights Archive, LLC ("SRA") and Daniel Egger ("Egger") (collectively, "Respondents") oppose Yahoo!'s motion to compel documents from Wilson Sonsini Goodrich & Rosati ("WSGR"), Site Technologies, Inc.'s ("Site Tech's") former attorneys. SRA and Egger, along with Site Tech, filed objections and responses to the subpoena directed to WSGR. Yahoo! has raised questions about the undersigned's representation of Site Tech both in its motion to compel and in a motion to strike Site Tech's responsive pleading in a declaratory judgment action the Defendants[1] themselves initiated. Although the undersigned believes that its representation of Site Tech was proper, in light of the Defendants' accusations, and in light of the fact that Site Tech's corporate status is currently suspended, this opposition brief is filed on behalf of SRA and Egger alone.[2]

Yahoo!'s motion to compel relates to a standing challenge made by Yahoo! and other defendants in a patent infringement lawsuit brought by SRA in the Eastern District of Texas. Defendants in that suit claim that there is a gap in SRA's chain of title relating to a transfer of the patents-in-suit from Site Tech to Daniel Egger (who then assigned the patents to SRA).

Defendants filed their standing challenge in the Eastern District of Texas in July 2008, and it has been extensively briefed and submitted to that court for decision. In the course of the briefing Defendants requested, and secured discovery on, the standing issue. In fact, Defendants served document requests on Site Tech and its CEO Jeffrey Ait that are nearly identical to the requests made to WSGR and Murray & Murray. Site Tech made available to Defendants over

---

[1] Defendants are Google, Inc., Yahoo!, Inc., IAC Search & Media, Inc., AOL LLC, and Lycos, Inc.

[2] SRA and Egger have an interest in the outcome of this motion because, as parties to the litigation, they will have to review and analyze all discovery products, including whatever documents WSGR may be compelled to turn over. Because Yahoo!'s requests are duplicative, irrelevant, and overbroad, having to review documents produced in response to them would be an unnecessary burden on SRA and Egger.

fifty boxes of responsive documents, and Defendants copied over ten thousand pages of documents from those boxes.

Yahoo! now seeks to compel the same categories of documents from Site Tech's former attorneys. Unsurprisingly, the attorneys have objected to producing the documents on grounds of attorney-client privilege, and Site Tech, as the owner of the attorney-client privilege, has done the same. Yahoo! claims that Site Tech lost the right to assert its attorney-client privilege because it was allegedly dissolved in Chapter 11 bankruptcy proceedings.

Yahoo! is wrong. Site Tech has never been formally dissolved under California law. And, more importantly, Yahoo! misconstrues the law. There are very few reported cases dealing with whether a non-operational company may assert the attorney-client privilege, but the only Supreme Court case to have addressed the question of the duration of the attorney-client privilege concluded that the privilege survives the death of a client when the client is a natural person. By analogy, the privilege should survive corporate dissolution or a cessation of operations as well.

But this Court can easily avoid resolution of the privilege issue, which is apparently an issue of first impression in this District, because Yahoo!'s motion to compel can be decided on alternate grounds. Given that the standing issue has already been fully discovered and that it presents only questions concerning the legal effect of undisputed events, the Court should deny Yahoo!'s motion to compel on the grounds that the subpoena is not reasonably calculated to lead to the discovery of admissible evidence and is unnecessarily burdensome.

### Issue One

Whether a non-operational corporation may assert an evidentiary privilege as to its communications with counsel, where the Supreme Court has held that the attorney-client privilege survives the death of the client when the client is a natural person?

### Issue Two

Whether Yahoo!'s motion to compel should be denied in its entirety on the grounds that it is not reasonably calculated to lead to the discovery of admissible evidence and is unnecessarily burdensome, where the standing issue has already been fully discovered and presents only questions concerning the legal effect of undisputed events?

### Issue Three

Whether Respondents' and WSGR's other objections to Yahoo!'s subpoena should be sustained, where the document requests are facially overbroad and are identical to requests that have already been made to non-lawyers?

### STATEMENT OF RELEVANT FACTS

Daniel Egger conceived inventions pertaining to search engines employing link analysis. He applied for what would become the patents-in-suit.[3]  In November 1993 and June 1996, Egger and his colleagues assigned the patents-in-suit to Libertech, Inc., which subsequently changed its name to Site/Technologies/Inc. ("Site/Tech").  Site/Tech was acquired by DeltaPoint, Inc., which later changed its name to Site Technologies, Inc. ("Site Tech").

