# EXHIBIT C

Dockets.Justia.com

07-18-2006

Docket No.: EGG.999

FORM PTO-1595 (Modified)
(Rev. 03-01)
OMB No 0651-0027 (exp 5/3/2002)
P08A/REV03

JUL 1 3 2006

103276118

U.S. DEPARTMENT OF COMMERCE
Patent and Trademark Office

Tab settings ➤ ➤ ➤

To the Director of the United States Patent and Trademark Office: Please record the attached original documents or copy thereof.

| 1. Name of conveying party(ies): | 2. Name and address of receiving party(ies): |
|---|---|
| Site Technologies, Inc.  *7-13-06* | Name: **Daniel Egger** |
|  | Address: **2027 W. Club Boulevard** |
| Additional names(s) of conveying party(ies) ☐ Yes ☒ No |  |

**3. Nature of conveyance:**

| | |
|---|---|
| ☒ Assignment | ☐ Merger |
| ☐ Security Agreement | ☐ Change of Name |
| ☒ Other **Bill of Sale, Assignment & License Agreement** | City: **Durham**  State/Prov.: **NC** |
| | Country: **USA**  ZIP: **27705** |
| Execution Date: **September 16, 1998, September 15, 1998** | Additional name(s) & address(es) ☐ Yes ☒ No |

**4. Application number(s) or patent numbers(s):**

If this document is being filed together with a new application, the execution date of the application is: _____

| Patent Application No.  Filing date | B. Patent No.(s) |
|---|---|
| | 5,544,352 |
| | 6,233,571 |
| | 5,832,494 |
| Additional numbers ☐ Yes ☒ No | |

| 5. Name and address of party to whom correspondence concerning document should be mailed: | 6. Total number of applications and patents involved: **3** |
|---|---|
| Name: **STEPHEN R. WHITT** | 7. Total fee (37 CFR 3.41):................$ **120.00** |
| Registration No. **34,753** | ☒ Any excess or insufficiency should be credited or debited to deposit account |
| Address: **VOLENTINE FRANCOS & WHITT, PLLC** | ☒ Authorized to be charged to deposit account |
| **ONE FREEDOM SQUARE** | 8. Deposit account number: |
| **11951 FREEDOM DRIVE, SUITE 1260** | **50-0238** |
| City: **RESTON**  State/Prov.: **VA** | (Attach duplicate copy of this page if paying by deposit account) |
| Country: **USA**  ZIP: **20190** | |

**DO NOT USE THIS SPACE**

9. Statement and signature.
*To the best of my knowledge and belief, the foregoing information is true and correct and any attached copy is a true copy of the original document.*

| **STEPHEN R. WHITT** | *Stephen R. Whitt* | **JULY 13, 2006** |
|---|---|---|
| Name of Person Signing | Signature | Date |

Total number of pages including cover sheet, attachments, and document: **7**

Mail documents to be recorded with required cover sheet information to:
Mail Stop Assignment Recordation Services
Director of the United States Patent and Trademark Office
P.O. Box 1450, Alexandria, VA 22313-1450

**PATENT**
**REEL: 018160 FRAME: 0500**

This Bill of Sale, Assignment, and License Agreement is made this _16th_ day of September, 1998 (the "Effective Date"), by and between Site Technologies, Inc., a Corporation doing business in California ("Seller"), and Daniel Egger, a resident of the State of North Carolina ("Buyer").

WHEREAS Seller has agreed to sell and assign to Buyer and Buyer has agreed to purchase and accept from Seller, certain intellectual property, software, databases, and physical assets, defined below, for the consideration and terms set forth herein; and

WHEREAS Seller has in addition agreed to license certain software, defined below, as to which Seller desires to retain ownership but is willing to grant Buyer a perpetual, nonexclusive license, for the consideration and terms set forth herein;

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, it is hereby agreed as follows:

1. <u>Purchased Assets</u>. The "Purchased Assets" shall include the following:

(a)   PATENTS: U.S. Patent Number 5,544,352, filed June 14, 1993 (i.e., the "V-Search Patent"), and any additions, continuations, continuations in part, divisions, or extensions, reissues, renewals, or substitutions of such patent (including the "Aha Patent"), and any foreign counterpart of any of the foregoing, as well as all related documents and diagrams in the files of patent counsel;

(b)   TRADEMARKS and COPYRIGHTS: All Seller's rights in "V-Search," "Aha," "Libertech," and any terms used in or associated with the "V-Search Publisher's Toolkit," as well as all logos and marketing and promotional material incorporating such marks;

(c)   SOFTWARE and DATABASES: all software, whether source code or compiled, and all databases, associated with the V-Search data-visualization system or the Aha technology, including but not limited to all files contained on Drive D of the computer being conveyed as part of the sale (and reproduced in a separate set of tape backups), and enumerated in the memo prepared by Ron Sauers entitled "HIGH-LEVEL SUMMARY OF THE FILES CONTAINED ON DRIVE D:," attached hereto as Exhibit B and hereby incorporated by reference into this document;

