# EXHIBIT Y

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| SOFTWARE RIGHTS ARCHIVE, LLC | § § | |
| v. | § § | CIVIL NO. 2:07-CV-511(CE) |
| GOOGLE, INC., ET AL. | § § | |

## SOFTWARE RIGHTS ARCHIVE, LLC'S
## OBJECTIONS AND RESPONSES TO DEFENDANTS'
## FIRST SET OF COMMON INTERROGATORIES (NOS. 1-9)

To:   Google Inc. and AOL LLC, by and through their attorneys, Juanita R. Brooks, Fish & Richardson P.C., 12390 El Camino Real, San Diego, CA 92130, Thomas B. Walsh, IV, Fish & Richardson, P.C., 1717 Main Street, Suite 5000, Dallas, TX 75201, and Harry L. Gillam, Jr. and Melissa R. Smith, Gillam & Smith, L.L.P., 303 South Washington Avenue, Marshall, TX 75670; Yahoo! Inc., by and through its attorneys, Michael A. Jacobs and Richard S.J. Hung, Morrison & Foerster LLP, 425 Market Street, San Francisco, CA 94016, and Michael E. Jones, Potter Minton, 110 N. College, Suite 500, Tyler, TX 75710; and IAC Search & Media, Inc. and Lycos, Inc., by and through their attorneys, Claude M. Stern and Jennifer A. Kash, Quinn Emanuel Urquhart Oliver & Hedges, LLP, 50 California Street, 22nd Floor, San Francisco, CA 94111, Mark D. Baker, Quinn Emanuel Urquhart Oliver & Hedges, LLP, 51 Madison Avenue, 22nd Floor, New York, New York 10010 and Otis Carroll, Ireland, Carroll & Kelley, P.C., 6101 S. Broadway, Suite 500, Tyler, Texas 75703.

Software Rights Archive, LLC ("SRA") makes the following objections and responses to Defendants' First set of Common Interrogatories (Nos. 1-9).

Respectfully submitted,

/s/ Lee L. Kaplan

Lee L. Kaplan
LEAD ATTORNEY
State Bar No. 11094400
Jeffrey A. Potts
State Bar No. 00784781
Raj Duvvuri
State Bar No. 24054185
SMYSER KAPLAN & VESELKA, L.L.P.
700 Louisiana, Suite 2300
Houston, Texas 77002

> Subject to and without waiving the foregoing objections, SRA owns the patents and has the right to proceeds from the litigation. SRA's stakeholder has an interest. Daniel Egger is an inventor who has entered into a consulting agreement with SRA. Egger is not an employee, director, officer, or stockholder of SRA. He retains an interest in the outcome of this litigation. Trial counsel for SRA also have an interest.

### Interrogatory No. 5

DESCRIBE IN DETAIL all efforts (including any attempts, whether or not successful ) by any PERSON to commercialize (including to market, license, monetize, and/or sell) the PATENTS-IN-SUIT and the technology described therein.

Response:

> SRA objects to this interrogatory because it is duplicative of Interrogatory Nos. 1 and 2. SRA objects to this interrogatory because it seeks information outside the personal knowledge of SRA. SRA will limit its response to its non-confidential efforts to commercialize the patents-in-suit. SRA objects to this interrogatory because the information requested may be discovered by Defendants just as easily as it may be discovered by SRA. SRA objects to this interrogatory to the extent that it calls for the disclosure of information protected by the attorney-client privilege, attorney work product doctrine, and the common interest privilege. SRA objects to providing information subject to confidentiality obligations owed to third parties.
>
> Subject to and without waiving the foregoing objections, pursuant to Federal Rule of Civil Procedure 33(d), SRA refers Defendants to the documents produced in this case pursuant to Eastern District of Texas Patent Local Rule 3-2, at Bates Nos. EGG_0000671 – EGG_0012106 and EGG_0013756 – EGG_0014091 and to documents SRA will produce hereafter. Furthermore, SRA refers Defendants to its responses and objections to Interrogatory Nos. 1 and 2.
>
> SRA has had post-litigation settlement and licensing discussions.

### Interrogatory No. 6

IDENTIFY all software for searching data (including Internet web pages), where such searching included link analysis, that any PERSON having or alleging to have an interest in the PATENTS-IN-SUIT at any time had knowledge of and/or used prior to May 15, 2001. Include in your response a DESCRIPTION of the circumstances (including the date and PERSONS involved) of acquiring such knowledge or making such use.

Response:

> SRA objects to this interrogatory as overbroad, not properly limited in time, unduly burdensome, vague, and ambiguous. SRA objects to this interrogatory to the extent

9

Response:

>SRA objects to this interrogatory because it seeks information outside the personal knowledge of SRA, is unduly burdensome, and requires SRA to prematurely and burdensomely marshal all of its evidence prior to engaging in discovery. SRA objects to this interrogatory because the information requested may be discovered by Defendants just as easily as it may be discovered by SRA. SRA objects that discovery is ongoing, that this contention interrogatory is premature and that Defendants have not provided information concerning their prior knowledge of the Patents in response to Plaintiffs' discovery requests. The following is not intended to be a recital of each and every fact that may support a finding of willful infringement and is subject to amendment or supplementation as information is discovered.

