# EXHIBIT B
# PART 5

Dockets.Justia.com

# EXHIBIT 17

SEC Info - Site Technologies Inc - 10QSB - For 9/30/98

limiting related marketing expenditures. In addition, the remaining directors have continued to focus on evaluating strategic options for the Company, including a sale of the Company to a third party or a sale of the Company's assets. There can be no assurance that the Company can successfully identify an acceptable strategic option or that such strategic option, once identified, will be consummated on a timely basis or at all.

**DeltaGraph Disposition.** On June 27, 1997, as part of the Company's continuing strategy to focus its development, sales and marketing efforts on Internet software products, the Company consummated the *"DeltaGraph Disposition"* pursuant to which the Company sold assets related to its DeltaGraph software product for $910,000 in cash to SPSS Inc. (*"SPSS"*). The DeltaGraph product line consisted of an advanced multi-platform charting and graphics software product for desktop applications. The effective date for the disposition was May 1, 1997. As part of the DeltaGraph Disposition, DeltaPoint agreed to assist in the transition of DeltaGraph to SPSS through July 31, 1997. In return, SPSS agreed to make an additional $400,000 cash payment to DeltaPoint on August 10, 1997. See Note 4 to the Notes to Consolidated Financial Statements in the Company's Form 10-KSB for the year ended December 31, 1997.

In addition to further focusing the Company on Internet software, the DeltaGraph

7

**EXHIBIT 17**

disposition provided the Company with much needed liquidity.

V-Search Disposition. On September 30, 1998, the Company consummated the sale of its V-Search technology and related patents. This was technology that the Company acquired in the Site Tech Acquisition. The Company sold the assets relating to V-Search in cash to Daniel Edgar. The Company received a cash payment of $100,000.

Recent Acquisitions. On July 11, 1997, the Company consummated the "Site Tech Acquisition" pursuant to which the Company issued a total of 550,029 shares of Common Stock, made a cash payment of $60,000 and assumed liabilities of $73,000 for a total purchase price of $638,000 in exchange for all outstanding shares of Site. The Company recognized a charge to operations of $500,000 for the portion of the purchase price determined to be in-process research and development.

On November 19, 1997, the Company consummated the "Inlet Technology Acquisition" pursuant to which the Company acquired from Inlet certain Internet technologies. As consideration for the Inlet Technology Acquisition, the Company issued Notes payable of $825,000 in cash and 360,000 shares of the Company's Common Stock. The Company recognized a charge to operations of approximately $1.1 million for the portion of the purchase price determined to be in-process research and development

See Note 6 of Notes to Consolidated Financial Statements in the Company Form 10-KSB for the year ended December 31, 1997 for further discussion of the Site Tech and Inlet Acquisitions.

Revenues. The Company's revenues consist of license revenues from sales of software products to distributors, resellers and end users. In addition, the Company derives license revenues from royalty agreements with certain customers. Under these agreements, the Company typically receives a large percentage of the aggregate revenues in the form of a nonrefundable royalty paid upon shipment of the master copy of software, which allows the customer to license a specified number of copies of the Company's software. In addition, the Company recently introduced products targeted at the small to medium size businesses ("SMBs") and corporate department user markets for scalable Web site development and management solutions. In connection with the introduction of these products, the Company increased its use of non-retail distribution channels including value added resellers ("VARs"), original equipment manufacturers ("OEMs") and Internet Service Providers ("ISPs").

Software product sales are recognized upon shipment of the product, net of appropriate allowances for estimated returns. Revenues from software royalty agreements are recognized upon shipment of a master copy of the software product if no significant vendor obligations remain under the term of the license agreements and any amounts to be paid are nonrefundable. Payments received in

# EXHIBIT 18

-----BEGIN PRIVACY-ENHANCED MESSAGE-----
Proc-Type: 2001,MIC-CLEAR
Originator-Name: webmaster@www.sec.gov
Originator-Key-Asymmetric:
 MFgwCgYEVQgBAQICAf8DSgAwRwJAW2sNKK9AVtBzYZmr6aGjlWyK3XmZv3dTINen
 TWSM7vrzLADbmYQaionwg5sDW3P6oaM5D3tdezXMm7z1T+B+twIDAQAB
MIC-Info: RSA-MD5,RSA,
 TXJOOW7VoZFimQNZkOX7ajjGymlmWV+vWtMW3N7Z4XwJX+qa5McTKNq6KLhMOqaU
 EFFto7yaepvsHzPnthurhg==

