1

2   Thomas F. Smegal, Jr. (Bar No. 34,819)
   One Sansome Street, 35th Floor
3   San Francisco, CA  94104
   Telephone: (415) 217-8383
4   Facsimile: (415) 399-5093
   Email: tomsmegal@smegallaw.com

5   Lee L. Kaplan (Texas Bar No. 11094400)
   Jeffrey A. Potts (Texas Bar No. 00784781)
6   Raj Duvvuri (Texas Bar No. 24054185)
   (admitted *pro hac vice*)
7   700 Louisiana Street, Suite 2300
   Houston, TX 77002
8   Telephone: (713) 221-2300
   Facsimile: (713) 221-2320
9   Email: lkaplan@skv.com

10   Jay D. Ellwanger (Texas Bar No. 24036522)
   7000 North MoPac Expressway, Suite 350
11   Austin, Texas  78731
   Telephone: (512) 539-2630
12   Facsimile: (512) 539-2627
   Telephone: (512) 681-4060
13   Facsimile: (512) 628-3410
   Email: jellwanger@dpelaw.com

14

15   Attorneys for Defendants L. Daniel Egger and
   Software Rights Archive, LLC

16

17               **UNITED STATES DISTRICT COURT**
             **NORTHERN DISTRICT OF CALIFORNIA**
18                  **SAN JOSE DIVISION**

19   **GOOGLE INC., AOL LLC, YAHOO!**     **Case No. CV08-03172RMW**
   **INC., IAC SEARCH & MEDIA, INC., and**
20   **LYCOS, INC.**                  **SOFTWARE RIGHTS ARCHIVE, LLC'S**
                                  **AND EGGER'S REPLY IN SUPPORT OF**
21            **Plaintiffs**          **DEFENDANTS' MOTION TO DISMISS,**
                                    **TRANSFER, OR STAY UNDER THE**
22   **v.**                     **FIRST-TO-FILE RULE, UNDER RULE**
                                    **12(B)(2) FOR LACK OF PERSONAL**
23   **L. DANIEL EGGER, SOFTWARE**      **JURISDICTION, AND UNDER RULE**
   **RIGHTS ARCHIVE, LLC, and SITE**     **12(B)(1) FOR LACK OF SUBJECT**
24   **TECHNOLOGIES, INC.**           **MATTER JURISDICTION**

25            **Defendants**

26                              **Date of Hearing:  August 21, 2009**

27                              **Time of Hearing: 9:00 am**

28

---

Dockets.Justia.com

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................... ii

TABLE OF AUTHORITIES ............................................................................................. iv

ARGUMENT AND AUTHORITIES ...................................................................................2

I.  This case should be dismissed under the first-to-file rule, because it misuses
    the patent declaratory judgment action, duplicates the Eastern District of
    Texas case, and constitutes vexatious litigation. ......................................................2

    A.  This case represents a misuse of the patent declaratory judgment
        action.......................................................................................................2

    B.  This case is entirely duplicative of the Eastern District of Texas action. ...............2

    C.  This case represents a transparent attempt by Plaintiffs to forum shop
        and get multiple bites at the apple..........................................................4

II. This Court lacks personal jurisdiction over SRA and Egger, because neither
    has continuous and systematic contacts with California, and neither
    established contacts with California that gave rise to this suit. ...........................7

    A.  SRA did not consent to personal jurisdiction in California for all times
        and for all purposes by briefly appearing as a non-party in bankruptcy
        proceedings unrelated to this case..........................................................7

        1.  Plaintiffs wrongly rely on facts occurring after they filed this
            case..............................................................................................7

        2.  As a matter of law, SRA's brief appearance before the
            bankruptcy court does not waive jurisdiction in this case. ...........8

    B.  This Court lacks general jurisdiction over SRA and Egger, because
        neither has continuous and systematic contacts with California. ...................10

    C.  This Court also lacks specific jurisdiction over SRA and Egger,
        because neither of them contacted Plaintiffs in California prior to suit
        to allege infringement of SRA's patents, and neither engaged in the
        required "other patent-related activities" in California.............................11

        1.  This Court lacks specific jurisdiction over SRA, because SRA
            neither contacted Plaintiffs in California prior to suit to allege
            infringement nor engaged in the required "other patent-related
            activities" in California. ..............................................................12

        2.  This Court lacks specific jurisdiction over Egger, because
            Egger neither contacted Plaintiffs in California prior to suit to
            allege infringement nor engaged in the required "other patent-
            related activities" in California. ...................................................15

III. No case or controversy exists between Plaintiffs and Egger or Site Tech, because, as the Eastern District of Texas has already ruled, neither owns the patents, and furthermore, neither has threatened Plaintiffs with a patent infringement suit. ...........................................................................................17

    A. Under Federal Circuit law, a case or controversy exists in a patent declaratory judgment action only if the defendant (1) is a patentee, assignee, or exclusive licensee, and (2) has threatened through affirmative acts to accuse the plaintiffs of patent infringement............................17

    B. Everyone, including Plaintiffs, agrees that Egger has no rights to the patents, and there is no evidence suggesting that Egger ever threatened Plaintiffs with an infringement suit.........................................................................18

    C. The Eastern District of Texas has twice ruled that Site Tech does not own the patents, and there is no evidence suggesting that Site Tech ever threatened Plaintiffs with an infringement suit. ...............................................19

CONCLUSION...........................................................................................................23

# TABLE OF AUTHORITIES

Page

**Cases**

*3D Sys., Inc. v. Aarotech Labs., Inc.,*
  160 F.3d 1373 (Fed. Cir. 1998) ........................................................................ 13, 16

*Allen v. City of Los Angeles,*
  92 F.3d 842 (9th Cir. 1996) ...................................................................................... 21

*Am. Auto Ass'n, Inc. v. Darba Enters. Inc.,*
  2009 WL 1066506 (N.D. Cal. Apr. 21, 2009) ......................................................... 10

*Bancroft & Masters, Inc. v. Augusta Nat'l Inc.,*
  223 F.3d 1082 (9th Cir. 2000) .................................................................................. 11

*Benitec Australia, Ltd. v. Nucleonics, Inc.,*
  495 F.3d 1340 (Fed. Cir. 2007) ................................................................................ 17

*Campbell Pet Co. v. Miale,*
  542 F.3d 879 (Fed. Cir. 2008) ............................................................................ 10, 11

*Capitol Res. Funding, Inc. v. Tri-County Bank of Royston,*
  1997 WL 538898 (N.D.N.Y. 1997) ............................................................................ 9

*Church of Scientology of Cal. v. U.S. Dept. of Army,*
  611 F.2d 738 (9th Cir. 1979) ...................................................................................... 7

*Dainippon Screen Mfg. Co., Ltd. v. CFMT, Inc.,*
  142 F.3d 1266 (Fed. Cir. 1998) .......................................................................... 11, 15

*Dow Chem. Co. v. Calderon,*
  422 F.3d 827 (9th Cir. 2005) ...................................................................................... 9

*Elecs. For Imaging, Inc. v. Coyle,*
  340 F.3d 1344 (Fed. Cir. 2003) ................................................................................ 11

*Fieldturf, Inc. v. Southwest Recreational Indus., Inc.,*
  357 F.3d 1266 (Fed. Cir. 2004) ................................................................................ 17

*Gherebi v. Bush,*
  352 F.3d 1278 (9th Cir. 2003) .................................................................................... 4

*Helicopteros Nacionales de Colombia, S.A. v. Hall,*
  466 U.S. 408 (1984) .................................................................................................. 11

*In re Continental Airlines,*
  928 F.2d 127 (5th Cir. 1991) ...................................................................................... 8

*In re PNP Holdings Corp.,*
  99 F.3d 910 (9th Cir. 1996) ........................................................................................ 8

*Inamed Corp. v. Kuzmak,*
  249 F.3d 1356 (Fed. Cir. 2001) ................................................................................ 11

*John F. Beasley Constr. Co., Inc. v. C.J. Mahan Constr. Co.,*
   1999 WL 689365 (N.D. Tex. 1999) ........................................................................... 9

*Johnson v. Woodcock,*
   444 F.3d 953 (8th Cir. 2006) .................................................................................... 8

*Klinghoffer v. S.N.C. Achille Lauro,*
   937 F.2d 44 (2d Cir. 1991) ................................................................................ 13, 16

*Luben Indus., Inc. v. U.S.,*
   707 F.2d 1037 (9th Cir. 1983) ............................................................................... 21