Daniel Egger re-acquired the patents in September 1998 pursuant to an assignment from Site Tech.  He, in turn, assigned the patents to Software Rights Archive, Inc., which converted into Software Rights Archive, LLC ("SRA") in May 2007.  SRA brought suit for patent infringement against Defendants in the Eastern District of Texas in November 2007.  (*Software*

---

[3]     On one of the patents, No. 5,832,494, Mr. Shawn Cannon and Mr. Ronald Sauers are co-inventors with Mr. Egger.

*Rights Archive, LLC v. Google Inc., Yahoo! Inc., IAC Search & Media, Inc., AOL LLC, and Lycos, Inc.*; Civil Action No. 2:07-cv-511-CE; In the United States District Court for the Eastern District of Texas, Marshall Division.)

Over eight months ago, on July 16, 2008, Defendants filed a motion to dismiss the Texas suit on the ground that SRA lacks standing due to an alleged defect in title. (Mot. to Dismiss, attached hereto as Exhibit 1.) Specifically, Defendants argued that the assignment from Site Tech to Egger in September 1998 did not transfer title because, according to Defendants, title at the time rested in Site/Tech, and Egger did not subsequently acquire title through a written instrument. (*Id.* at 2.) SRA responded to Defendants' motion to dismiss on August 25, 2008. (Pl.'s Resp. to Defs.' Mot. to Dismiss, attached hereto as Exhibit 2.) After SRA filed its response, Defendants demanded discovery. SRA complied with Defendants' requests, turning over thousands of documents and presenting three individuals for deposition in North Carolina and South Carolina. After another round of briefing, which brought the tally to nearly 100 pages of argument on the issue, the standing issue was submitted to the Texas court on December 15, 2008.

Defendants now seek more discovery—this time from Site Tech's former attorneys.[4] Because Yahoo! claims that the requested documents are relevant to the issue of standing, Respondents' recitation of facts includes a brief overview of the facts relevant to that issue.

**In July 1997, Site/Tech, at that time the undisputed owner of the patents-in-suit, executes a Stock Exchange Agreement with Site Tech.**

In July 1997, Site Tech acquired Site/Tech in a Stock Exchange Agreement. The law firm of Wilson Sonsini Goodrich & Rosati ("WSGR") represented Site Tech. The effect of this transaction is disputed by the parties. SRA contends that Site Tech acquired all of the assets of

---

[4] The requested files may also contain patent files that should have been turned over to Daniel Egger in connection with the 1998 Bill of Sale.

Site/Tech (including the patents-in-suit) through this transaction. (*See generally* Ex. 2) SRA bases this conclusion on the terms of the stock exchange agreement and the terms of Site/Tech's amended certificate of incorporation, which operated to make the anticipated stock exchange trigger a distribution of assets of Site/Tech into Site Tech. (*Id.* at 7-9.) SRA also relies on sworn SEC filings made after the merger in which Site Tech repeatedly confirmed that it had acquired the patents-in-suit from Site/Tech in the transaction. (*Id.* at 9-11.) As is obvious from Yahoo!'s motion to compel, Defendants dispute that the Stock Exchange Agreement operated to transfer Site/Tech's assets to Site Tech. Defendants contend that Site/Tech continued to hold the patents after the 1997 transaction.

**Site Tech files for bankruptcy, and in December 2000 it formally merges with Site/Tech.**

On January 29, 1999, Site Tech filed a Chapter 11 petition and entered bankruptcy proceedings. Jeffrey F. Ait, who was Site Tech's CEO, CFO, and director prior to the bankruptcy proceedings, was designated as the Responsible Person under the plan of reorganization. (*See* Debtor's First Am. Plan of Reorganization, portions attached hereto as Ex. 3, at § 7.3.A.)

Site Tech's filings in the bankruptcy proceedings, including its court-approved First Amended Disclosure Statement and its Statement of Financial Affairs, repeatedly represented to the bankruptcy court, to creditors, and to interested parties that Site Tech had transferred the patents to Egger in September 1998. SRA has argued that confirmation of the bankruptcy plan is *res judicata* as to Egger's ownership. (Ex. 2 at 25-26; Pl.'s Sur-Resp. to Defs.' Mot. to Dismiss, attached hereto as Ex. 4, at 2-6.) Defendants, of course, disagree. (Reply in Support of Defs.' Mot. to Dismiss, attached hereto as Ex. 5, at 25.)

In December 2000, Site/Tech was formally merged into Site Tech and transferred all its remaining assets to Site Tech. Therefore, even if, as Defendants contend, Site/Tech still held the

patents-in-suit in December 2000, they passed to Site Tech in the merger. The parties do not dispute this, but they disagree as to whether Egger thereby obtained title to the patents at that time pursuant to the doctrine of after-acquired title. (*Compare* Ex. 2 at 21-24, with Ex. 5 at 27-28.)