(d)   THIRD-PARTY LICENSES: rights to all license agreements, including the Folio Infobase license, obtained to generate and use the SOFTWARE and DATABASES enumerated above;

(e)   PHYSICAL ASSETS: Extant copies of CD-ROMs and disks prepared for demonstrations of the V-Search technology, extant copies of the V-Search Publisher's Toolkit, extant

**PATENT
REEL: 018160 FRAME: 0501**

marketing materials, sales notebooks, etc., relating exclusively to the V-Search and Aha technologies - as well as the computer and backup tapes upon which the SOFTWARE and DATABASES enumerated above reside, and

        (f)     GOODWILL and CLAIMS: Any and all goodwill, and all claims and potential claims, relating to the Purchased Assets described above.

    2.     Seller warrants that it hereby transfers good and marketable title to the Purchased Assets, free and clear of all liabilities, mortgages, liens, pledges, charges, security interests, encumbrances or title retention agreements of any kind or nature.

    3.     Except for the foregoing warranty of title, THE PURCHASED ASSETS AND THE LICENSED SOFTWARE ARE PROVIDED "AS IS - WHERE IS" AND WITHOUT ANY WARRANTY OF ANY NATURE WHATSOEVER, IT BEING EXPRESSLY UNDERSTOOD AND AGREED THAT SELLER DISCLAIMS ALL OTHER WARRANTIES INCLUDING, BUT NOT LIMITED TO, WARRANTIES OF MERCHANTABILITY, NONINFRINGEMENT AND FITNESS FOR A PARTICULAR PURPOSE.

    4.     Buyer assumes no liabilities of Seller associated with the Purchased Assets or Licensed Software or the operation of the businesses related thereto prior to the Effective Date. Seller agrees to defend, indemnify, and hold Buyer harmless against any and all liabilities associated with the Purchased Assets or Licensed Software that arise prior to the Closing that may be asserted against Buyer after the Effective Date, provided (i) Buyer notifies Seller promptly in writing of such claim, (ii) Seller has sole control of the defense and all related settlement negotiations, and (iii) Buyer provides Seller with all reasonably necessary assistance to perform the foregoing. In no event shall Seller be liable under the foregoing for a claim based on modifications, adaptations or changes to the Licensed Software not made by Seller or for combinations of the Licensed Software with materials not furnished by Seller if such infringement would have been avoided but for such combination. Buyer agrees to defend, indemnify, and hold Seller harmless against any and all liabilities associated with the Purchased Assets that arise after the Effective Date, provided (i) Seller notifies Buyer promptly in writing of such claim, (ii) Buyer has sole control of the defense and all related settlement negotiations, and (iii) Seller provides Buyer with all reasonably necessary assistance to perform the foregoing.

    5.     IN NO EVENT SHALL THE MAXIMUM LIABILITY OF EITHER PARTY ARISING UNDER THIS AGREEMENT EXCEED THE AMOUNT PAID BY BUYER HEREUNDER. IN NO EVENT SHALL EITHER PARTY BE LIABLE TO THE OTHER PARTY FOR ANY LOST DATA OR CONTENT, LOST PROFITS OR FOR ANY INDIRECT, INCIDENTAL, SPECIAL, CONSEQUENTIAL, EXEMPLARY OR PUNITIVE DAMAGES ARISING OUT OF OR RELATING TO THE PURCHASED ASSETS OR LICENSED SOFTWARE PROVIDED HEREUNDER, EVEN IF SUCH PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES, AND NOTWITHSTANDING THE FAILURE OF ESSENTIAL PURPOSE OF ANY LIMITED REMEDY.

    6.    Purchase Price. In consideration of the Purchased Assets and the Licensed Software provided hereunder, Buyer shall pay Seller $100,000, payable in full on the Effective Date hereof.

**PATENT**
**REEL: 018160 FRAME: 0502**

7.    Licensed Software.  Buyer and Seller are aware that several components of Seller's software known as "SiteSweeper" are shared with the Purchased Assets.

Seller hereby grants Buyer a perpetual, worldwide, fully paid, nonexclusive license to copy, display, perform, create derivative works, distribute and otherwise use the Licensed Software, in source code form, solely in conjunction with the Purchased Assets. "Licensed Software" shall mean:

(a)    The "crawler" used to build Aha databases;

(b)    HTML Reporter - the reporter engine plus ISAPI extension; and

(c)    Miscellaneous utility files used by V-Search and/or Aha and also found in SiteSweeper.

Seller shall retain ownership of all copyrights and other rights in the Licensed Software, except that, although the Licensed Software is used in certain of the Purchased Assets, Seller shall have no ownership interest in such Purchased Assets.