>Subject to and without waiving the foregoing objections, SRA states generally that, upon information and belief, each of the Defendants had knowledge of the technology of the Patents-In-Suit as well as the fact that their own search technology infringed the Patents-in-Suit prior to this litigation, including specifically as follows:

Yahoo!:

>In 1996, Daniel Egger met with Mike Moritz of Sequoia Capital concerning investment in his company, Libertech. Moritz told Egger at that meeting that because Sequoia was already an investor and Board Member at Yahoo!, any further Sequoia investment in the search area would require Yahoo!'s cooperation. Moritz also told Egger that he was trying to get Yahoo! to commit funds to make venture capital-type investments in early stage companies in their sector, alongside Sequoia. Sequoia introduced Yahoo! to the technology for evaluation and Egger had discussions with both companies. During these discussions, Egger provided materials concerning the technology and notified both companies that the technology was before the U.S. Patent Office. In 1996, Daniel Egger met directly with executives of Yahoo! including, Jerry Yang (Chief Yahoo!), Farzad Nazem (VP of Engineering and Operations), Jeff Mallett (Senior VP), and Phu Hoang concerning using link analysis for the Yahoo! Search Engine. There were extensive discussions between Libertech and Yahoo! concerning the technology and the parties exchanged correspondence and documentation in connection with these discussions.

>Furthermore, upon information and belief, Yahoo! incorporated patented technology from Alta Vista's search engine into its own technology and purchased Alta Vista or its technology. During the prosecution of Alta Vista's U.S. Patent No. 6,073,135, the '494 Patent was cited against Alta Vista's patented search technology. Upon information and belief, Yahoo! operates, controls or otherwise manages the current Alta Vista website (www.altavista.com).

Furthermore, after having knowledge of Daniel Egger's patented technology, Yahoo! employed Google's infringing technology into its search engine. In the early to mid 2000s, Yahoo! also developed and employed an infringing link analysis technology.

Thus, Yahoo!'s agents had direct knowledge of Egger's patented technology and knowingly and/or recklessly engaged in activity it knew was infringing.

Google:

Upon information and belief, after Daniel Egger had discussions with and provided materials to Sequoia Capital and Yahoo!, both Sequoia Capital and Yahoo! entered into discussions with Google's founders for investment and/or use of Google's infringing PageRank technology and entered into cooperative arrangements. Upon information and belief, Google or its agents had a relationship with parties that had information concerning Daniel Egger's technology provided earlier to Sequoia and Yahoo! and prior to the patenting of its PageRank technology.

Further, Lawrence Page, a founder and the CEO of Google and an inventor of the infringing technology PageRank (which is the subject of the current lawsuit) embodied the PageRank technology in U.S. Patent No. 6,285,999. During the prosecution of the '999 patent, the examiner cited Daniel Egger's '494 Patent against claims pertaining to PageRank. Inventor Page responded to the examiner, characterized Egger's patented technology, and narrowed his claims in view of the '494 Patent. This demonstrates direct knowledge of the content of the '494 Patent and that it directly implicated the PageRank technology. Inventor Page further cited Daniel Egger's patent as relevant prior art in several further related patents pertaining to PageRank. Further, Lawrence Page is the inventor of other patents that cite to one or more of SRA Patents, including: U.S. Patent No. 7,058,928 (cites to the '494 Patent); and U.S. Patent No. 7,269,587 (cites to the '494 Patent).

Furthermore, after having knowledge of Daniel Egger's patented technology, Google employed the infringing technology in its search engine. Thus, Google's agents had direct knowledge of Egger's patented technology and knowingly and/or recklessly engaged in activity it knew was infringing.

IAC:

In June 1996, Daniel Egger met with Excite, including the following Excite personnel: Graham Spencer, the founder and Chief Technology Officer; David Sze, Director of Marketing; Greg Donato, Director of Marketing for Personal Excite; and several Excite engineers. Excite expressed an interest in combining Excite's technology with Libertech's patented technology, particularly relating to internet searching and intranet searching. A partnership between Libertech and Excite was discussed. George Bell, Excite CEO, later contacted Jay Desai, Libertech's banker at Hambrecht and Quist. Libertech and Excite had a number of follow-up phone

calls with Excite's Graham Spencer, and Libertech prepared and provided a detailed technology-development plan and other materials for Excite. Excite was told that Libertech's technology was before the patent office. Egger and Spencer met in person a second time later in 1996. In 2004, IAC acquired Excite and operates Excite.com.

Furthermore, after having knowledge of Daniel Egger's patented technology, IAC employed the infringing technology in its search engine. Thus, IAC's agents had direct knowledge of Egger's patented technology and knowingly and/or recklessly engaged in infringing activity.

AOL:

During the prosecution of AOL's U.S. Patent No. 7,281,215 (the "'215 Patent") all three of the Patents at issue in this case (the '352 Patent, the '494 Patent, and the '571 Patent) were cited against AOL's '215 Patent.

Further, in June 1996, Daniel Egger met with a Netscape representative, Ben Horowitz, Senior Product Manager for server products, to discuss the patented technology. Netscape was later acquired by AOL and, upon information and belief, Horowitz subsequently went to work for AOL.

Furthermore, after having knowledge of Daniel Egger's patented technology, AOL employed the infringing technology in its search engine. Thus, AOL's agents had direct knowledge of Egger's patented technology and knowingly and/or recklessly engaged in infringing activity.

Lycos:

Upon information and belief, Libertech may have contacted or attempted to contact Lycos in the mid to late 1990s, either directly or indirectly (through its banker Hambrecht and Quist). SRA will supplement its response as it investigates facts and obtains additional discovery.