<SEC-DOCUMENT>0001047469-98-001931.txt : 19980126
<SEC-HEADER>0001047469-98-001931.hdr.sgml : 19980126
ACCESSION NUMBER:		0001047469-98-001931
CONFORMED SUBMISSION TYPE:	8-K
PUBLIC DOCUMENT COUNT:		1
CONFORMED PERIOD OF REPORT:	19980119
ITEM INFORMATION:
FILED AS OF DATE:		19980123
SROS:			NASD

FILER:

	COMPANY DATA:
		COMPANY CONFORMED NAME:			DELTAPOINT INC
		CENTRAL INDEX KEY:			0001003754
		STANDARD INDUSTRIAL CLASSIFICATION:	SERVICES-PREPACKAGED SOFTWARE [737
		IRS NUMBER:				770216760
		STATE OF INCORPORATION:			CA
		FISCAL YEAR END:			1231

	FILING VALUES:
		FORM TYPE:		8-K
		SEC ACT:
		SEC FILE NUMBER:	001-11741
		FILM NUMBER:		98512093

	BUSINESS ADDRESS:
		STREET 1:		380 EL PUEBLO DR
		STREET 2:		STE 100
		CITY:			SCOTTS VALLEY
		STATE:			CA
		ZIP:			95066-4212
		BUSINESS PHONE:		4086484000

	MAIL ADDRESS:
		STREET 1:		380 EL PUEBLO DRIVE
		STREET 2:		STE 100
		CITY:			SCOTTS VALLEY
		STATE:			CA
		ZIP:			95066-4212
</SEC-HEADER>
<DOCUMENT>
<TYPE>8-K
<SEQUENCE>1
<DESCRIPTION>FORM 8-K
<TEXT>

<PAGE>

                    UNITED STATES SECURITIES AND EXCHANGE COMMISSION
                            WASHINGTON, D.C. 20549


                                                            EXHIBIT 18

```
-----------------
     FORM 8-K
```

CURRENT REPORT

PURSUANT TO SECTION 13 OR 15(d) OF THE
SECURITIES EXCHANGE ACT OF 1934.

DATE OF REPORT (DATE OF EARLIEST EVENT REPORTED): JANUARY 19, 1998

SITE TECHNOLOGIES, INC.
(FORMERLY DELTAPOINT, INC.)
(EXACT NAME OF REGISTRANT AS SPECIFIED IN ITS CHARTER)

COMMISSION FILE NUMBER 001-11741

| CALIFORNIA | 77-0216760 |
|---|---|
| (STATE OR OTHER JURISDICTION OF INCORPORATION OR ORGANIZATION) | (I.R.S. EMPLOYER IDENTIFICATION NUMBER) |
| 380 EL PUEBLO ROAD SCOTTS VALLEY, CALIFORNIA (ADDRESS OF PRINCIPAL EXECUTIVE OFFICES) | 95066 (ZIP CODE) |

REGISTRANT'S TELEPHONE NUMBER, INCLUDING AREA CODE: (408) 461-3017

<PAGE>

ITEM 5.     OTHER EVENTS

On January 16, 1998, the shareholders of DeltaPoint, Inc. (the "Company") approved an amendment of the Company's Articles of Incorporation to change the Company's name to "Site Technologies, Inc." The Company has been doing business as Site Technologies, Inc. since October 1997 when the Board of Directors of the Company (the "Board") unanimously adopted a resolution approving the change in the Company's name, subject to shareholder approval. On January 20, 1998, the Company amended its Articles of Incorporation to effect the name change.

On January 21, 1998, the Company began trading under its new symbol "SITE" on the OTC Bulletin Board.

On January 23, 1998, the Company began trading under its new symbol "SYT" on the Pacific Exchange.

<PAGE>

SIGNATURES

Pursuant to the requirements of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned hereunto duly authorized.

DELTAPOINT, INC.

By:  /s/ Jeffrey F. Ait
    ----------------------------
    Jeffrey F. Ait

                                        Chief Executive Officer
                                        and Chief Financial Officer

```
</TEXT>
</DOCUMENT>
</SEC-DOCUMENT>
-----END PRIVACY-ENHANCED MESSAGE-----
```

# EXHIBIT 19

Form CD-479 (Rev. 9-98)

# North Carolina Annual Report
# For Business Corporations

SOSID: 0351933
Date Filed: 4/17/2001 3:18 PM
Elaine F. Marshall
North Carolina Secretary of State
2001 107 29039

Name of Corporation: **SITE/TECHNOLOGIES/INC**

State of Incorporation: **DELWARE**       Fiscal Year Ending: **12/31/1998**
                                                                Month/Day/Year

Secretary of State Corp. ID Number: _____

Federal Employer ID Number: **52-1785767**

Check here if information has not changed since most recently filed Annual Report, complete line 8 only.   [ X ]
1. Registered agent & registered office mailing address: **N/A**