*Marynard v. Philadelphia Cervical Collar Co., Inc.,*
   18 Fed. Appx. 814 (Fed. Cir. 2001) ....................................................................... 10

*Micron Technology, Inc. v. Mosaid Technologies, Inc.,*
   518 F.3d 897 (Fed. Cir. 2008) .................................................................................. 3

*Minn. Mining & Mfg. Co. v. Eco Chem, Inc.,*
   757 F.2d 1256 (Fed. Cir. 1985) ............................................................................. 14

*Montana v. U.S.,*
   440 U.S. 147 (1979) ......................................................................................... 20, 21

*Pacesetter Sys., Inc. v. Medtronic, Inc.,*
   678 F.2d 93 (9th Cir. 1982) .................................................................................... 2

*PaineWebber Inc. v. Chase Manhattan Private Bank,*
   260 F.3d 453 (5th Cir. 2001) .................................................................................. 9

*Pecoraro v. Sky Ranch for Boys, Inc.,*
   340 F.3d 558 (8th Cir. 2003) ................................................................................ 13

*Prasco, LLC v. Medicis Pharm. Corp.,*
   537 F.3d 1329 (Fed. Cir. 2008) ....................................................................... 17, 18

*Principal Life Ins. Co. v. Robinson,*
   394 F.3d 665 (9th Cir. 2005) .................................................................................. 4

*Rite-Hite Corp. v. Delta T Corp.,*
   2007 WL 725327 (E.D. Wis. 2007) ...................................................................... 22

*Robi v. Five Platters, Inc.,*
   838 F.2d 318 (9th Cir. 1988) ................................................................................ 21

*Rozenblat v. Sandia Corp.,*
   2006 WL 678923 (Fed Cir. 2006) ....................................................................... 8, 9

*Silent Drive, Inc. v. Strong Indus., Inc.,*
   326 F.3d 1194 (Fed. Cir. 2003) ....................................................................... 10, 11

*Silverstein v. Experienced Internet.com, Inc.,*

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS, TRANSFER, OR STAY
CASE NO. CV08-03172

2005 WL 1629935 (N.D. Cal. 2005), *aff'd*, 266 Fed. Appx. 678 (9th Cir. 2008) ........................................................................................ 11

*Spectronics Corp. v. H.B. Fuller Co., Inc.,*

940 F.2d 631 (Fed. Cir. 1991) .............................................................. 19

*Steel v. U.S.,*

813 F.2d 1545 (9th Cir. 1987) ................................................................ 8

*Sys. Div., Inc. v. Teknek Elecs., Ltd.,*

2007 WL 3151697 (Fed. Cir. 2007) ...................................................... 14

*Toshiba Int'l. Corp. v. Fritz,*

993 F.Supp. 571 (S.D. Tex. 1998) .......................................................... 9

*Troyk v. Farmers Group, Inc.,*

90 Cal. Rptr. 3d 589 (Cal. Ct. App. 2009) ........................................... 14

*U.S. v. Maine,*

420 U.S. 515 (1975) .............................................................................. 20

*Ward v. Follett Corp.,*

158 F.R.D. 645 (N.D. Cal. 1994) ............................................................ 3

*Wechsler v. Macke Int'l Trade, Inc.,*

486 F.3d 1286 (Fed. Cir. 2007) ............................................................ 14

*Wireless, Inc. v. US/Intelicom, Inc.,*

202 F.R.D. 321 (S.D. Fla. 2001) .......................................................... 23

*Z-Line Designs, Inc. v. Bell'O Int'l LLC,*

218 F.R.D. 663 (N.D. Cal. 2003) (Whyte, J.) ...................................... 2, 4

**Rules**

FED. R. CIV. P. 19 ................................................................................... 22

Defendants' motion to dismiss, transfer, or stay should be granted, for three reasons:

(1)     The first-to-file rule requires the dismissal, transfer, or stay of this case.   The parties, patents, issues—in short, everything—in this case are duplicative of the first-filed Eastern District of Texas case.  This second case does nothing but provide Plaintiffs an excuse for seeking multiple bites at the apple, as splendidly demonstrated by Plaintiffs' response brief, which already attempts to relitigate standing, on which the Eastern District of Texas twice ruled after extensive discovery and briefing, and venue, which has been fully briefed and submitted to the Eastern District of Texas.

(2)     This Court lacks personal jurisdiction over SRA and Egger.   The case law, ignored by Plaintiffs, demonstrates that SRA is not subject to jurisdiction due to its isolated, non-party appearance in bankruptcy proceedings fomented by Plaintiffs or its maintenance of a passive website serviced by a California company.   Further, Plaintiffs' list of so-called "contacts" between SRA, Egger, and California are irrelevant to and do not satisfy the Federal Circuit's two requirements for specific jurisdiction in patent declaratory judgment actions—(1) that SRA and Egger have contacted the California Plaintiffs prior to suit to allege infringement, and (2) that SRA and Egger have engaged in "other patent-related activities" in California.

(3)     This Court lacks subject matter jurisdiction over Egger and Site Tech, because neither of the Federal Circuit's two requirements for a case or controversy in a patent declaratory judgment action is satisfied as to them.  First, neither has "an underlying legal cause of action" against Plaintiffs, because, as the Eastern District of Texas twice ruled after reviewing well over 100 pages of argument and 700 pages of exhibits, the patents belong to SRA, not Egger or Site Tech.  Second, there is no evidence that Egger or Site Tech ever took "affirmative acts" creating a "real and immediate threat" of an infringement suit against Plaintiffs.

Therefore, this case should be dismissed, or in the alternative, transferred or stayed in favor of the Eastern District of Texas suit.

1

### ARGUMENT AND AUTHORITIES

2   **I.**   **This case should be dismissed under the first-to-file rule, because it misuses the patent declaratory judgment action, duplicates the Eastern District of Texas case, and constitutes vexatious litigation.**

3

4   **A.**   **This case represents a misuse of the patent declaratory judgment action.**

5   "Declaratory relief is intended to serve a unique function in patent disputes, eliminating

6   multiple litigation and protecting competitors from infringement actions that are threatened but

7   not pursued." *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 97 (9th Cir. 1982). This suit

8   does the opposite. It creates multiple litigation. And it burdens a patent holder who filed an

9   infringement action more than six months before the alleged infringers filed this suit.

10   **B.**   **This case is entirely duplicative of the Eastern District of Texas action.**

11   Plaintiffs (also referred to herein as "the search engine companies," because their status

12   as "Plaintiffs" is artificial) do not seriously dispute that the earlier case satisfies the first-to-file

13   rule. The first-to-file rule applies based on "(1) the chronology of the two actions; (2) the

14   similarity of the parties, and (3) the similarity of the issues." *Z-Line Designs, Inc. v. Bell'O Int'l*

15   *LLC*, 218 F.R.D. 663, 665 (N.D. Cal. 2003) (Whyte, J.). This suit and the Eastern District of

16   Texas suit involve the same patents—the '352, '494, and '571 patents. (*See* E.D. Tex. Compl.,

17   attached as Ex. 7.) They also involve the same parties—Google, AOL, Yahoo!, IAC, and Lycos

18   on one side, and SRA on the other side. (*See id.*) (This action also nominally includes Egger

19   and Site Tech as defendants, but as demonstrated below, those parties never should have been

20   sued and must be dismissed, because they have no interest and have never even claimed an

21   interest in the patents-in-suit.) And they involve the same issues—infringement, invalidity,

22   laches, unclean hands, estoppel, waiver, and others. (*See id.*)

23   Plaintiffs do not negate the applicability of this rule, but instead urge this Court to

24   dispense with the rule because litigating in this district supposedly will be more "convenient"

25   than doing so in the Eastern District of Texas. Plaintiffs' argument should be rejected for

26   multiple reasons.

27

28

First, it represents a naked effort to have their motion to transfer decided here, not there. But as this Court has held, "the respective convenience of the two courts normally should be addressed to the court in the first filed action rather than to the court in the later-filed action." *Ward v. Follett Corp.*, 158 F.R.D. 645, 648 (N.D. Cal. 1994) (internal quotation marks omitted). The convenience issue has already been fully briefed and submitted to the Eastern District of Texas for ruling. This Court need not duplicate the effort.