**The bankruptcy court enters a final decree in the bankruptcy case on January 6, 2004, which orders Site Tech dissolved and discharges Mr. Ait as the Responsible Person.**

Site Tech's amended plan of reorganization contains a provision for corporate dissolution upon the entry of a final decree. Section 7.9 of the plan states:

> Pursuant to the authority contained in Section 1400 of the California Corporations Code, the Debtor shall be dissolved and its corporate existence terminated without further corporate action upon the entry of a final decree in this case . . . . The Confirmation Order shall be deemed an order authorizing and directing the Responsible Person to file a certificate of dissolution as required by Section 1401 of the California Corporations Code and the Responsible Person shall file such certificate concurrently with the request for entry of a final decree.

(Ex. 3 at § 7.9.) The bankruptcy court entered the final decree on January 6, 2004. (*See* Final Decree, attached hereto as Ex. 6.)

Although the plan ordered the dissolution of Site Tech, Site Tech has not been formally dissolved under California law. Site Tech's status is currently "suspended." (Ex. 7.)

The plan also provides in Section 7.3.F that "[t]he Responsible Person [Ait] shall be discharged from all duties and responsibilities of the Plan upon the issuance of the final decree." (Ex. 3 at § 7.3.F.) Neither the plan nor the final decree nor any other document divests Mr. Ait of his role as corporate officer and director of Site Tech under California law.

**I.      The standing issue has already been fully discovered, and the requested documents are not reasonably calculated to lead to the discovery of additional evidence.**

Defendants have already asked for, and received, complete discovery on the standing issue.  They have received thousands of documents, including the documents in Site Tech's possession, and have deposed three individuals, including Jeffrey Ait, in North Carolina and South Carolina on this topic.  Because the standing issue has been fully discovered, Yahoo!'s attempt to compel attorney files is unnecessary, harassing, and burdensome, and it should be denied.

Yahoo!'s motion to compel is a fishing expedition designed to delay even further resolution of the standing issue in the Eastern District of Texas.[5]  Not content to challenge standing in the Texas action, Defendants filed a mirror-action declaratory judgment suit in this Court against SRA, Site Tech, and Egger, based on the same standing arguments they raised in the Eastern District of Texas.  (*Google, Inc., AOL LLC, Yahoo! Inc., IAC Search & Media, Inc., and Lycos, Inc. v. L. Daniel Egger, Software Rights Archive, LLC, and Site Technologies Inc.,* Civil Action No. 08-3172, in the U.S. District Court for the Northern District of California, San Jose Division.)  Defendants multiplied the litigation yet again by forming an alliance with a purported creditor of Site Tech and seeking to reopen Site Tech's long-closed bankruptcy.  (*In re Site Technologies, Inc.,* Case No. 99-50736 RLE, in the Bankruptcy Court for the Northern District of California, San Jose Division.)  The bankruptcy court reopened the proceedings for a

---

[5]      Yahoo!'s contention that the requested documents are "particularly relevant" to the standing issue is belied by the timing of the subpoenas.  The Texas suit was filed in November 2007, and the motion to dismiss on standing was filed in July 2008.  Yet Yahoo! did not serve a subpoena on WSGR until September 17, and did not serve a subpoena on Murray & Murray until December 22—only after the briefing on the standing issue was complete and the issue had been submitted to the Eastern District of Texas for resolution.

status conference and then continued them until April 2009 pending a ruling of the Texas court on standing. Yahoo!'s motion to compel Site Tech's attorneys' files is more of the same—an attempt to create an issue where none exists so as to delay resolution of the standing issue.

In its motion to compel Yahoo! argues that the requested documents are relevant because they "relate directly to the disputed events on which SRA relies" to establish standing in the Texas suit. (Mot. to Compel at 9.) But, as the recitation of facts above makes clear, the "events" upon which the chain-of-title arguments are based are not in dispute. The only dispute between the parties relates to the *legal effect* of those events—namely, the July 1997 stock exchange and the December 2000 merger. Yahoo! admits as much when it argues that it "expects that these documents will further confirm that SRA's reading of its allegedly contemporaneous evidence is contrary to the purpose and effect of the 1997 Stock Exchange Agreement." (Mot. to Compel at 9.) The purpose and effect of the agreement is to be determined from the transactional and related documents themselves, not a potential law firm memo on the topic.

Nor is discovery from WSGR relating to the bankruptcy and the December 2000 merger of Site/Tech into Site Tech reasonably calculated to lead to the discovery of admissible evidence. The parties do not dispute that, if Site/Tech held title to the patents in December 2000, Site Tech acquired title at that time. The parties instead disagree about the applicability of the doctrine of after-acquired title to the December 2000 acquisition, as well as about the *res judicata* effect of the bankruptcy court ruling. Once again, discovery about the events surrounding the December 2000 transaction or the bankruptcy in general can have no bearing on those legal questions.