8.    Further Assurances.

(a)    Seller agrees to instruct patent counsel, Dorsey and Whitney of Washington, D.C., that Seller has assigned to Buyer all such patent rights described above and such counsel is authorized and directed to make available and/or to deliver to Buyer all Seller's records relating to such patent rights.  Buyer may provide a copy of this Agreement to such counsel and this Agreement shall constitute Seller's authorization to release such files to Buyer.

(b)    Seller agrees from time to time, upon the request of the Buyer, to execute, acknowledge, and deliver all such further instruments, or perform such further acts, as may be necessary, in the opinion of the Buyer, in connection with the sale, assignment, conveyance, transfer and delivery of the Purchased Assets or the Licensed Software.

9.    Termination.  Either party may terminate this Agreement in the event of any material breach of the terms and conditions of this Agreement by the other party, which default continues in effect after the defaulting party has been provided with written notice of default and thirty (30) days to cure such default. Sections 1, 3, 4, 5, 6, 9 and 10 shall survive any termination of this Agreement.

10.    This Agreement, including the exhibits attached hereto, constitute the entire agreement and understanding of the parties with respect to the subject matter contained herein and supersede or cancel all prior agreements respecting such subject matter. This Agreement may be amended only by a written instrument executed by all the parties or their successors or assigns. This Agreement shall inure to the benefit of and be binding upon the parties hereto and their successors and assigns. In the event any provision of this Agreement shall be held to be invalid, the remaining provisions of this Agreement shall be unimpaired and the parties will substitute a new enforceable provision of like economic intent and effect. This Agreement may be executed in one or more counterparts and each counterpart deemed an original. This Agreement may also be executed and

PATENT
REEL: 018160 FRAME: 0503

delivered in counterparts executed and delivered via facsimile transmission, and any such counterpart shall be deemed an original for all intents and purposes.

IN WITNESS HEREOF, the parties have caused this Agreement to be executed as of the Effective Date:

Buyer: _____        Seller: _____
Daniel Egger                                        Site Technologies
                                                        Jeff Ait, Chief Executive Officer

Date:   Sept. 16 `98                         Date:   Sept 15, 1998

PATENT
REEL: 018160 FRAME: 0504

EXHIBIT A

## ASSIGNMENT OF PATENT

WHEREAS the undersigned SITE TECHNOLOGIES, INC., a California corporation ("Assignor"), is the sole owner of Patent number 5,544,352, issued August 6, 1996;

WHEREAS DANIEL EGGER, a resident of the State of North Carolina having his principal residence at 2027 W. Club Boulevard, Durham, NC 27705 ("Assignee"), is desirous of obtaining the entire right, title and interest in, to and under the said Patent;

NOW THEREFORE, in consideration of the sum of One Dollar ($1.00) to the undersigned in hand paid, and other good and valuable consideration, the receipt of which is hereby acknowledged, the undersigned, the said Assignor, has sold, assigned, transferred and set over, and by these presents does hereby sell, assign, transfer and set over, unto the said Assignee, its successors, legal representatives and assigns, the entire right, title and interest in, to and under the said Patent, and all divisions, renewals and continuations thereof, and all issues and extensions thereof, and all applications for industrial property protection, including, without limitation, all applications for patents, utility models, and designs which may hereafter be filed for the invention(s) claimed in such Patent in any country or countries foreign to the United States, together with the right to file such applications and the right to claim for the same the priority rights derived from said United States Patent under the Patent Laws of the United States, the International Convention for the Protection of Industrial Property, or any other international agreement or the domestic laws of the country in which any such application is filed, as may be applicable; and all forms of industrial property protection, including, without limitation, patents, utility models, inventors' certificates and designs which may be granted for said inventions in any country or countries foreign to the United States and all extensions, renewals and reissues thereof;

AND THE UNDERSIGNED HEREBY authorizes and requests the Commissioner of Patents and Trademarks of the United States, and any Official of any country or countries foreign to the United States, whose duty is to issue patents or other evidence or forms of industrial property protection on applications as aforesaid, to issue the same to the said Assignee, its successors, legal representatives and assigns, in accordance with the terms of this instrument;

AND THE UNDERSIGNED HEREBY covenants and agrees that it has full right to convey the entire interest herein assigned, and that it has not executed, and will not execute, any agreement in conflict herewith;

AND THE UNDERSIGNED HEREBY further covenants and agrees that it will com-
_____ and assigns any facts known.

ATTEST:

CASC:\WINDOWS\TEMP\SiteTech.assignment.doc

_Sharon L Fight_
_____ Secretary

CASC.\WINDOWS\TEMP\SiteTech.assignment.doc                    -2-

**RECORDED: 07/13/2006**

**PATENT**
**REEL: 018160 FRAME: 0506**