2. Street address and county of registered office: _____

3. If registered agent changed, signature of new agent: _____
                                                        (signature constitutes consent to appointment)

4. Enter principal office address here: **1120 FOREST AVE., #301**
                                        Address
                                        **PACIFIC GROVE, CA 93950**
                                        City                    State           Zip

5. Enter principal office telephone number here: _____

6. Enter name, title and business address of principal officers here:

Name: _____  Title _____

Address: _____

    City                    State                   Zip

Name: _____  Title _____

Address: _____

    City                    State                   Zip

Name: _____  Title _____

Address: _____

    City                    State                   Zip

7. Briefly describe the nature of business: **BUSINESS SERVICES**

8. Certification of annual report, must be completed by all corporations

_____
(Form must be signed by officer of corporation)

JEFFREY E. AT
(Type or print name)

1-19-01
(Date)

CEO/CFO
(Type or print title)

1233835 3.000    GWROLY  1273                    52-1785767              19

EXHIBIT 19

# EXHIBIT 20

# Form **1120**

Department of the Treasury
Internal Revenue Service

## U.S. Corporation Income Tax Return

For calendar year 1998 or tax year beginning _____, 1998, ending _____, 19___

Instructions are separate. See page 1 for Paperwork Reduction Act Notice.

OMB No. 1545-0123

**1998**

| A Check if a: | | B Employer identification number |
|---|---|---|
| 1 Consolidated return (attach Form 851) | **Name** SITE/TECHNOLOGIES/INC | 52-1785767 |
| 2 Personal holding co. (attach Sch. PH) | **Number, street, and room or suite no.** (If a P.O. box, see page 5 of instructions.) 1120 FOREST AVE., #301 | C Date incorporated 06/15/1992 |
| 3 Personal service corp. (as defined in Temporary Regs. sec. 1.441-4T —see instructions) | **City or town, state, and ZIP code** PACIFIC GROVE, CA 93950 | D Total assets (see page 5 of instructions) $ 16,736. |

E Check applicable boxes: (1) ☐ Initial return (2) ☐ Final return (3) ☐ Change of address

| | | | | | |
|---|---|---|---:|---|---:|
| Income | 1 a | Gross receipts or sales | | b Less returns and allowances | c Bal ▶ 1c |
| | 2 | Cost of goods sold (Schedule A, line 8) | | 2 | |
| | 3 | Gross profit. Subtract line 2 from line 1c | | 3 | |
| | 4 | Dividends (Schedule C, line 19) | | 4 | |
| | 5 | Interest | | 5 | |
| | 6 | Gross rents | | 6 | |
| | 7 | Gross royalties | | 7 | 18,920. |
| | 8 | Capital gain net income (attach Schedule D (Form 1120)) | | 8 | |
| | 9 | Net gain or (loss) from Form 4797, Part II, line 18 (attach Form 4797) | | 9 | |
| | 10 | Other income (see page 6 of instructions - attach schedule) | | 10 | |
| | 11 | **Total income.** Add lines 3 through 10 ▶ | | 11 | 18,920. |
| Deductions (See instructions for limitations on deductions.) | 12 | Compensation of officers (Schedule E, line 4) | | 12 | |
| | 13 | Salaries and wages (less employment credits) | | 13 | 88,000. |
| | 14 | Repairs and maintenance | | 14 | |
| | 15 | Bad debts | | 15 | |
| | 16 | Rents | | 16 | 4,690. |
| | 17 | Taxes and licenses | | 17 | |
| | 18 | Interest | | 18 | |
| | 19 | Charitable contributions (see page 8 of instructions for 10% limitation) | | 19 | |
| | 20 | Depreciation (attach Form 4562) | 20 | 31,692. | |
| | 21 | Less depreciation claimed on Schedule A and elsewhere on return | 21a | | 21b 31,692. |
| | 22 | Depletion | | 22 | |
| | 23 | Advertising | | 23 | |
| | 24 | Pension, profit-sharing, etc., plans | | 24 | |
| | 25 | Employee benefit programs | | 25 | |
| | 26 | Other deductions (attach schedule) SEE STATEMENT 1 | | 26 | 476,206. |
| | 27 | Total deductions. Add lines 12 through 26 ▶ | | 27 | 600,588. |
| | 28 | Taxable income before net operating loss deduction and special deductions. Subtract line 27 from line 11 | | 28 | -581,668. |
| | 29 | Less: a Net operating loss deduction (see page 9 of instructions) STMT 2 | 29a | | |
| | | b Special deductions (Schedule C, line 20) | 29b | | 29c |
| | 30 | Taxable income. Subtract line 29c from line 28 | | 30 | -581,668. |
| Tax and Payments | 31 | Total tax (Schedule J, line 12) | | 31 | NONE |
| | 32 | Payments: a 1997 overpayment credited to 1998 | 32a | | |
| | | b 1998 estimated tax payments | 32b | | |
| | | c Less 1998 refund applied for on Form 4466 | 32c ( ) | d Bal ▶ 32d | |
| | | e Tax deposited with Form 7004 | | 32e | |
| | | f Credit for tax paid on undistributed capital gains (attach Form 2439) | | 32f | |
| | | g Credit for Federal tax on fuels (attach Form 4136). See instructions | 32g | | 32h |
| | 33 | Estimated tax penalty (see page 10 of instructions). Check if Form 2220 is attached ▶ ☐ | | 33 | |
| | 34 | Tax due. If line 32h is smaller than the total of lines 31 and 33, enter amount owed | | 34 | NONE |
| | 35 | Overpayment. If line 32h is larger than the total of lines 31 and 33, enter amount overpaid | | 35 | NONE |
| | 36 | Enter amount of line 35 you want: Credited to 1999 estimated tax ▶ Refunded ▶ | | 36 | NONE |