Second, Plaintiffs have misapplied the convenience inquiry. This case is a far cry from *Micron Technology, Inc. v. Mosaid Technologies, Inc.*, 518 F.3d 897 (Fed. Cir. 2008), on which Plaintiffs rely. In *Micron*, the declaratory judgment defendant had threatened the declaratory judgment plaintiff with an infringement suit—sufficient to create a case-or-controversy between them—such that a true race to the courthouse was created, which race the plaintiff won by one day. *Id.* at 901. Faced with "two actions . . . filed almost simultaneously," either of which could equally have been filed first, the Federal Circuit looked to the convenience issue to break the tie. *Id.* at 904. In this case, by contrast, there was no race to the courthouse. There is no evidence that when SRA filed its infringement action against Plaintiffs in the Eastern District of Texas in November 2007, Plaintiffs had ever even heard of SRA. There certainly is no evidence that SRA had ever threatened Plaintiffs with an infringement suit before then. Therefore, Plaintiffs could not have filed this suit against SRA in November 2007, because there was no case or controversy then. SRA filed first, and Plaintiffs waited almost eight months to file this action, based on SRA's having already sued them. There is therefore no tie-breaking involved here, and the basis for considering the relative conveniences is much weaker than in *Micron*.

Third, the balance of conveniences does not weigh "so strongly in [Plaintiffs'] favor as to justify a departure from the 'first to file' rule." *Id.* at 649. To the contrary, it weighs in SRA's favor, though SRA considers it improper to and will not—as the search engine companies have done—repeat here the voluminous arguments regarding transfer.

Fourth, Plaintiffs' argument contradicts longstanding principles of federal comity law. "The purpose of the comity principle is of paramount importance." *Church of Scientology of*

---

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS, TRANSFER, OR STAY
CASE NO. CV08-03172

3

1    *Cal. v. U.S. Dept. of Army*, 611 F.2d 738, 750 (9th Cir. 1979).  Thus, "[t]he first to file rule

2    should not be disregarded lightly."  *Z-Line*, 218 F.R.D. at 665 (internal quotation marks omitted).

3    Here, Plaintiffs seek a fundamental reworking of the first-to-file rule.  If the first-to-file rule is

4    thrown out on convenience grounds here—where Plaintiffs' offices, facilities, and employees are

5    spread throughout the country, while SRA and its representatives, documents, and witnesses are

6    concentrated in a handful of places, mostly located thousands of miles from Plaintiffs' chosen

7    forum—it is hard to imagine how the first-to-file rule can ever have vitality where large

8    corporations who are headquartered in one district face lawsuits brought by individuals or small

9    businesses in their home districts.  In effect, Plaintiffs seek to remove the rule from federal

10   jurisprudence in all such cases.  This conflicts with the Ninth Circuit's axiom that in all cases

11   "there is a strong presumption in favor of plaintiff's choice of forums."  *Gherebi v. Bush*, 352

12   F.3d 1278, 1303 (9th Cir. 2003) (internal quotation marks omitted).

13         **C.**    **This case represents a transparent attempt by Plaintiffs to forum shop and get multiple bites at the apple.**

15         The Ninth Circuit instructs that district courts "should discourage litigants from filing

     declaratory actions as a means of forum shopping . . . and should avoid duplicative litigation."

16   *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 672 (9th Cir. 2005) (internal quotation marks

     omitted).  Until Congress revises the declaratory judgment statute and the venue statute to

18   overrule existing case law, Plaintiffs should not get the opportunity to ask for a free second shot

19   at every issue argued and decided in the Eastern District of Texas.  Yet that is precisely what

20   they are trying to achieve through this lawsuit.

21         Plaintiffs' response brief demonstrates this splendidly.  Over a year ago, Plaintiffs filed a

22   motion to dismiss in the Eastern District of Texas, arguing that SRA did not own the patents-in-

23   suit.  Over the next five months, a frenzy of activity occurred regarding the issue.

24   Comprehensive discovery was conducted, including three depositions, the production of dozens

25   of boxes of documents from multiple sources, and multiple discovery battles.  Six briefs were

---

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS, TRANSFER, OR STAY
CASE NO. CV08-03172

filed, totaling over 100 pages of argument and over 700 pages of exhibits.[1]  Plaintiffs chose to fight the battle, and they chose to wage it (initially) in the Eastern District of Texas.  There is no contention—and cannot reasonably be any contention—by any party that anything new remains to be said that has not already been argued before the Eastern District of Texas.

On March 31, 2009 the Eastern District of Texas ruled decisively that SRA—not Site Tech or Daniel Egger—owns the patents.  (*See* E.D. Tex. Order Denying Mot. to Dism., attached as Ex. 9.)  The matter should have been laid to rest, at least until the appellate level.[2]  Refusing to accept defeat, however, over seven weeks later, on May 22, 2009, Google, AOL, and Yahoo! (IAC and Lycos did not participate) moved for certification for interlocutory appeal, or alternatively, for reconsideration, essentially rehashing issues on which the court had already ruled.  Again SRA researched and briefed—in large part, re-researched and re-briefed—those issues on which the companies desired a further round of argument.  With the two new briefs, the court now had now received and considered a total of eight briefs regarding standing.[3]  On June 24, 2009 the court again ruled that SRA—not Site Tech or Egger—owns the patents.  (*See* E.D. Tex. Order Denying Mot. for Reconsid., attached as Ex. 8.)

---

[1] The briefing included the following: (1) Defendants' Motion to Dismiss for Lack of Standing (filed on July 16, 2008, and encompassing 12 pages of argument and 116 pages of exhibits); (2) Plaintiff's Response to Defendants' Motion to Dismiss (filed on August 25, 2008, and encompassing 29 pages of argument and 174 pages of exhibits); (3) Reply in Support of Defendants' Motion to Dismiss for Lack of Standing (filed on November 4, 2008, and encompassing 30 pages of argument and 129 pages of exhibits); (4) Plaintiff's Sur-Response to Defendants' Motion to Dismiss (filed on December 15, 2008, and encompassing 25 pages of argument and 277 pages of exhibits); (5) Defendants' Response to Plaintiff's Sur-Response Brief in Opposition to Defendants' Motion to Dismiss (filed on January 16, 2009, and encompassing 5 pages of argument and 5 pages of exhibits); and (6) Opposition to Defendants' "Suggestion to Refer Bankruptcy Issues to Bankruptcy Court" and Opposition to Defendants' Alternative Motion for Leave to File Third Brief on Standing (filed on January 28, 2009, and encompassing 5 pages of argument and 13 pages of briefing).

[2] This Court may recall that at the previous hearing in this case, counsel for Google, AOL, and Yahoo! explicitly conceded that the Eastern District of Texas's standing ruling was a final decision reviewable only on appeal.

[3] The briefing included the following: (1) Google Inc., AOL LLC, and Yahoo! Inc.'s Motion for Certification of Order for Interlocutory Appeal, or in the Alternative, for Reconsideration (filed on May 22, 2009, and encompassing 11 pages of argument and 4 pages of exhibits); and (2) Software Rights Archive, LLC's Opposition to Google Inc., AOL LLC, and Yahoo! Inc.'s Motion for Certification of Order for Interlocutory Appeal, or in the Alternative, for Reconsideration (filed on June 15, 2009, and encompassing 10 pages of argument).

---

1    While the standing controversy was pending in the Eastern District of Texas—

2   specifically, on November 26, 2008—Plaintiffs also attempted to reopen Site Tech's bankruptcy

3   in the Northern District of California Bankruptcy Court, urging that court to simultaneously

4   consider their argument that the patents belonged to Site Tech. (*See* Bankr. Compl., attached as

5   Ex. 4.)  Recognizing the wholly duplicative nature of Plaintiffs' request, the bankruptcy court

6   refused to rule pending a ruling by the Eastern District of Texas. (*See* Bankr. 12/17/08 Hearing

7   Tr. at 37-38, attached as Ex. 2.)  When the Eastern District of Texas disposed of the issue by

8   holding that the patents belonged to SRA, the Northern District of California Bankruptcy Court

9   deferred to that ruling and dismissed Plaintiffs' claim. (*See* Bankr. 4/15/09 Hearing Tr. at 21-22,

10   attached as Ex. 3.)

11    Now, in their response brief, the search engine companies *again* argue—now in a *third*

12   court—that SRA does not own the patents.  Plaintiffs in fact urge this Court to overrule the

13   Eastern District of Texas's two rulings, which supposedly "are not binding on this Court."

14   Plaintiffs want to add yet more pages of argument and more pages of exhibits to the pile—to

15   what end?