## II. The attorney-client privilege protects the requested documents from production.

### A. The attorney-client privilege applies to a bankrupt or defunct corporation.

Yahoo!'s subpoena, which seeks the files of Site Tech's former lawyers, clearly calls for documents that would have been privileged prior to the commencement of Site Tech's

bankruptcy proceeding. *See, e.g., In re Grand Jury Subpoena 92-1(SJ)*, 31 F.3d 826, 829 (9th Cir. 1994) ("The attorney-client privilege protects confidential communications between a client seeking legal advice and an attorney providing such advice."). Yahoo! does not contest this; it instead argues that the documents lost their privileged status when the bankruptcy court entered a final decree on January 6, 2004 in Site Tech's bankruptcy proceeding. Yahoo! is wrong.

Federal law determines the scope of the attorney-client privilege here,[6] and the only Supreme Court decision to have addressed the question of the duration of the privilege concluded that the privilege survives death. In *Swidler & Berlin v. United States*, 524 U.S. 399 (1998), the Court held that the federal attorney-client privilege survives the death of the client when the client is a natural person. *Id.* at 411. The Court conducted a thorough examination of the case law addressing the question, most of which involved the testamentary exception, and explained that the cases uniformly presumed that the privilege survives, even if they did not so hold. *Id.* at 404. Rejecting the argument that the privilege should be "strictly construed" in light of its conflict with the judicial goal of truth seeking, the Court explained that the attorney-client privilege was "one of the oldest recognized privileges in the law" and that it was being asked "not simply to 'construe' the privilege, but to narrow it." *Id.* at 410.

*Swidler & Berlin* dealt with survival of an individual privilege, but its reasoning should guide the analysis of the survival of a corporate privilege as well. Although application of the attorney-client privilege in the corporate context is complicated by the fact that corporations act only through agents, the privilege serves the same function both for corporations and individuals:

---

[6]    *See* FED. R. EVID. 501 ("[T]he privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience."); *City of Rialto v. United States Dep't of Defense*, 492 F. Supp. 2d 1193, 1197 n.3 (C.D. Cal. 2007) (noting that when jurisdiction is based upon a federal question, federal law controls the determination of privileges).

the promotion of full and frank communications between attorneys and their clients, thereby promoting broader public interests in the observance of law and the administration of justice. *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348 (1985); *Upjohn v. United States*, 449 U.S. 383, 389 (1981). It therefore makes sense that the privilege should endure for corporations as it does for individuals. Just as an individual may fear even the posthumous disclosure of confidential communications (and so consequently withhold information), *see Swidler & Berlin*, 524 U.S. at 407, so too might a corporation's management and employees fear disclosure after dissolution or bankruptcy, particularly since, as explained below, even dissolved corporations may be sued.

Moreover, upholding the privilege for Site Tech here cannot deprive Yahoo! of any facts pertinent to the standing inquiry, since the attorney-client privilege protects only the disclosure of communications between attorney and client—not the disclosure of the underlying facts by those who communicated with the attorney. *Upjohn,* 449 U.S. at 395. Indeed, the only federal circuit court to have addressed the issue after *Swidler & Berlin* vacated a district court decision holding the privilege inapplicable to a defunct corporation. The Fourth Circuit in *In re: Grand Jury Subpoena #06-1*, 2008 WL 1781357 (4th Cir. Apr. 21, 2008), remanded the district court decision for consideration of whether the crime-fraud exception would apply to the withheld communications, a conclusion that "would obviate the need to address the unsettled legal question of whether the corporate attorney-client privilege survives dissolution of the corporate entity." *Id.* at *3; *see also Nelson Constr. Co. v. United States*, 2008 WL 5049304, at *2 (Fed. Cl. Nov. 18, 2008) (noting that the issue of a dissolved corporation's right to assert the privilege is "ultimately unsettled," and finding resolution of the question unnecessary).

The only case Yahoo! cites in support of its contention that the attorney-client privilege is inapplicable to a dissolved corporation is *City of Rialto v. United States Department of Defense*,

492 F. Supp. 2d 1193 (C.D. Cal. 2007). *City of Rialto* is a nonbinding opinion that is meaningfully distinguishable from the instant case. That case concerned Kwikset Locks, Inc., a company that had formally dissolved as a corporation some fifty years before the opinion was written and whose assets had been distributed to the American Hardware Company ("AHC"), which later became Emhart Industries, Inc. *Id.* at 1196. Without even citing *Swidler & Berlin*, the court found that Kwikset lost its right to assert the attorney-client privilege when its dissolution was complete in 1958. *Id.* at 1201.[7] But this finding was unnecessary to the ruling, as only one entity may assert the privilege, and the court held that the privilege had passed from Kwikset to its successor-in-interest. Following well established law that the authority to assert and waive a corporation's attorney-client privilege passes to a successor who has assumed managerial control,[8] the court found that, when AHC acquired substantially all of the assets of Kwikset following the dissolution, AHC also acquired the attorney-client privilege. *Id.* at 1201. Accordingly, in *City of Rialto*, it was AHC—not Kwikset—who had the right to protect the documents from disclosure by asserting the attorney-client privilege, although AHC failed to do so. *Id.* at 1201-02.