| Sign Here | Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge. |
|---|---|
| | ▶ _[signature]_ Signature of officer   11-19-01 Date   CEO/CFO Title |

| Paid Preparer's Use Only | Preparer's signature ▶ _[signature]_ | Date 1-21-00 | Check if self-employed ☐ | Preparer's social security no. 585 64 5517 |
|---|---|---|---|---|
| | Firm's name (or yours if self-employed) and address ▶ PRICEWATERHOUSECOOPERS LLP 10 ALMADEN BOULEVARD, SUITE 1600 SAN JOSE, CA | | EIN 13-4008324 ZIP code 95113 |

JSA
8C1110 1.000
GWR0LY   1273                52-1785767          3

EXHIBIT 20

# EXHIBIT 21

# AMENDED AND RESTATED

## CERTIFICATE OF INCORPORATION

### OF

**Site/technologies/inc.
a Delaware corporation**

Site/technologies/inc., a corporation organized and existing under the laws of the State of Delaware, does hereby certify:

1.      The name of the corporation is Site/technologies/inc. (the "Corporation").

2.      The amendment and restatement herein set forth has been duly approved by the Board of Directors of the Corporation and by the stockholders of the Corporation pursuant to Sections 141, 228 and 242 of the General Corporation Law of the State of Delaware ("Delaware Law"). Approval of this amendment and restatement was approved by a written consent by all of the stockholders of the Corporation pursuant to Section 228 of the Delaware Law.

3.      The restatement herein set forth has been duly adopted pursuant to Section 245 of the Delaware Law. This Amended and Restated Certificate of Incorporation restates and integrates and amends the provisions of the Corporation's Certificate of Incorporation.

4.      The text of the Certificate of Incorporation is hereby amended and restated to read in its entirety as follows:

## "ARTICLE ONE

The name of this corporation is Site/technologies/inc. (the "Corporation").

## ARTICLE TWO

The address of the Corporation's registered office in the State of Delaware is 1209 Orange Street, Wilmington, Delaware 19801, County of New Castle. The name of its registered agent at such address is The Corporation Trust Company.

:::ODMA\PCDOCS\SQL2\39931|1\1

**EXHIBIT 21**

## ARTICLE THREE

The Corporation shall have perpetual existence. The nature of the business or purposes to be conducted or promoted by the Corporation is to engage in any lawful act or activity for which corporations may be organized under the General Corporation Law of Delaware.

## ARTICLE FOUR

This Corporation is authorized to issue two classes of shares to be designated respectively Preferred Stock and Common Stock. The total number of shares of Common Stock this Corporation shall have the authority to issue is 1,000 shares, and shall have a par value of $0.001 per share ("**Common**"). Upon the filing of this Amended and Restated Certificate of Incorporation, each issued and outstanding 2,250 shares of Common Stock shall be automatically combined and reconstituted as 1 share of Common Stock. No fractional shares shall be issued. In lieu thereof, any fractional shares resulting from the stock split (after aggregating all fractional shares to which any one stockholder shall be entitled as a result of the split) shall be rounded to the nearest whole share. Each share of Common Stock shall continue to have a par value of $0.001 following such stock split.

## ARTICLE FIVE

The Corporation is to have perpetual existence.

## ARTICLE SIX

Elections of directors need not be by written ballot unless a stockholder demands election by written ballot at the meeting and before voting begins or unless the Bylaws of the Corporation shall so provide.