16    Likewise, on February 20, 2009, Plaintiffs filed a motion to transfer venue in the Eastern

17   District of Texas, arguing that SRA's patent infringement suit belongs in this district rather than

18   the Eastern District of Texas.  Again, over the ensuing months, the parties conducted venue

19   discovery and filed four briefs totaling 40 pages of argument and over 500 pages of exhibits.[4]

20   The issue has been fully briefed before the Eastern District of Texas and has been submitted for

21   ruling.  Nevertheless, despite choosing to raise the issue in the Eastern District of Texas and fully

22

23

---

24   [4] The briefing included the following: (1) Defendants' Motion to Transfer Pursuant to 28 U.S.C.
§ 1404(a) (filed on February 20, 2009, and encompassing 15 pages of argument and 238 pages of
25   exhibits); (2) Plaintiff's Opposition to Defendants' Motion to Transfer Pursuant to 28 U.S.C. §
1404(a) (filed on May 8, 2009, and encompassing 15 pages of argument and 205 pages of
26   exhibits); (3) Reply in Support of Defendants' Motion to Transfer Pursuant to 28 U.S.C. §
1404(a) (filed on May 18, 2009, and encompassing 5 pages of argument and 24 pages of
27   exhibits); and (4) Software Rights Archive, LLC's Sur-Reply in Further Opposition to
Defendants' Motion to Transfer Venue (filed on May 28, 2009, and encompassing 5 pages of
28   argument and 57 pages of exhibits).

1    arguing their position there, Plaintiffs in their response brief again re-argue the issue to this

2    Court.

3         In short, the search engine companies have proved the wisdom of the first-to-file rule.  In

4    already re-arguing to this Court multiple issues extensively briefed to the Eastern District of

5    Texas, Plaintiffs blithely disregard all those concerns that underpin the first-to-file rule and that

6    compel the dismissal of this case: the fact that our judiciary suffers from scarce resources and

7    "increasingly crowded federal dockets," *Humphrey v. Snap Sys., Inc.*, 1993 WL 13556390, at *2

8    (N.D. Cal. 1993), and actively avoids assuming "unnecessary burden[s]," *Church of Scientology*,

9    611 F.2d at 750; the fact that relitigating issues over and over costs time and money to the parties

10   and burdens the litigation process; and the fact that courts desire to "avoid the embarrassment of

11   conflicting judgments," *id.*, which are precisely what Plaintiffs seek here.

12        Plaintiffs' case adds nothing to the first-filed case except added expense and wasted

13   resources.  It should be dismissed, or at a minimum, transferred or stayed in favor of the Eastern

14   District of Texas action.

15   **II.    This Court lacks personal jurisdiction over SRA and Egger, because neither has
            continuous and systematic contacts with California, and neither established contacts
16          with California that gave rise to this suit.**

17        **A.    SRA did not consent to personal jurisdiction in California for all times and
                for all purposes by briefly appearing as a non-party in bankruptcy
18              proceedings unrelated to this case.**

19        Plaintiffs claim that SRA consented to jurisdiction in California at all times and for all

20   purposes by appearing as a non-party in the post-filing bankruptcy proceedings.  Plaintiffs'

21   argument fails for two reasons.  First, Plaintiffs' argument relies exclusively on facts that

22   occurred after this case was filed—facts that federal law deems irrelevant to determining

23   personal jurisdiction.  Second, Federal Circuit law expressly holds that a defendant (let alone a

24   non-party) does not waive personal jurisdiction in an action by voluntarily appearing in that court

25   (let alone a different court) in an action involving the same parties (let alone different parties).

26        1.    Plaintiffs wrongly rely on facts occurring after they filed this case.

27

28

---

1    Under well-established federal law, the only facts that may be considered in determining

2    personal jurisdiction are those existing at the time of the events underlying the dispute. *See Steel*

3    *v. U.S.*, 813 F.2d 1545, 1549 (9th Cir. 1987) ("[C]ourts must examine defendant's contacts with

4    the forum at the time of the events underlying the dispute when determining whether they have

5    jurisdiction"); *see also Johnson v. Woodcock*, 444 F.3d 953, 955 (8th Cir. 2006) ("Minimum

6    contacts necessary for the exercise of personal jurisdiction must exist either at the time the cause

7    of action arose, the time the suit was filed, or within a reasonable period of time immediately

8    prior to the filing of the lawsuit."). Here, Plaintiffs' entire argument rests on a fact—SRA's brief

9    appearance in the bankruptcy court—that occurred in December 2008, five months *after* this case

10    was filed and thirteen months after the Eastern District of Texas action was filed.

11        2.    As a matter of law, SRA's brief appearance before the bankruptcy court
             does not waive jurisdiction in this case.

12    Plaintiffs' argument also fails because there is no case support for the proposition

13    Plaintiffs assert—that making an appearance in a bankruptcy proceeding, not even as a party,

14    waives jurisdiction for all purposes and in all other cases filed in the state. Even the cases

15    Plaintiffs cite do not stand for that proposition. For example, *In re PNP Holdings Corp.*, 99 F.3d

16    910 (9th Cir. 1996), holds only that a "creditor who files a proof of claim consents to the

17    bankruptcy court's personal jurisdiction over the creditor in proceedings to resolve the

18    bankruptcy estate's objections to the claim." *Id.* at 911. Here, SRA's appearance at the

19    bankruptcy hearing is not nearly equivalent to a creditor's filing a proof of claim, which is

20    "analogous to the filing of a complaint in a civil action." *In re Continental Airlines*, 928 F.2d

21    127, 129 (5th Cir. 1991). Instead, SRA appeared in the bankruptcy court only as a non-party

22    after Plaintiffs affirmatively availed themselves of that forum. (*See* Bankr. SRA Status Conf.

23    Stmt., attached as Ex. 5.)

24    In fact, the case law stands for the opposite of Plaintiffs' asserted proposition. The

25    Federal Circuit has expressly held that a defendant's appearance even in the same court, in an

26    action involving the same parties, does not waive personal jurisdiction in other actions. In

27    *Rozenblat v. Sandia Corp.*, 2006 WL 678923 (Fed Cir. 2006), an action seeking a declaration of

28

patent invalidity, the plaintiff claimed that the district court had jurisdiction over the defendants because they had appeared in the same court in another action previously filed by the plaintiff. *Id.* at *3. The district court rejected the plaintiff's argument and dismissed the suit for lack of personal jurisdiction, because the defendants' appearance in the previous matter did not waive personal jurisdiction in other actions. The Federal Circuit affirmed on the same grounds. *Id.* Other circuit and district courts are consistently in accord.[5]

In short, even apart from the fact that they rely entirely on post-filing irrelevant facts, Plaintiffs are also wrong in claiming that a waiver occurred.

---

[5] *See, e.g., Dow Chem. Co. v. Calderon*, 422 F.3d 827, 835-36 (9th Cir. 2005) (holding that "defense on the merits in a suit brought by one party cannot constitute consent to suit as a defendant brought by other parties," and finding no consent to personal jurisdiction because "the defendants have only defended against two separate actions . . . in the same court. Without an independent affirmative decision to seek relief in our courts," personal jurisdiction is not waived); *PaineWebber Inc. v. Chase Manhattan Private Bank*, 260 F.3d 453, 459-60 (5th Cir. 2001) (holding that the defendant did not consent to personal jurisdiction by litigating in the forum, because "[t]his is not a case in which the party seeking to avoid the court's jurisdiction has chosen to commence the action or a related action in the very forum in which it is contesting personal jurisdiction; neither is this a case in which the party contesting jurisdiction has asserted counterclaims for affirmative relief; and this is not a case in which a party has litigated extensively on the merits before making any jurisdictional objections."); *Toshiba Int'l. Corp. v. Fritz*, 993 F.Supp. 571, 572-73 (S.D. Tex. 1998) (holding that the defendant's previous filing of a third-party complaint against the plaintiff in the same district court did not constitute a waiver of objection to personal jurisdiction in the present declaratory judgment action); *Capitol Res. Funding, Inc. v. Tri-County Bank of Royston*, 1997 WL 538898, at *3 (N.D.N.Y. 1997) (holding that by appearing in a bankruptcy court as a creditor, the defendant submitted to personal jurisdiction to any counterclaim filed in the bankruptcy action, but did not waive objections to personal jurisdiction in an unrelated matter in the district court, and dismissing the argument that personal jurisdiction in a district court may be established by appearing in a bankruptcy court as a theory "without precedent"); *John F. Beasley Constr. Co., Inc. v. C.J. Mahan Constr. Co.*, 1999 WL 689365, at *6-7 (N.D. Tex. 1999) (holding that a party who appeared in three bankruptcy proceedings in the bankruptcy court did not thereby establish personal jurisdiction in another case). Plaintiffs attempt to distinguish *Capitol Resource* and *John F. Beasley* from this case by claiming that the bankruptcy matter "directly relates to the issues in the lawsuit." Not quite. The alleged "relatedness" was created by the search engine companies and their allies making a frivolous assertion in two courts. The central issue, however, in the Eastern District of Texas is patent infringement. The bankruptcy proceedings concerned the sole issue of whether Site Tech's bankruptcy should have been reopened so that someone could lay claim to a purported asset of Site Tech—and the bankruptcy court decided it should not. This case concerns the issue of whether Plaintiffs have infringed SRA's patents. In fact, Sherwood Finance, LLC's (the petitioner in the bankruptcy proceeding) counsel agreed that the hearing on December 17, 2008, at which SRA's counsel appeared, was a "status and scheduling conference" regarding a motion to reopen Site Tech's closed bankruptcy case. (Bankr. 12/17/08 Hearing Tr. at 27.) Accordingly, under *Capitol Resource* and *Beasley*, even if SRA had filed a proof of claim in the bankruptcy court—which it did not—this Court still would not for that reason have personal jurisdiction.