---

[7] The court relied primarily on two unpublished district court cases in reaching its conclusion, neither of which is persuasive here. In one of those cases, *Lewis v. United States,* 2004 WL 3203121 (W.D. Tenn. Dec. 7, 2004), the court's statement that "client confidentiality does not extend beyond the 'death' of a corporation" was *dicta*; the court's holding was that the attorney-client privilege was inapplicable because the attorney's actions resembled those of a business adviser rather than a legal counselor. *Id.* at *3. The other case, *Gilliland v. Geramita*, 2006 WL 2642525 (W.D. Pa. Sept. 14, 2006), which applied Pennsylvania law, does not stand for the proposition that the attorney-client privilege ceases upon corporate dissolution. The *Gilliland* court instead held that, since the CEO of the defunct corporation was dead and all other officers and directors had apparently resigned, there were no current management personnel who could assert the privilege on behalf of the corporation. *Id.* at *3. Indeed, the court impliedly recognized that the privilege does survive corporate dissolution, since it advocated "a presumption that the attorney-client privilege is no longer viable after a corporate entity ceases to function, unless a party seeking to establish the privilege demonstrates authority and good cause." *Id.* at *4.

[8] *See, e.g., Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 349 (1985).

---

The instant case is more analogous to *Overton v. Todman & Co.*, 249 F.R.D. 147 (S.D.N.Y. 2008), than *City of Rialto*. *Overton* involved a company, like Site Tech, that had not been formally dissolved, but that was no longer actively in business. *Id.* at 147. Certain non-parties, including the company's former counsel, withheld certain documents in response to a subpoena on the basis of the attorney-client privilege. *Id.* at 148. The court rejected the argument that the privilege was extinguished because the company was defunct. *Id.* Explaining that a corporation's current management controls the attorney-client privilege, the court held that the corporation's privilege existed and had been properly asserted by the defunct company's president and another former officer. *Id.* (citations omitted); *see also Randy Int'l, Ltd. v. Automatic Compactor Corp.*, 412 N.Y.S.2d 995, 997 (N.Y. Civ. Ct. 1979) (holding, under New York law, that fact "[t]hat the judgment debtor corporations are 'defunct and no longer functioning or operating' would not preclude the invocation of the privilege").

In fact, California lawyers have a statutory duty to preserve client confidences after the attorney-client relationship ends, and only the client can release the attorney from that obligation. *See* CAL. BUS. & PROF. CODE § 6068(e)(1); Cal. R. Prof. Conduct 3-100 ("A member shall not reveal information protected from disclosure by Business and Professions Code section 6068, subdivision (e)(1) without the informed consent of the client, or as provided in paragraph (B) of this rule [dealing with disclosure necessary to prevent a criminal act likely to cause death or bodily harm]."); *Commercial Standard Title Co. v. Superior Court of San Diego County*, 155 Cal. Rptr. 393, 400 (Cal. Ct. App. 1979). Therefore, WSGR is ethically bound to preserve the confidentiality of its communications with Site Tech unless and until Site Tech authorizes WSGR to release the communications.

Yahoo!'s citation of *Swidler & Berlin* in footnote 27 of its brief is misleading. The Court in *Swidler & Berlin* noted that California's privilege statute "is exceptional in that it apparently

allows the attorney to assert the privilege so long as a holder of the privilege (the estate's personal representative) exists, suggesting the privilege terminates when the estate is wound up," *Swidler & Berlin*, 524 U.S. at 405 n.2, but that comment is irrelevant to the question at issue here for two independent reasons. First and most importantly, California privilege law does not apply to this case. Second, even if it did, the particular statute referenced would not apply. Section 954 of the California Evidence Code provides that a lawyer can assert the lawyer-client privilege so long as there is a "holder of the privilege" in existence. *See* CAL. EVID. CODE § 954(c). Section 953(c), the statute referenced in *Swidler & Berlin*, defines a "holder of the privilege" as the personal representative of the client if the client is a deceased natural person. CAL. EVID. CODE § 953(c). Accordingly, if there is no personal representative, the privilege of a natural person terminates under California law. But, for a corporation that is no longer in existence, the "holder of the privilege" is instead defined as "[a] successor, assign, trustee in dissolution, *or any similar representative*." CAL. EVID. CODE § 953(d) (emphasis added). Such a representative exists here.