## ARTICLE SEVEN

The number of directors which constitute the whole Board of Directors of the Corporation shall be fixed exclusively by one or more resolution adopted from time to time by the Board of Directors.

# EXHIBIT 22

# ACTION BY UNANIMOUS

## WRITTEN CONSENT OF

## THE BOARD OF DIRECTORS OF

### Site/technologies/Inc.
### A Delaware Corporation

In accordance with Section 141(f) of the Delaware General Corporation Law and the

Bylaws of Site/technologies/inc., a Delaware corporation (the "Company" or "Corporation"), the

undersigned, constituting all of the directors of the Company, hereby adopt the following resolutions:

<u>Stock Split</u>

<u>Amendment of Certificate of Incorporation</u>

**RESOLVED:** That it is in the best interests of the Corporation and its Stockholder that its Amended and Restated Certificate of Incorporation be amended to (i) effect a stock split whereby each issued and outstanding 2,250 shares of common stock of the Corporation shall be reconstituted as and converted into 1 share of common stock of the Corporation (the **Stock Split**"), (ii) eliminate its preferred stock and (iii) reduce the number of authorized shares of common stock to 1,000.

**RESOLVED FURTHER:** That the Certificate of Amendment and Restatement of the Certificate of Incorporation of the Corporation effecting the foregoing resolution, in substantially the form attached hereto as <u>Exhibit A</u> (the "**Amendment**"), be and is hereby approved and adopted.

**RESOLVED FURTHER:** That the officers of the Corporation are hereby authorized and directed to seek shareholder approval of the Amendment and, once the requisite shareholder approval has been obtained, to execute, verify and file the Amendment with the Secretary of the State of Delaware.

**RESOLVED FURTHER:** That the record date of said Stock Split and increase in authorized shares shall be the date which the Amendment is filed with the Delaware Secretary of State (the "**Record Date**"), and that the stockholders of record of common stock of the Corporation at the close of business on such Record Date shall be entitled to receive 1 share of common stock of the Corporation in exchange for each 2,250 shares of the Corporation's common stock held of record by such stockholders on the Record Date.

EXHIBIT 22

# EXHIBIT 23

MINUTES OF THE REGULAR BOARD MEETING
OF BOARD OF DIRECTORS

OF

DELTAPOINT, INC.
A California Corporation

DATE:              October 24, 1997

TIME:              10:00 p.m.

PLACE:             DeltaPoint, Inc.
                   380 El Pueblo Rd, Ste 100
                   Scotts Valley, CA  95066

DIRECTORS PRESENT: Jeffrey Ait
                   Patrick Grady
                   Stephen Mendel
                   Joseph Marengi (via telephone)
                   John Hummer (via telephone)

DIRECTORS ABSENT:  Tom Holt

OTHERS PRESENT:    Sharon Fugitt
                   Kurt Berney, Wilson, Sonsini, Goodrich & Rosati

Call to Order.

        Jeffrey Ait, presiding as a member of the Board of Directors, called the meeting to order.  Mr. Ait
declared that a quorum of Directors was present and that the meeting, having been duly convened, was
ready to proceed with its business.  Sharon Fugitt acted as Secretary of the Meeting.  Mr. Ait reviewed the
agenda.

Executive Session

        Mr. Ait reviewed the various Corporate issues outstanding for the Company.

Approval of Board Minutes
        WHEREAS the Board Minutes from the Meeting of the Board of Directors held on July 25, 1997
have been reviewed and the telephonic meetings of the Board of Directors held on August 12 and
September 26, 1997 and the pricing committee meeting held on October 7, 1997 have also been reviewed,

        RESOLVED, that the Board Minutes of the Meetings held July 25, 1997, August 12, 1997,
September 26, 1997 and October 7, 1997 hereby are approved by the Board of Directors as an accurate
representation of the meetings held.

Company Name Change
        Mr. Ait discussed with the Board of Directors the proposed corporate name change.

        WHEREAS, the Board of Directors feels that it is in the best interest of the Company to change
their name from DeltaPoint, Inc. to Site Technologies, Inc.

1

EXHIBIT 23

RESOLVED, that effective immediately the Company will begin doing business as Site Technologies, Inc. and that Jeffrey F. Ait is hereby authorized and directed to take all steps necessary to legally change the Company name by means of a proxy vote of shareholders or a merger and to execute and deliver any and all certificates, authorizations, and other written instruments, and in general to do all acts necessary or appropriate in order to fully effectuate the purposes of the foregoing resolutions (hereby ratifying and confirming any and all actions taken heretofore and hereafter to accomplish such purposes).