**B.**   **This Court lacks general jurisdiction over SRA and Egger, because neither has continuous and systematic contacts with California.**

This Court can assert general jurisdiction over SRA or Egger only if they have established "continuous and systematic" contacts with California. *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1200 (Fed. Cir. 2003). This requires a "substantial and continuous presence," as opposed to "sporadic" contacts, in California. *Campbell Pet Co. v. Miale*, 542 F.3d 879, 884 (Fed. Cir. 2008). Plaintiffs do not contest that this Court lacks general jurisdiction over Egger. Defendants' opening brief also demonstrated that this Court lacks general jurisdiction over SRA, because, among other things, SRA engaged in no pre-suit business activity in California and maintained no property whatsoever in California.

Notwithstanding these dispositive facts, Plaintiffs maintain that SRA is subject to general jurisdiction in California because it contracted with a California-based web hosting service to host SRA's passive and unused website. Plaintiffs' argument is frivolous. Plaintiffs do not argue that jurisdiction exists just because SRA's website was accessible to California residents; such an argument would fail in any event, because it is beyond dispute that SRA's website was merely a "passive website"—that is, a website that "merely display[s] information, such as an advertisement." *Am. Auto Ass'n, Inc. v. Darba Enters. Inc.*, 2009 WL 1066506, at *4 (N.D. Cal. Apr. 21, 2009).[6] Federal Circuit law is clear that "[a] passive website is insufficient to establish purposeful availment for the purpose of due process." *Marynard v. Philadelphia Cervical Collar Co., Inc.*, 18 Fed. Appx. 814, 816 (Fed. Cir. 2001); *see also Campbell*, 542 F.3d at 881-82 (finding no general jurisdiction even though defendant not only hosted a website accessible to Washington residents but also made sales to Washington residents, attended multiple conferences there, demonstrated and offered her products there, and engaged other in-state activities).

---

[6] Plaintiffs have offered no evidence whatsoever—and none exists—suggesting that SRA's website even placed any content worth reading on its website or conducted any activity thereon, or that anyone in California (other than Plaintiffs' attorneys) ever even visited it. The evidence in fact is to the contrary—that SRA set up the website but abandoned it before putting it to any use. (*See Egger Depo.* 269:10 ("We had a Web site, but we ended up not using it."), attached as Ex. 11.)

Likewise, the fact that SRA's website was serviced by a California company does not create general jurisdiction.  Merely entering into agreements with California-based vendors does not create general jurisdiction in California, because it "constitute[s] doing business with California, but do[es] not constitute doing business in California." *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000); *see also Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 418 (1984) (holding that "mere purchases, even if occurring at regular intervals, are not enough to warrant a State's assertion of in personam jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions").  In fact, this Court has specifically held that a defendant's contact with its California-based website host alone "is not sufficiently 'continuous and systematic' or 'substantial' to confer general jurisdiction." *Silverstein v. Experienced Internet.com, Inc.*, 2005 WL 1629935, at *3 (N.D. Cal. 2005), *aff'd*, 266 Fed. Appx. 678 (9th Cir. 2008).

**C.**   **This Court also lacks specific jurisdiction over SRA and Egger, because neither of them contacted Plaintiffs in California prior to suit to allege infringement of SRA's patents, and neither engaged in the required "other patent-related activities" in California.**

Defendants articulated—and Plaintiffs do not dispute—the two requirements in the Federal Circuit for establishing specific jurisdiction in patent declaratory judgment actions.  First, the defendant must have contacted the forum state plaintiff—whether through cease-and-desist letters, phone calls, in-person visits, or otherwise—prior to suit to allege infringement of the defendant's patents. *See, e.g., Campbell*, 542 F.3d at 882.  Second, the defendant must have engaged in "other patent-related activities" in the forum state, *Silent Drive*, 326 F.3d at 1202, such as attempting in the forum state to interfere with the forum state plaintiff's business, *Campbell*, 542 F.3d at 886-87; granting an exclusive license of the patented technology to forum state residents, *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1361 (Fed. Cir. 2001); selling the patented product in the forum state, *Dainippon Screen Mfg. Co., Ltd. v. CFMT, Inc.*, 142 F.3d 1266, 1271 (Fed. Cir. 1998); and hiring a patent attorney in the forum state, *Elecs. For Imaging, Inc. v. Coyle,* 340 F.3d 1344, 1352 (Fed. Cir. 2003).  Plaintiffs do not even allege that SRA or Egger engaged in these types of activities.

1.    This Court lacks specific jurisdiction over SRA, because SRA neither contacted Plaintiffs in California prior to suit to allege infringement nor engaged in the required "other patent-related activities" in California.

Defendants' opening brief demonstrated that both indispensable prerequisites of specific jurisdiction are unsatisfied as to SRA: SRA never contacted Plaintiffs in California prior to suit to allege infringement, and SRA never engaged in the required "other patent-related activities" in California. Plaintiffs' response makes a two-part argument that fails to demonstrate otherwise.

Plaintiffs' first argument is an incoherent volley of every imaginable contact SRA has with California, however attenuated, without regard to whether SRA even initiated the contact, and without regard to whether the contact even relates to the Federal Circuit's requirements for specific jurisdiction. Specifically, SRA's supposed contacts are as follows:

- Egger had contacts in California over ten years ago that are relevant to SRA's willfulness claim.

- Egger purchased the patents in 1998 from Site Tech, a California company. Many years later, Egger assigned the patents to SRA.

- In February 2005, Egger (in North Carolina) purportedly assigned the patents to SRA—an assignment on which SRA does not even rely in establishing title to the patents—while acting as an officer for a California company.

- SRA filed the Eastern District of Texas suit against Plaintiffs, three of whom are based in California.

- In August 2008, Egger executed a backup assignment with Site Tech.

- For a short while starting in November 2008, Smyser Kaplan & Veselka, L.L.P. and DiNovo Price Ellwanger & Hardy, L.L.P. represented Site Tech in this Court.

- In December 2008, SRA appeared as a non-party in the bankruptcy court to advise the court of material facts as it determined whether to reopen Site Tech's bankruptcy.

These supposed contacts do not establish specific jurisdiction over SRA. For one thing, four of them are not even SRA's contacts. Egger's contacts with California over ten years ago— several years before SRA was even formed—is not a contact between SRA and California; it is a contact between Egger and California. Egger's purchase of the patents from Site Tech in 1998— again, several years before SRA was even formed—also is not a contact between SRA and California; it is a contact between Egger and California. Egger's execution of a backup assignment with Site Tech also is not a contact between SRA and California; it is a contact

1    between Egger and California.  Smyser Kaplan & Veselka, L.L.P.'s and DiNovo Price Ellwanger

2    & Hardy, L.L.P,'s previous representation of Site Tech in this case is not a contact between SRA

3    and California; it is a contact between those law firms and California.  A defendant cannot be

4    subject to personal jurisdiction unless it specifically and purposefully directs its activities

5    towards the forum state's residents.  *See, e.g., 3D Sys., Inc. v. Aarotech Labs., Inc.*, 160 F.3d

6    1373, 1380 (Fed. Cir. 1998) ("Personal jurisdiction over Aarotech . . . is not proper in California

7    because Aarotech did not purposefully direct any activities at California residents.").