### B. Jeffrey Ait has authority to assert the privilege.

Yahoo! correctly observes that a corporation can act only through its agents. (Mot. to Compel at 11.) But Yahoo!'s argument that Site Tech no longer has agents who can assert the attorney-client privilege on its behalf is wrong.

Yahoo! claims that the final decree dissolved Site Tech and discharged Mr. Ait from his duties under the plan. The entry of the final decree resulted in a *de facto* dissolution, and Site Tech no longer has any assets or operations. Site Tech, however, has never been officially dissolved under California law.

And, while the final decree had the effect of discharging Mr. Ait of his duties and responsibilities as the Responsible Person for purposes of administering Site Tech's bankruptcy,

(Ex. 3 at § 7.3.F.), it is silent with respect to Mr. Ait's authority as Site Tech's CEO, CFO, and director. Mr. Ait is the last person standing and has acted in good faith to assert Site Tech's privilege. *See*, *e.g*., CAL. CORP. CODE §2001(d) ("The powers and duties of the directors . . . and officers after commencement of a dissolution proceeding include, but are not limited to" "defend[ing] suits brought against the corporation.")[9]

## C. Yahoo!'s argument that the attorney-client privilege is inapplicable to Site Tech is wrong as a matter of fairness.

Moreover, it would be unfair to divest Site Tech of the right to assert the attorney-client privilege in light of the fundamental inconsistencies in the positions taken by Yahoo! in this litigation. The basis for Yahoo!'s motion to compel privileged documents is that Site Tech allegedly has no legal existence and no agents with authority to assert the attorney-client privilege on Site Tech's behalf. Yet at the same time, in an attempt to wrest jurisdiction of the underlying patent case from the Eastern District of Texas, Yahoo! has sued Site Tech in a declaratory judgment action in this District, and an ally of Yahoo! has filed a motion to reopen Site Tech's bankruptcy proceedings. Yahoo! and its ally have claimed in all of these suits that Site Tech—rather than SRA—is the owner of the patents-in-suit, and they are seeking in the bankruptcy proceedings to have the patents declared an asset of Site Tech's bankruptcy estate. In other words, Yahoo! is seeking to revive Site Tech's legal existence.

It would be unfair to refuse to allow Site Tech to assert a privilege here because it has been "dissolved," while Yahoo! is seeking to breathe new life into the bankruptcy estate. Yahoo! certainly could not assert that Site Tech, through a representative in bankruptcy, would have no right to invoke the attorney-client privilege in that proceeding. *See, e.g., Commodity*

---

[9]      WSGR and Murray & Murray also have authority to invoke the privilege on behalf their former client. It is well established that if the client may invoke the attorney-client privilege, then the client's attorney may also do so on the client's behalf. *See Fisher v. United States*, 425 U.S. 391, 402 n.8 (1976).

*Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 358 (1985) (holding that bankruptcy trustee controls bankrupt corporation's attorney-client privilege). Yet if Site Tech cannot assert the attorney-client privilege in these proceedings, then those documents will have to be produced and the privilege will have been forever waived. Even if this Court were to conclude that Mr. Ait lacks authority to assert the privilege, which he does not, at the very least the determination of privilege should follow what happens in the bankruptcy case so that a premature waiver does not occur.

**III.     The work product privilege protects the requested documents from production.**

Yahoo!'s subpoena also calls on its face for documents protected by the federal work product doctrine. *See* FED. R. CIV. P. 26(b)(3) (providing that "a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative" without a showing of substantial need and undue hardship, and providing that, even upon such a showing, "the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation" must be protected). Many of the documents as to which Site Tech claims attorney-client privilege are also privileged under the work product doctrine.

Unlike the attorney-client privilege, the work product privilege belongs ***both*** to the attorney and the client. *See, e.g., In re Grand Jury Proceedings*, 43 F.3d 966, 972 (5th Cir. 1994) ("In contrast to the attorney-client privilege, the work product privilege belongs to both the client and the attorney, either one of whom may assert it."). Accordingly, regardless of the Court's determination as to Site Tech's right to assert the attorney-client privilege, WSGR may independently withhold production of documents protected under Rule 23(b)(3). *See, e.g., In re JMP Newcor Int'l, Inc.*, 204 B.R. 963, 964-65 (Bankr. N.D. Ill. 1997) (holding, in action on debtor corporation's motion to compel, that creditor's committee's counsel's notes were

protected from disclosure as opinion work product, and distinguishing between the attorney-client privilege and work product privilege on basis that latter belongs to both attorney and client).