<u>Separation Agreement With Executive Vice President of Technology</u>

WHEREAS, the Board of Directors has previously determined that it was in the best interest of the Company to enter into a Separation Agreement and Release, with William G. Pryor, Jeffrey F. Ait reviewed the Separation Agreement which was entered into by the Company and William G. Pryor.

RESOLVED, that the Board of Directors approves the Separation Agreement and Release which was entered into between DeltaPoint, Inc. and William G. Pryor.

<u>Prospect Status.</u>

Jeffrey F. Ait discussed the prospect status of the open positions for Vice President of Sales and Chief Technology Officer. In addition Mr. Ait discussed the potential of additional Board of Directors seats. Several questions were asked and full discussion ensued.

<u>Stock Option Grants.</u>

Mr. Ait then proposed that the individuals listed on <u>Schedule A</u> be granted stock options to purchase shares of the Company's Common Stock. Upon motion duly made, seconded and unanimously carried, the following resolutions were adopted:

WHEREAS, the Compensation Committee deems it advisable to grant options to the individuals named on <u>Schedule A</u> attached hereto on the terms and subject to the conditions described below;

NOW, THEREFORE BE IT RESOLVED, that there be, and there hereby is, granted to the individuals named on <u>Schedule A</u> attached hereto, options to purchase the number of shares of the company's Common Stock set forth opposite each such individual's name pursuant to the Company's 1995 Stock Option Plan (the "1995 Plan"). Each option hereby granted to an employee is to be an incentive stock option to the maximum extent permissible under the tax laws and each option hereby granted to a non-employee is to be a non-statutory stock option. Each option is to have a maximum term of ten (10) years from this date of grant, subject to earlier termination following the optionee's cessation of service with the Company.

RESOLVED FURTHER, that the exercise price of each of the options listed on <u>Schedule A</u> attached hereto shall be equal to the closing price per share on the date of grant or the date each such individual commences employment with the Company (the "Grant Date"), as such price is reported by the National Market.

RESOLVED FURTHER, that except as otherwise set forth on <u>Schedule A</u>, each option hereby granted to each of the individuals named on <u>Schedule A</u> shall become exercisable according to the schedule set forth in the standard form Notice of Grant in use under the 1995 Plan, beginning from the Vesting Commencement Date set forth on <u>Schedule A</u>; and

RESOLVED FURTHER, that the remaining terms and conditions of each option shall be substantially as set forth in the Company's standard form option agreement in use under the 1995 Plan, respectively; and

# EXHIBIT 24

## Bill of Sale, Assignment and License Agreement

This Bill of Sale, Assignment, and License Agreement is made this 16th day of September, 1998 (the "Effective Date"), by and between Site Technologies, Inc., a Corporation doing business in California ("Seller"), and Daniel Egger, a resident of the State of North Carolina ("Buyer").

WHEREAS Seller has agreed to sell and assign to Buyer and Buyer has agreed to purchase and accept from Seller, certain intellectual property, software, databases, and physical assets, defined below, for the consideration and terms set forth herein; and

WHEREAS Seller has in addition agreed to license certain software, defined below, as to which Seller desires to retain ownership but is willing to grant Buyer a perpetual, nonexclusive license, for the consideration and terms set forth herein;

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, it is hereby agreed as follows:

1.    <u>Purchased Assets</u>. The "Purchased Assets" shall include the following:

(a)    PATENTS: U.S. Patent Number 5,544,352, filed June 14, 1993 (i.e., the "V-Search Patent"), and any additions, continuations, continuations in part, divisions, or extensions, reissues, renewals, or substitutions of such patent (including the "Aha Patent"), and any foreign counterpart of any of the foregoing, as well as all related documents and diagrams in the files of patent counsel;

(b)    TRADEMARKS and COPYRIGHTS: All Seller's rights in "V-Search," "Aha," "Libertech," and any terms used in or associated with the "V-Search Publisher's Toolkit," as well as all logos and marketing and promotional material incorporating such marks;

(c)    SOFTWARE and DATABASES: all software, whether source code or compiled, and all databases, associated with the V-Search data-visualization system or the Aha technology, including but not limited to all files contained on Drive D of the computer being conveyed as part of the sale (and reproduced in a separate set of tape backups), and enumerated in the memo prepared by Ron Sauers entitled "HIGH-LEVEL SUMMARY OF THE FILES CONTAINED ON DRIVE D:," attached hereto as Exhibit B and hereby incorporated by reference into this document;

(d)    THIRD-PARTY LICENSES: rights to all license agreements, including the Folio Infobase license, obtained to generate and use the SOFTWARE and DATABASES enumerated above;

(e)    PHYSICAL ASSETS: Extant copies of CD-ROMs and disks prepared for demonstrations of the V-Search technology, extant copies of the V-Search Publisher's Toolkit, extant

CASC:\WINDOWS\TEMP\SiteTech.assignment.doc

marketing materials, sales notebooks, etc., relating exclusively to the V-Search and Aha technologies - as well as the computer and backup tapes upon which the SOFTWARE and DATABASES enumerated above reside, and

(f)  GOODWILL and CLAIMS:  Any and all goodwill, and all claims and potential claims, relating to the Purchased Assets described above.