8        Further, four of the SRA's so-called contacts occurred after this litigation commenced.

9    SRA's filing suit in the Eastern District of Texas in November 2007 is the event that commenced

10   this litigation.   Suing California companies in Texas is not a California contact sufficient to

11   establish jurisdiction in California.    SRA's non-party appearance in the bankruptcy court

12   occurred in December 2008—five months after this case began and thirteen months after the

13   Eastern District of Texas case began.  Egger's backup assignment with Site Tech occurred in

14   August 2008—one month after this case began and nine months after the Eastern District of

15   Texas case began.   The two law firms' appearance for Site Tech in this Court occurred in

16   November 2008—again, months after the cases were filed.  Federal law is clear that personal

17   jurisdiction is to be determined solely based on the defendant's contacts with the forum state at

18   the time the lawsuit was filed. *See, e.g., Klinghoffer v. S.N.C. Achille Lauro*, 937 F.2d 44, 52 (2d

19   Cir. 1991) ("[P]ersonal jurisdiction depends on the defendant's contacts with the forum state at

20   the time the lawsuit was filed . . . ."); *see Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558,

21   562 (8th Cir. 2003) ("Minimum contacts must exist either at the time the cause of action arose,

22   the time the suit is filed, or within a reasonable period of time immediately prior to the filing of

23   the lawsuit.").

24       Finally, none of the contacts establishes—or is even relevant to—the two requirements

25   for specific jurisdiction as to SRA.  None establishes that SRA ever contacted Plaintiffs in

26   California prior to suit to allege infringement.  None establishes that SRA ever attempted to

27   interfere with Plaintiffs' business while in California, or granted an exclusive license of the

28

1  patented technology to California residents, or sold the patented product in California, or hired a

2  patent attorney in California. In truth, no such contacts exist.

3        Plaintiffs' second line of argument is that SRA is subject to specific jurisdiction because

4  Altitude Capital Partners, LLC—a controlling stakeholder in SRA, not its parent—is subject to

5  specific jurisdiction in this Court. This argument is also frivolous. First, this Court should not

6  impute Altitude's contacts to SRA. Even a parent company's contacts—and Altitude is not

7  SRA's parent—may be imputed to the patentee for jurisdictional purposes only when the

8  requirements for demonstrating an alter ego relationship between the two are satisfied. *See Sys.*

9  *Div., Inc. v. Teknek Elecs., Ltd.*, 2007 WL 3151697, at *3 (Fed. Cir. 2007); *Minn. Mining & Mfg.*

10 *Co. v. Eco Chem, Inc.*, 757 F.2d 1256, 1265 (Fed. Cir. 1985). Under California law, these

11 requirements are that "(1) there is such a unity of interest and ownership that the individuality, or

12 separateness, of the said person and the corporation has ceased, and (2) an adherence to the

13 fiction of the separate existence of the corporation would sanction a fraud or promote injustice."

14 *Wechsler v. Macke Int'l Trade, Inc.*, 486 F.3d 1286, 1295 (Fed. Cir. 2007) (applying California

15 law) (internal quotation marks omitted).[7] As the Federal Circuit has recognized, "California

16 courts generally treat the alter ego doctrine as a drastic remedy and disregard the corporate form

17 only reluctantly and cautiously." *Id.* Plaintiffs have not justified the drastic remedy they seek,

18 and such a remedy is unjustified here. There is no evidence, for example, that SRA and Altitude

19 commingle funds, use the same offices and employees, disregard corporate formalities, or have

20 identical directors and officers, let alone identical ownership. *See Troyk v. Farmers Group, Inc.*,

21 90 Cal. Rptr. 3d 589, 619 (Cal. Ct. App. 2009) (identifying these factors as pertinent to the alter

22 ego inquiry).

23        Second, even if SRA were an alter ego of Altitude, such would not create jurisdiction

24 over SRA, because Altitude is not subject to specific jurisdiction in this case. As the Federal

25

26 [7] In deciding alter ego claims, the Federal Circuit applies the law of the regional circuit.
   *Wechsler*, 486 F.3d at 1295 ("Since the alter ego issue is not unique to patent law, we apply the
27 law of the regional circuit."). The Ninth Circuit applies the law of the forum state. *Id.* ("The
   Ninth Circuit applies the law of the forum state, in this case California, to determine whether a
28 corporation is the alter ego of an individual.").

Circuit has made clear, while it is true that "a patent holding subsidiary . . . cannot fairly be used to insulate patent owners from defending declaratory judgment actions," jurisdiction over such a subsidiary still remains permissible only "in those fora where its parent company operates under the patent and engages in activities sufficient to create personal jurisdiction and declaratory judgment jurisdiction." *Dainippon*, 142 F.3d at 1271.   Here, Plaintiffs' allegations regarding Altitude's contacts with California hardly suffice.   They allege the following:

- An Altitude subsidiary invested $35 million in a company located in California.

- Altitude emailed persons in California regarding potential investments in companies located in California.

- Altitude personnel traveled to California to conduct due diligence on potential investments.

- Altitude invited a California resident to join its advisory board.

- Altitude personnel gave speeches in California.

Again, these contacts have absolutely nothing to do with whether the specific jurisdiction requirements in patent declaratory judgment actions are satisfied as to Altitude.   They do not indicate that Altitude ever contacted Plaintiffs in California prior to suit to allege infringement. And they do not indicate that Altitude ever attempted to interfere with Plaintiffs' business while in California, or granted an exclusive license of the patented technology to California residents, or sold the patented product in California, or hired a patent attorney in California.

Put simply, SRA has never—either on its own or through Altitude—contacted Plaintiffs in California prior to suit to allege infringement or engaged in the required "other patent-related activities" in California.   Specific jurisdiction over SRA fails.

> 2.      This Court lacks specific jurisdiction over Egger, because Egger neither contacted Plaintiffs in California prior to suit to allege infringement nor engaged in the required "other patent-related activities" in California.

Defendants' opening brief demonstrated that both indispensable prerequisites of specific jurisdiction are unsatisfied as to Egger:   Egger never contacted Plaintiffs in California prior to suit to allege infringement, and Egger never engaged in the required "other patent-related activities" in California.   Plaintiffs' response fails to demonstrate otherwise.

---

Plaintiffs' argument as to Egger, just as with SRA, consists of a fusillade of every imaginable patent-related contact Egger has had with California, however unrelated such contacts might be to the Federal Circuit's specific jurisdiction requirements. Specifically, the so-called contacts are as follows:

- In March 1995—before SRA and some of the search engine companies even existed—Egger demonstrated the patented technology at a conference in San Diego.

- During the mid-1990s—again, before SRA and some of the search engine companies existed—Egger traveled to California from time to time to try to sell the patented technology to potential buyers, including some of the search engine companies.

- In the mid-1990s, Egger contacted California entities, including some of the plaintiffs here, to try to sell the patented technology. These contacts relate to SRA's willfulness claim in this case.

- In September 1998, Egger purchased the patents from Site Tech, a California company.

- In February 2005, Egger purportedly assigned the patents to SRA while acting as an officer for a California company.

- In August 2008, Egger executed a backup assignment with Site Tech.

These so-called contacts fall well short of creating specific jurisdiction over Egger. Three of them are not even Egger's contacts. Egger's travel to California to try to sell the patented technology, demonstrating the patented technology at a conference, and contacting a few of the plaintiffs to try to sell the patented technology are not contacts by Egger in his personal capacity, but instead were activities Egger conducted solely as an agent for his employer, Libertech, Inc. (*See* Egger Dec. ¶ 5, attached as Ex. 10.) Such contacts do not count in determining personal jurisdiction. *See 3D Sys.*, 160 F.3d at 1380 (finding no personal jurisdiction over Young in his individual capacity because "[a]ll of Young's actions in relation to the state of California were taken in his role as an officer of Aaroflex. Young did not direct any activities individually toward California.").

Further, one of Egger's alleged contacts occurred after this litigation commenced. Egger's backup assignment with Site Tech occurred in August 2008—one month after this case began and nine months after the Eastern District of Texas case began. As noted, post-filing contacts are irrelevant to personal jurisdiction. *See, e.g., Klinghoffer*, 937 F.2d at 52.