**IV.     The other objections are valid and should be sustained.**

As explained above in Part I, none of the subpoena requests are reasonably calculated to lead to the discovery of admissible evidence concerning standing, and the requests are unreasonably cumulative and harassing given that the standing issues have been fully discovered. Respondents' and WSGR's relevance and burdensomeness objections to the discovery requests should be upheld and the motion to compel denied in its entirety on that basis.

Yahoo! makes only a superficial attempt to address Respondents' and WSGR's "other objections."[10]  A quick look at the actual document requests reveals their flaws.  (*See* WSGR Subpoena, attached hereto as Ex. 8 at 5-6.)  Respondents' and WSGR's objections should be upheld.

Each and every one of Yahoo!'s discovery requests is grossly overbroad on its face. Subpoenas are "facially overbroad" when "[a] large quantity of the documents sought have no connection to anything involved in th[e] case."  *Schaaf v. SmithKline Beecham Corp.*, 233 F.R.D. 451, 455 (E.D.N.C. 2005); *id.* at 453 (holding that Rule 26 relevance requirements apply to subpoenas issued under Rule 45).  The parties have agreed that discovery at this stage of the case will be directly only to the issue of standing—*i.e.*, whether title to the patents-in-suit, having

---

[10]     Yahoo! does not address Respondents' objections and responses to the subpoena on WSGR, claiming that Respondents' objections were improper since they were not made in the form of a protective order or motion to quash.  (Mot. to Compel at 13 n.34.)  As a practical matter, this is irrelevant because the objections made by WSGR and those made by Respondents are substantially similar.  Both sets of objections and responses are attached hereto for the Court's consideration as Exhibits 9 and 10.  Respondents filed objections rather than a motion for protection because a protective order was unnecessary; all interested parties knew that WSGR was withholding production of the documents on the basis of attorney-client privilege.

been originally vested in Egger, ultimately transferred to SRA. Yahoo!'s brief makes this clear; Yahoo! argues relevance based solely on the documents' purported relation to the standing defense in the pending Texas action. Yet Yahoo! has used the subpoena as an opportunity to attempt to obtain the lawyers' complete files concerning their representation of Site Tech. To give just a few examples, Yahoo! requests:

- "All DOCUMENTS RELATING TO SITE/TECHNOLOGIES/INC" (Request No. 1)
- "All DOCUMENTS RELATING TO the bankruptcy of SITE TECHNOLOGIES" (Request No. 4)
- "All DOCUMENTS RELATING TO Daniel Egger" (Request No. 5)

(*See* Ex. 8 at 5.) These requests would encompass virtually every document in WSGR's files. Yahoo! has made no effort to limit these—or any of—its requests to documents bearing on the standing issue. The requests are thus overbroad and unduly burdensome. *See* FED. R. CIV. P. 45(3)(A)(iv) (mandating that subpoenas be quashed or modified where they "subject[] a person to undue burden"); *Wiwa v. Royal Dutch Petroleum Co.,* 392 F.3d 812, 818 (5th Cir. 2004) ("A court may find that a subpoena presents an undue burden when the subpoena is facially overbroad.").

In order to defend its document requests, Yahoo! mischaracterizes them. Yet even Yahoo!'s paraphrased requests are overbroad and improper. For example, Yahoo claims that request number 2 seeks "the Stock Exchange Agreement of July 11, 1997." (Mot. to Compel at 13.) Request number 2 does seek that, but Yahoo! ignores that requests number 2 and 3 also seek "all documents relating to" the alleged acquisition of Site/Tech by Site Tech and any alleged merger of Site/Tech and Site Tech. (Ex. 8 at 5.) By seeking all documents relating to these transactions, the request goes far beyond what is even arguably relevant to the claims and defenses on the standing issue. Moreover, documents relating to the 1997 acquisition (including,

of course, the actual Stock Exchange Agreement to which Yahoo! refers) and 2000 merger **have already been produced** by Site Tech.

Yahoo! also claims that its requests number 6 and 7 clearly identify that they are seeking information relating to the asserted patents and any assignments of the asserted patents. But requests number 6 and 7 are not limited to the patents-in-suit; they also seek all documents relating to "any related patents or applications" and any litigation concerning the patents-in-suit. (Ex. 8 at 5.) These documents can have no bearing on the issues before the Eastern District of Texas. Moreover, a request for documents relating to the asserted patents and any assignments once again sweeps too broadly, and Defendants have already obtained discovery on these issues from non-lawyers.