2.  Seller warrants that it hereby transfers good and marketable title to the Purchased Assets, free and clear of all liabilities, mortgages, liens, pledges, charges, security interests, encumbrances or title retention agreements of any kind or nature.

3.  Except for the foregoing warranty of title, THE PURCHASED ASSETS AND THE LICENSED SOFTWARE ARE PROVIDED "AS IS - WHERE IS" AND WITHOUT ANY WARRANTY OF ANY NATURE WHATSOEVER, IT BEING EXPRESSLY UNDERSTOOD AND AGREED THAT SELLER DISCLAIMS ALL OTHER WARRANTIES INCLUDING, BUT NOT LIMITED TO, WARRANTIES OF MERCHANTABILITY, NONINFRINGEMENT AND FITNESS FOR A PARTICULAR PURPOSE.

4.  Buyer assumes no liabilities of Seller associated with the Purchased Assets or Licensed Software or the operation of the businesses related thereto prior to the Effective Date. Seller agrees to defend, indemnify, and hold Buyer harmless against any and all liabilities associated with the Purchased Assets or Licensed Software that arise prior to the Closing that may be asserted against Buyer after the Effective Date, provided (i) Buyer notifies Seller promptly in writing of such claim, (ii) Seller has sole control of the defense and all related settlement negotiations, and (iii) Buyer provides Seller with all reasonably necessary assistance to perform the foregoing. In no event shall Seller be liable under the foregoing for a claim based on modifications, adaptations or changes to the Licensed Software not made by Seller or for combinations of the Licensed Software with materials not furnished by Seller if such infringement would have been avoided but for such combination. Buyer agrees to defend, indemnify, and hold Seller harmless against any and all liabilities associated with the Purchased Assets that arise after the Effective Date, provided (i) Seller notifies Buyer promptly in writing of such claim, (ii) Buyer has sole control of the defense and all related settlement negotiations, and (iii) Seller provides Buyer with all reasonably necessary assistance to perform the foregoing.

5.  IN NO EVENT SHALL THE MAXIMUM LIABILITY OF EITHER PARTY ARISING UNDER THIS AGREEMENT EXCEED THE AMOUNT PAID BY BUYER HEREUNDER.  IN NO EVENT SHALL EITHER PARTY BE LIABLE TO THE OTHER PARTY FOR ANY LOST DATA OR CONTENT, LOST PROFITS OR FOR ANY INDIRECT, INCIDENTAL, SPECIAL, CONSEQUENTIAL, EXEMPLARY OR PUNITIVE DAMAGES ARISING OUT OF OR RELATING TO THE PURCHASED ASSETS OR LICENSED SOFTWARE PROVIDED HEREUNDER, EVEN IF SUCH PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES, AND NOTWITHSTANDING THE FAILURE OF ESSENTIAL PURPOSE OF ANY LIMITED REMEDY.

6.  Purchase Price.  In consideration of the Purchased Assets and the Licensed Software provided hereunder, Buyer shall pay Seller $100,000, payable in full on the Effective Date hereof.

CASC:\WINDOWS\TEMP\SiteTech assignment.doc                      -2-

**PATENT**
**REEL: 018160 FRAME: 0502**

7. <u>Licensed Software</u>. Buyer and Seller are aware that several components of Seller's software known as "SiteSweeper" are shared with the Purchased Assets.

Seller hereby grants Buyer a perpetual, worldwide, fully paid, nonexclusive license to copy, display, perform, create derivative works, distribute and otherwise use the Licensed Software, in source code form, solely in conjunction with the Purchased Assets. "Licensed Software" shall mean:

      (a)    The "crawler" used to build Aha databases;

      (b)    HTML Reporter - the reporter engine plus ISAPI extension; and

      (c)    Miscellaneous utility files used by V-Search and/or Aha and also found in SiteSweeper.

Seller shall retain ownership of all copyrights and other rights in the Licensed Software, except that, although the Licensed Software is used in certain of the Purchased Assets, Seller shall have no ownership interest in such Purchased Assets.

8. <u>Further Assurances</u>.