---

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS, TRANSFER, OR STAY
CASE NO. CV08-03172

Finally, none of the contacts establishes—or is even relevant to establishing—the two requirements for specific jurisdiction as to Egger.  None indicates that Egger ever contacted Plaintiffs in California prior to suit to allege infringement.  None indicates that Egger ever attempted to interfere with Plaintiffs' business while in California, or granted an exclusive license of the patented technology to California residents, or sold the patented product in California, or hired a patent attorney in California.  The undisputed evidence in fact is to the contrary.  (*See* Egger Dec. ¶ 10 ("I have never at any time . . . made contact with the State of California or with any California entity to allege that any entity was infringing the patents . . . [or] to try to judicially or extra-judicially enforce the patents . . . [or] in connection with any exclusive license of any of the technologies embodied in the patents.  I have never . . . hired a California patent lawyer to help prosecute or enforce the patent rights.  I have never . . . sold or licensed the patented technology in California or to any California entity.").)

**III.**  **No case or controversy exists between Plaintiffs and Egger or Site Tech, because, as the Eastern District of Texas has already ruled, neither owns the patents, and furthermore, neither has threatened Plaintiffs with a patent infringement suit.**

> **A.**  **Under Federal Circuit law, a case or controversy exists in a patent declaratory judgment action only if the defendant (1) is a patentee, assignee, or exclusive licensee, and (2) has threatened through affirmative acts to accuse the plaintiffs of patent infringement.**

A case or controversy in patent declaratory judgment actions requires two things.  First, there must "be an underlying legal cause of action that the declaratory defendant could have brought or threatened to bring." *Benitec Australia, Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1344 (Fed. Cir. 2007) (Whyte, J., sitting by designation)  (internal quotation marks omitted).  In the patent context, of course, this means that the declaratory defendants must be patentees, assignees, or exclusive licensees. *Fieldturf, Inc. v. Southwest Recreational Indus., Inc.*, 357 F.3d 1266, 1268 (Fed. Cir. 2004) ("To bring an action for patent infringement, a party must be either the patentee, a successor in title to the patentee, or an exclusive licensee of the patent at issue.").  Second, there "must be . . . a *real* and *immediate* injury or threat of future injury that is *caused by the defendants*." *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1335 (Fed. Cir. 2008) (emphasis in original).  That is, there generally must be "some affirmative act by the patentee"

1   evidencing an intent to actually accuse the plaintiffs of infringement.  *Id.* at 1339 (internal

2   quotation marks omitted).

3      **B.     Everyone, including Plaintiffs, agrees that Egger has no rights to the patents,
              and there is no evidence suggesting that Egger ever threatened Plaintiffs with**

4              **an infringement suit.**

5        No one believes that Egger owns the patents.  To the contrary, everyone is on record

6   stating that Egger does *not* own the patents.  Egger has testified, "I owned the patents directly

7   from September 1998 until February 2005, when I assigned them to Software Rights Archive,

8   Inc. . . . [which] I sold [] in May 2007." (Egger Dec. ¶ 9.)  Defendants have said, "Defendants . .

9   . agree that Egger does not own the patents-in-suit." (Defs.' Mot. at 21.)  Plaintiffs have said,

10  "Plaintiffs . . . contend that [the patents] remain the property of Site Tech's estate." (Pls.' Resp.

11  at 1.)  And most important, the Eastern District of Texas has ruled, twice, that SRA owns the

12  patents.

13       Plaintiffs also have offered no evidence and do not contend that Egger ever threatened to

14  accuse Plaintiffs of patent infringement.  As noted, Egger has testified that he does not own the

15  patents.  Further, he has testified that "I have never at any time . . . made contact . . . with any

16  California entity to allege that any entity was infringing the patents.  I have never at any time . . .

17  made contact . . . with any California entity to try to judicially or extra-judicially enforce the

18  patents." (Egger Dec. ¶ 10.)

19       Instead, Plaintiffs claim that Egger is "embroiled" in this controversy—a creative new,

20  vague, standard found nowhere in Federal Circuit law—and dredge up for this Court every

21  conceivable link Egger has to this case, ignoring their lack of relevance to the Federal Circuit's

22  case-or-controversy standards.  Specifically, they cite the following facts:

23      &bull;  "Egger founded SRA to hold the patents."

24      &bull;  "Egger . . . remains a consultant who stands to personally gain from any recovery by
         SRA against the Plaintiffs."

25

26      &bull;  "Egger . . . believed that Plaintiffs infringed the three patents-in-suit."

27      &bull;  "[I]n August and September 2008, Egger both accepted alleged rights to the patents
         and executed a 'backup assignment' purporting to assign the patents to SRA."

28

At the outset, the fourth asserted "fact" is both wrong and irrelevant:  Egger "accepted" no patent rights in 2008 through the backup assignment, but rather, actively disclaimed them;[8] further, facts arising after the complaint was filed (here, July 2008) are irrelevant to the case-or-controversy analysis.  *See Spectronics Corp. v. H.B. Fuller Co., Inc.*, 940 F.2d 631, 634-35 (Fed. Cir. 1991) ("[A] party seeking a declaratory judgment must plead facts *initially* sufficient to establish the existence of an actual controversy. . . . [T]he presence or absence of jurisdiction must be determined on the facts existing at the time the complaint under consideration was filed." (emphasis in original; internal quotation marks and modifications omitted)).  More important, however, *all* of Plaintiffs' claimed facts are irrelevant.  Not only do they not demonstrate that Egger is a patentee, assignee, or exclusive licensee and manifested an intent to accuse Plaintiffs of infringement, they do not even advance the ball closer to those conclusions.

### C.   The Eastern District of Texas has twice ruled that Site Tech does not own the patents, and there is no evidence suggesting that Site Tech ever threatened Plaintiffs with an infringement suit.

On March 31, 2009, after reviewing extensive briefs and exhibits, the Eastern District of Texas ruled decisively that SRA—not Site Tech—owns the patents.  On June 24, 2009, on reconsideration, the court again ruled that SRA—not Site Tech—owns the patents.

Site Tech itself has also consistently represented to the SEC, this Court's bankruptcy division, and others for over ten years that it sold the patents in September 1998.  (*See, e.g.,* Site Tech 10-QSB at 8, attached as Ex. 13 ("On September 30, 1998, the Company consummated the sale of its V-Search technology and related patents. . . . The Company sold the assets relating to V-Search in cash to Daniel Edgar [sic]."); Debtor's 1st Am. Discl. Stmt. ¶ 5.5, attached as Ex. 6

---

[8] To remove even a theoretical possibility that he might own the patents, Egger disclaimed ownership of the patents through a backup assignment that assigned the patents to SRA even in the hypothetical situation expressly identified by the assignment as not believed to be true—namely, that Egger owns the patents.  In September 2008 Egger executed a backup assignment providing that, even though "[Egger] previously assigned the Patents to [SRA]," Egger would again do so just to "remov[e] all doubt with respect to [SRA]'s holding full and complete legal title to and ownership of the Patents,"  (Egger-SRA Backup Assmt., attached as Ex. 12.)

("In September 1998, the Company also sold its V-Search technology and related patents.").)[9] Plaintiffs alone remain in denial that the patents do not belong to Site Tech, but that will not suffice to create subject matter jurisdiction in this Court.  Until and unless the Federal Circuit issues an order reversing the Eastern District of Texas—and Plaintiffs have every right to seek such an order at the appropriate time—this issue is settled.

Nevertheless, after choosing to litigate fully the ownership issue before the Eastern District of Texas and receiving not one but two adverse rulings thereon, Plaintiffs urge this Court to overrule the Eastern District of Texas.  This Court should reject Plaintiffs' audacious request. At the outset, the request is of no legal import, because Plaintiffs have failed to satisfy the indispensable "real and immediate threat of future injury" requirement.  But further, the Eastern District of Texas happens to have been right.  Defendants will not add to the already overflowing pile of standing-related motion papers.  And "the doctrine of stare decisis is still a powerful force in our jurisprudence" and counsels strongly against overruling a sister court's resolution of an identical question based on identical facts.  *U.S. v. Maine*, 420 U.S. 515, 527 (1975).