Yahoo! states that its requests number 12 and 13 seek Libertech tax returns, which Yahoo! claims will shed light on corporate separateness. Once again, these requests seek not only the actual returns, but also "any related documents," a request that is both vague and irrelevant. (Ex. 8 at 5.) Even a request for the tax returns of Site Tech and Site/Tech is overbroad, since Yahoo! has not limited the request to returns that might evidence the ownership or transfer of the rights to the patents-in-suit. And, significantly, Defendants have already sought and obtained discovery of Site Tech's and Site/Tech's tax returns—as well as their financial statements (requests no. 14 and 15), certificates of incorporation (request no. 16), corporate status and corporate governance (requests no. 17 and 18), assets (requests no. 19 and 20), and disclosures and filings made with governmental authorities (requests no. 21 and 22).[11] In fact, Yahoo!'s document requests to WSGR are **identical** to requests directed to Jeffrey Ait. (*See*

---

[11]    Such disclosures and filings are public documents easily accessible to Yahoo!. *See* FED. R. CIV. P. 26(b)(2)(C)(i).

Subpoena directed to Jeffrey Ait, attached hereto as Ex. 11.) Mr. Ait and Site Tech have already complied with those requests.

Yahoo!'s requests for documents concerning technology owned by Site Tech and Site/Tech (requests no. 8, 9, 10, 11) are similarly overbroad and unnecessarily duplicative. Yahoo!'s requests seek, for example, "manuals, compiled and uncompiled code, and computer files" relating to software sold to Egger in the 1998 Bill of Sale; documents relating to any royalties or other consideration paid by Site Tech to Site/Tech regardless of the source of the royalties or consideration; documents relating to SiteSweeper, a technology that is not even related to the litigation; and documents relating to Starbase and the sale of any technology to Starbase regardless of the type of technology. (Ex. 8 at 5-6.) These documents can have no bearing on the standing issue. As with all of the other requests, requests number 8-11 are overbroad and duplicative in seeking documents that have already been requested and produced.

Given the questionable relevance of the documents to the purely legal questions before the Eastern District of Texas, the fact that Defendants have already secured discovery from Site Tech as to these very issues, and the fact that these requests are directed at Site Tech's attorneys for the purpose of securing privileged documents, Respondents' and WSGR's overbreadth and burdensomeness objections should be sustained. *See, e.g.*, FED. R. CIV. P. 26(b)(2)(C)(iii) (explaining that courts must limit discovery if it determines that "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of discovery in resolving the issues").

## CONCLUSION

For the foregoing reasons, Respondents respectfully request that the Court deny Yahoo!'s motion to compel.

Respectfully submitted,


_____/s/ Lee L. Kaplan_____
Thomas F. Smegal, Jr. (Bar No. 34,819)
One Sansome Street, 35th Floor
San Francisco, CA 94104
Telephone: (415) 217-8383
Facsimile: (415) 399-5093
Email: tomsmegal@smegallaw.com

Lee L. Kaplan (Texas Bar No. 11094400)
Jeffrey A. Potts (Texas Bar No. 00784781)
Kristen L. McKeever (Texas Bar No. 24030775)
Raj Duvvuri (Texas Bar No. 24054185)
(admitted *pro hac vice*)
700 Louisiana Street, Suite 2300
Houston, TX 77002
Telephone: (713) 221-2300
Facsimile: (713) 221-2320
Email: lkaplan@skv.com

Jay D. Ellwanger (Texas Bar No. 24036522)
P.O. Box 201690
Austin, Texas 78720
Telephone: (512) 681-4060
Facsimile: (512) 628-3410
Email: jellwanger@dpelaw.com

Attorneys for L. Daniel Egger and Software Rights
Archive, LLC

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing instrument has been forwarded to all counsel of record pursuant to the Federal Rules of Civil Procedure on this the 27th day of March, 2009.

                                        /s/ Lee L. Kaplan
                                     Lee L. Kaplan

Juanita R. Brooks
Jason W. Wolff
Fish & Richardson P.C.
12390 El Camino Real
San Diego, California  92130

Thomas B. Walsh, IV
Fish & Richardson P.C.
5000 Bank One Center
1717 Main St.
Dallas, Texas  75201

Ramon K. Tabtiang
Fish & Richardson P.C.
225 Franklin Street
Boston, Massachusetts 02110-2804

Michael A. Jacobs (CA Bar No. 111664)
Richard S.J. Hung (CA Bar No. 197425)
Morrison & Foerster
425 Market Street
San Francisco, CA 94105

Claude M. Stern (CA Bar No. 96737)
Jennifer A. Kash (CA Bar No. 203679)
Quinn Emanuel Urquhart Oliver & Hedges, LLP
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065

Mark D. Baker
Quinn Emanuel Urquhart Oliver & Hedges, LLP
51 Madison Ave., 22nd Floor
New York, New York 10010