      (a)    Seller agrees to instruct patent counsel, Dorsey and Whitney of Washington, D.C., that Seller has assigned to Buyer all such patent rights described above and such counsel is authorized and directed to make available and/or to deliver to Buyer all Seller's records relating to such patent rights. Buyer may provide a copy of this Agreement to such counsel and this Agreement shall constitute Seller's authorization to release such files to Buyer.

      (b)    Seller agrees from time to time, upon the request of the Buyer, to execute, acknowledge, and deliver all such further instruments, or perform such further acts, as may be necessary, in the opinion of the Buyer, in connection with the sale, assignment, conveyance, transfer and delivery of the Purchased Assets or the Licensed Software.

9. <u>Termination</u>. Either party may terminate this Agreement in the event of any material breach of the terms and conditions of this Agreement by the other party, which default continues in effect after the defaulting party has been provided with written notice of default and thirty (30) days to cure such default. Sections 1, 3, 4, 5, 6, 9 and 10 shall survive any termination of this Agreement.

10. This Agreement, including the exhibits attached hereto, constitute the entire agreement and understanding of the parties with respect to the subject matter contained herein and supersede or cancel all prior agreements respecting such subject matter. This Agreement may be amended only by a written instrument executed by all the parties or their successors or assigns. This Agreement shall inure to the benefit of and be binding upon the parties hereto and their successors and assigns. In the event any provision of this Agreement shall be held to be invalid, the remaining provisions of this Agreement shall be unimpaired and the parties will substitute a new enforceable provision of like economic intent and effect. This Agreement may be executed in one or more counterparts and each counterpart deemed an original. This Agreement may also be executed and

**PATENT
REEL: 018160 FRAME: 0503**

delivered in counterparts executed and delivered via facsimile transmission, and any such counterpart shall be deemed an original for all intents and purposes.

IN WITNESS HEREOF, the parties have caused this Agreement to be executed as of the Effective Date.

Buyer: _____  Seller: _____
Daniel Egger                                        Sila Technologies
                                                             Jeff Ait, Chief Executive Officer

Date:   Sept. 16 '98                    Date:   Sept 15, 1998

PATENT
REEL: 018160 FRAME: 0504

EXHIBIT A

ASSIGNMENT OF PATENT

WHEREAS the undersigned SITE TECHNOLOGIES, INC., a California corporation ("Assignor"), is the sole owner of Patent number 5,544,352, issued August 6, 1996;

WHEREAS DANIEL EGGER, a resident of the State of North Carolina having his principal residence at 2027 W. Club Boulevard, Durham, NC 27705 ("Assignee"), is desirous of obtaining the entire right, title and interest in, to and under the said Patent;

NOW THEREFORE, in consideration of the sum of One Dollar ($1.00) to the undersigned in hand paid, and other good and valuable consideration, the receipt of which is hereby acknowledged, the undersigned, the said Assignor, has sold, assigned, transferred and set over, and by these presents does hereby sell, assign, transfer and set over, unto the said Assignee, its successors, legal representatives and assigns, the entire right, title and interest in, to and under the said Patent, and all divisions, renewals and continuations thereof, and all issues and extensions thereof, and all applications for industrial property protection, including, without limitation, all applications for patents, utility models, and designs which may hereafter be filed for the invention(s) claimed in such Patent in any country or countries foreign to the United States, together with the right to file such applications and the right to claim for the same the priority rights derived from said United States Patent under the Patent Laws of the United States, the International Convention for the Protection of Industrial Property, or any other international agreement or the domestic laws of the country in which any such application is filed, as may be applicable; and all forms of industrial property protection, including, without limitation, patents, utility models, inventors' certificates and designs which may be granted for said inventions in any country or countries foreign to the United States and all extensions, renewals and reissues thereof;

AND THE UNDERSIGNED HEREBY authorizes and requests the Commissioner of Patents and Trademarks of the United States, and any Official of any country or countries foreign to the United States, whose duty is to issue patents or other evidence or forms of industrial property protection on applications as aforesaid, to issue the same to the said Assignee, its successors, legal representatives and assigns, in accordance with the terms of this instrument;

AND THE UNDERSIGNED HEREBY covenants and agrees that it has full right to convey the entire interest herein assigned, and that it has not executed, and will not execute, any agreement in conflict herewith;

AND THE UNDERSIGNED HEREBY further covenants and agrees that it will com-
_____ and assigns any facts known.

ATTEST:

CASC:\WINDOWS\TEMP\SiteTech.assignment.doc

PATENT
REEL: 018160 FRAME: 0505

_____Sharon L Fight_____
Secretary

CASC:\WINDOWS\TEMP\SiteTech.assignment.doc     -2-