But even apart from all these reasons, this Court should reject Plaintiffs' request because preclusion principles apply here and render it improper to reconsider the Eastern District of Texas's ruling in this case.  The U.S. Supreme Court has said, "A fundamental precept of common-law adjudication, embodied in the related doctrines of collateral estoppel and res judicata, is that a right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction cannot be disputed in a subsequent suit between the same parties or their privies."  *Montana v. U.S.*, 440 U.S. 147, 153 (1979).  This rule "protects [] adversaries

---

[9]  Jeffrey Ait, Site Tech's sole officer, director, and shareholder during its bankruptcy (which ended several years ago), was Site Tech's sole remaining representative.  He too has testified as follows: "On September 16, 1998, Site Tech sold and assigned, among other things, U.S. Patent No. 5,544,352, and related applications and future patents (which include U.S. Patent Nos. 5,832,494 and 6,233,571) to Daniel Egger."  (Ait Dec. ¶ 5, attached as Ex. 1).  Further, like Egger, Site Tech disclaimed ownership of the patents through a backup assignment to remove even a theoretical possibility that it might own the patents,  Its backup assignment, executed in August 2008, provided that, even though "Site [Tech] assigned to Daniel Egger . . . [on] September 16, 1998 . . . the Patents," it would again do so just to "remov[e] all doubt with respect to Egger's holding full and complete legal title to and ownership of the Patents."  (Site Tech–Egger Backup Assmt., attached as Ex. 14.)

1  from the expense and vexation attending multiple lawsuits, conserves judicial resources, and

2  fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Id.* at

3  153-54. The doctrine applies in situations just like this one, where "(1) the issue sought to be

4  litigated is sufficiently similar to the issue present in an earlier proceeding and sufficiently

5  material in both actions to justify invoking the doctrine; (2) the issue was actually litigated in the

6  first case; and (3) the issue was necessarily decided in the first case." *Allen v. City of Los*

7  *Angeles*, 92 F.3d 842, 849 (9th Cir. 1996).

8        Plaintiffs' last-ditch argument—that "[t]he March 31 and June 24 Opinions are not

9  binding on this Court since they do not constitute a final judgment"—should be rejected. (Pls.'

10  Resp. at 27.) Plaintiffs' very premise is wrong; the Ninth Circuit has expressly held that "[t]o be

11  'final' for collateral estoppel purposes, a decision need not possess 'finality' in the sense of 28

12  U.S.C. § 1291." *Luben Indus., Inc. v. U.S.*, 707 F.2d 1037, 1040 (9th Cir. 1983). Instead, "A

13  final judgment includes any prior adjudication of an issue in another action that is determined to

14  be sufficiently firm to be accorded conclusive effect." *Robi v. Five Platters, Inc.*, 838 F.2d 318,

15  327 (9th Cir. 1988) (internal quotation marks omitted). The Eastern District of Texas's dual

16  rulings are firm. They were decisive and reaffirmed on Plaintiffs' motion for reconsideration.

17  They were issued following the court's consideration of briefs totaling 127 pages of argument

18  and 718 pages of exhibits. They articulated the relevant facts and contested issues in detail and

19  thoroughly analyzed and applied the law. They are subject to appeal along with all other issues

20  at the conclusion of the case. *See* Restatement (Second) of Judgments § 13 comment g ("[T]hat

21  the parties were fully heard, that the court supported its decision with a reasoned opinion, that the

22  decision was subject to appeal or was in fact reviewed on appeal, are factors supporting the

23  conclusion that the decision is final for the purpose of preclusion."); *Robi*, 838 F.3d at 327

24  (adopting Restatement rule in determining firmness).

25        Likewise, there is no evidence—and Plaintiffs do not even attempt to proffer any—that

26  Site Tech ever indicated an intent to accuse Plaintiffs of infringement. To the contrary, as noted,

27  Site Tech has represented since 1998 that it had already sold the patents. (*See, e.g.,* Site Tech

28

1    10-QSB at 8; Debtor's 1st Am. Discl. Stmt. ¶ 5.5; Ait Dec. ¶ 5.)  There is no evidence that,

2    during the one brief year that it owned the patents—from July 1997 to September 1998—Site

3    Tech even contemplated an infringement suit against anyone, much less against Plaintiffs, let

4    alone communicated such an intent to anyone.  (This is not to mention the absurdity of claiming

5    that "threats" made in the late-90s prompted this declaratory judgment action ten years later.)

6    Finally, it is undisputed that Site Tech has been defunct for over five years, with no business

7    activity or shareholder or director meetings whatsoever.  Plaintiffs themselves contended before

8    the Eastern District of Texas that for years Site Tech has been legally disabled from taking any

9    actions and must be dissolved.  To imagine that such a company affirmatively caused "a real and

10   immediate threat of future injury" is beyond reason.  In any event, apparently recognizing the

11   futility of disputing the point, Plaintiffs effectively concede the issue; their brief contains not one

12   word arguing that the "real and immediate threat" requirement is satisfied.

13          Instead, Plaintiffs merely attempt to skirt this requirement by arguing that it somehow is

14   overridden by Federal Rule of Civil Procedure 19, which provides for required joinder of parties.

15   Plaintiffs' argument makes no sense even upon reading it, because the "real and immediate

16   threat" requirement is a requirement under Article III of the U.S. Constitution and cannot be

17   avoided by a Federal Rule of Civil Procedure.  Plaintiffs of course cite no Federal Circuit law (or

18   other Circuit law, let alone U.S. Supreme Court law) in support of their theory, because none

19   exists.  And even the cases Plaintiffs do cite—two unpublished cases so obscure that Defendants

20   could not even access them on Westlaw, and two other cases from other jurisdictions—are

21   inapposite.  For example, *Rite-Hite Corp. v. Delta T Corp.*, 2007 WL 725327 (E.D. Wis. 2007),

22   stands only for the proposition that, where one undisputed co-owner who threatened the plaintiff

23   is the subject of a patent declaratory judgment action, the other undisputed co-owner should be

24   joined too.  It does not nearly hold that anyone and everyone—even those who do not own the

25   patents—constitute necessary parties just because a plaintiff thinks that they might own the

26   patents.  Nor does it stand for the proposition that a patent declaratory judgment action can lie

27   where *no defendant* threatened the plaintiff with an infringement action—as would be the case

28

1   here if Plaintiffs were correct, since SRA and Egger would then be dismissed from this suit,

2   leaving Site Tech as the only defendant.   *Tracfone Wireless, Inc. v. US/Intelicom, Inc.*, 202

3   F.R.D. 321 (S.D. Fla. 2001), is even more irrelevant; it is not even a patent declaratory judgment

4   case, and the case or controversy issue was not even raised in the case.

5        Thus, Plaintiffs have failed to establish the case or controversy requirements as to Site

6   Tech as well.  Plaintiffs' claims against Egger and Site Tech must be dismissed.

7   **CONCLUSION**

8        Defendants' motion should be granted.   This case should be dismissed, or in the

9   alternative, transferred or stayed in favor of the Eastern District of Texas action.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS, TRANSFER, OR STAY
CASE NO. CV08-03172

23

Respectfully submitted,

Thomas F. Smegal, Jr.
State Bar No. 34819
Law Offices of Thomas F. Smegal, Jr.
One Sansome Street, 35th floor
San Francisco, CA 94104
Telephone: (415) 217-8383
Facsimile: (415) 399-5093

Jay D. Ellwanger
State Bar No. 24036522
DiNovo Price Ellwanger & Hardy LLP
7000 North MoPac Expressway
Suite 350
Austin, Texas 78731
Telephone: (512) 539-2630
Facsimile: (512) 539-2627
Email: jellwanger@dpelaw.com

Lee L. Kaplan
State Bar No. 11094400
(admitted *pro hac vice*)
Jeffrey A. Potts
State Bar No. 00784781
(admitted *pro hac vice*)
Raj Duvvuri
State Bar No. 24054185
(admitted *pro hac vice*)
Smyser Kaplan & Veselka, L.L.P.
700 Louisiana, Suite 2300
Houston, Texas 77002
(713) 221-2323
(713) 221-2320 (fax)
lkaplan@skv.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on August 7, 2009.

Lee L. Kaplan

---

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS, TRANSFER, OR STAY
CASE NO. CV08-03172

**INDEX OF EXHIBITS**

1. Ait Dec.

2. Bankr. 12/17/08 Hearing Tr.

3. Bankr. 04/15/09 Hearing Tr.

4. Bankr. Compl.

5. Bankr. SRA Status Conf. Stmt.

6. Debtor's 1st Am. Discl. Stmt.

7. E.D. Tex. Compl.

8. E.D. Tex. Order Denying Mot. for Reconsid.

9. E.D. Tex. Order Denying Mot. to Dism.

10. Egger Dec.

11. Egger Depo.

12. Egger-SRA Backup Assmt.

13. Site Tech 10-QSB

14. Site Tech-Egger Backup Assmt.

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS, TRANSFER, OR STAY
CASE NO. CV08-03172