1
2
3
4
5
6
7
8
9          UNITED STATES DISTRICT COURT
10         NORTHERN DISTRICT OF CALIFORNIA
11              SAN JOSE DIVISION
12

13                                    )        Case No.: C 08-03172 RMW (PSG)
                                      )
14                                    )        **ORDER REGARDING DISCOVERY**
                                      )        **MOTIONS**
15                                    )
   **IN RE GOOGLE LITIGATION**        )
16                                    )
                                      )
17                                    )
   _____ )
18

19          Plaintiff Software Rights Archive LLC ("SRA") moves: (1) to compel Defendant Google,

20  Inc. ("Google") to produce the entirety of its source code and other technical documents (E.D. Tex.

21  Docket No. 194); (2) to compel Non-Party Leland Stanford Junior University ("Stanford") to

22  respond to a subpoena *duces tecum* pursuant to Rule 45 (N.D. Cal. Docket No. 237); (3) to preclude

23  Google and Defendant AOL, Inc. ("AOL") from asserting that accused activity occurs solely outside

24  of the United States, or alternatively, to compel discovery regarding the location of accused activity

25  (N.D. Cal. Docket No. 231); (4) to compel Google to provide damages-related discovery (E.D. Tex.

26  Docket No. 306); and (5) to compel Google to disclose *Function Media* Discovery and Transcript

27  (E.D. Tex. Docket No. 284).  Google and Stanford oppose the motions.  Additionally, Google moves

28  for a protective order. (E.D. Tex. Docket No. 255).  On December 14, 2010, the parties appeared for

1    hearing.[1]

2        Having reviewed the papers and considered the arguments of counsel, IT IS HEREBY

3    ORDERED that:

4    1.      SRA's motion to compel is GRANTED-IN-PART AND DENIED-IN-PART;

5    2.      Google's motion for protective order is DENIED;

6    3.      SRA's Motion to Compel Non-Party Stanford University to Respond to a Subpoena *Duces*
             *Tecum* is GRANTED;

7

8    4.      SRA's motion to compel discovery regarding location of accused activity is GRANTED;

9    5.      SRA's motion to compel production of damages discovery is GRANTED; and

10   6.      SRA's motion to compel *Function Media* discovery and transcript is DENIED.

     **I.      BACKGROUND**

11

12       As discussed in Judge Whyte's December 16, 2010 Order Denying Motion to Dismiss For

13   Lack of Standing, Daniel Egger ("Egger"), a named inventor of United States Patent Nos. 5,544,352;

14   5,832,494; and 6,233,571 ("the asserted patents"), acquired rights to the asserted patents in 1998.

15   Egger then created Software Rights Archive, Inc. ("SRAI") and assigned the asserted patents to that

16   entity. SRAI signed a binding letter of intent with Altitude Capital Partners L.P. ("Altitude"). The

17   agreement  described in that letter would provide SRAI with funding to enforce the asserted patents,

18   but would give Altitude "control of all settlement, litigation, enforcement and licensing decisions."

19   In preparing to implement this agreement, Egger converted SRAI into SRA –the plaintiff in this

20   lawsuit.

21       On November 21, 2007, SRA filed suit against Google, AOL, Yahoo!, IAC Search & Media,

22   Inc. ("IAC"), and Lycos in the United States District Court for the Eastern District of Texas, alleging

23   that each of the asserted patents was infringed.  On July 1, 2008, Google, AOL, Yahoo!, IAC, and

24   Lycos filed suit against Egger, SRA and Site Technologies, Inc. ("STI") in this court, seeking a

25   declaratory judgment of non-infringement and invalidity of the asserted patents, among other claims.

26   On August 22, 2009, this court dismissed Egger as a defendant and stayed the Northern District of

27   California action pending resolution of the case in the Eastern District of Texas or a decision by that

28
     ──────────────
             [1]      As explained below, this action originated as a suit in the Eastern District of Texas.  A
     number of the pending motions were previously heard in that venue but not decided before transfer to
     this court.

                                          ORDER, *page 2*

1    court to transfer the action to this court.[2]  On July 22, 2010, the Eastern District of Texas granted a

2    motion to transfer.[3]  On August 19, 2010, upon learning that the Texas case had been transferred to

3    this court, this court lifted its stay.  This court subsequently related and consolidated the two actions,

4    realigning SRA as the plaintiff and Google, AOL, Yahoo!, IAC,[4] and Lycos as defendants.[5]

5           The asserted patents claim research tools and methods for computerized indexing, search and

6    display of documents.  As described in the Summary of Invention of the '352 Patent,

7           [t]he invention begins with an existing database and indexes the data by creating a
8           numerical representation of the data. This indexing technique called proximity
            indexing generates a quick-reference of the relations, patterns, and similarity found
9           among the data in the database. Using this proximity index, an efficient search for
            pools of data having a particular relation, pattern or characteristic can be
10          effectuated. This relationship can then be graphically displayed.

            There are three main components to the invention; a data indexing applications
11          program, a Computer Search Program for Data Represented by Matrices
            ("CSPDM"), and a user interface. Various indexing application programs,
12          CSPDMs, and user interface programs can be used in combination to achieve the
            desired results. The data indexing program indexes data into a more useful format.
13          The CSPDM provides efficient computer search methods. The preferred CSPDM
            includes multiple search subroutines. The user interface provides a user friendly
14          method of interacting with the indexing and CSPDM programs. The preferred user
            interface program allows for easy entry of commands and visual display of data via
15          a graphical user interface.

16   Claim 1 of the '352 Patent is illustrative:

17          1. A research system for computerized searching of textual objects, wherein the
            textual objects are stored in a database, comprising:
18
                   a computer processor for processing commands and manipulating the textual
19          objects stored in the database;

20                 a means, coupled to the computer processor, for entering the commands to be
            processed by the computer processor;
21
                   a means for indexing the textual objects using the computer processor and the
22          entered commands comprising:
            a means for creating vectors representing the textual objects wherein the vectors are
23

---

24          [2]     See 8/22/09 Order Regarding Motion to Dismiss, Transfer or Stay.  (N.D. Cal. Docket
     No. 134).
25
            [3]     See 7/22/10 Memorandum Opinion and Order.  (E.D. Tex. Docket No. 323).
26
            [4]     SRA and IAC have settled their dispute, and IAC has voluntarily dismissed its claims
27   against SRA and STI.  (N.D. Cal. Docket No. 145).

28          [5]     See 10/15/10 Order Denying Motion to Stay Pending Reexamination.  (N.D. Cal. Docket
     No. 208).

created using non-semantical relationships that exist among or between the textual objects;

a means for searching the indexed textual objects using the vectors to obtain a pool of textual objects comprising a means for vector searching of the indexed textual objects using the vectors;

a graphical user interface means for converting the pool of textual objects into a graphical view comprising:

a means for forming a box to graphically represent one or more of the textual objects in the pool ; and

a display, operably coupled to the graphical user interface means, for showing the graphical view including any of the boxes formed.

SRA accuses various Google analyses of hyperlink relationships between documents on the World Wide Web that assist in locating documents relevant to a user's search query.  Among these analyses are Google's "Page Rank" algorithm and successors to PageRank, including "IndyRank" and "Nearest Seeds."  SRA also charges other Google analyses including spam analyses such as "Y-Score," "E-Score," and "SpamRank," as well as other analyses such as "Ascorer," that allegedly use Page Rank and other link analyses together with semantic or other non-link analyses as inputs to the calculation of further rankings or scores.

## II.       SRA'S MOTION TO COMPEL SOURCE CODE AND TECHNICAL DOCUMENTS

SRA seeks to compel the production of source code and technical documents concerning each accused Google analysis.  In its papers, SRA specifically demands that:

1.   Google should produce in electronic form with functional links the entire Goowiki, Q-wiki, spam-wikis and any other wiki or database that contains documents concerning link analysis or the accused instrumentalities.

2.   Google should produce source code for all modules necessary to operate the Google search engine or relevant to any accused instrumentality (as opposed to just those link analyses that Google prefers to disclose), including but not limited to:

- The ascorer, final scorer, twiddlers, classifiers, superroot, webmixer, and USSR modules, and any other modules related to ranking/locating a webpage to determine if it will be returned in response to a query;

- Semantic inputs (i.e., word indexes and signals) for the search modules;

- Programming as to how inputs to the search modules are weighted in ranking or locating objects to return in response to a query;

- Sponsored links programming that incorporates link analyses into its search results;

- Link spam algorithms; and

1      •     All machine-learned algorithms and machine-learning systems involving analyses of
          link data.

2      Google should identify any file or process within these categories that it does not produce
3      and explain why it is not relevant.

4      3.    Google should produce all sample data structures requested in SRA's November 5, 2009
          letter.

5

6      4.    Google should produce the diagrams (such as GLE 0281146) of its search engine's processes
          as requested in SRA's November 5, 2009 letter.

7      5.    Google should update its responses to Interrogatory Nos. 9, 15, 16, 18, and 19 with the
          following:

8

9      •     Written flowcharts and narratives for each discrete computer process (and annotations
          to the source code) relevant to all link analysis (as opposed to just PageRank 4.0 and
          PageRank-NS currently being disclosed) used by Google, including any previously
10        undisclosed link spam algorithm/values or machine learned algorithms/values.  This
          includes analyses that analyze any value that incorporates link data.  For example, if
11        Y-Score uses PageRank as an input, then the operation and method of calculation
          must be disclosed for Y-Score;

12

13     •     Step-by-step accounts of the computer <u>calculations</u> of each rank;

14     •     Additional detail regarding IndyRank, including details of each step regarding the
          creation of site/host/domain graphs and the operation of Anchor++ (including how
15        affiliate clusters are created and used);

16     •     Detailed accounts of process steps and the link data structures (including data
          structures that include values that incorporate other values concerning link data and
          temporary/transient data structures) used and created for scoring and locating
17        documents in response to a query, including but not limited to all search modules,
          ascorer, final scorer, twiddlers, classifiers, Superroot, webmixer, USSR, any
18        weighting function of inputs to scoring modules related to ranking/locating a web
          page to determine if it will be returned in response to a query; and

19

20     •     Descriptions of all Ids used by the Google search engine, including but not limited to
          the identifiers used for specifying webpages in response to a query.[6]

21     At the hearing, however, SRA limited its request to production of all source code relating to the

22     Google accused analyses[7] and documents relating to the accused Google analyses from certain

23     Googles wikis, which SRA identifies as including "GooWiki," "Q-wiki (search quality wiki)," the

24     "Google Developer's Handbook," and any other wiki used by Google's spam, indexing, or search

25     departments.[8]

26     ─────────────────

27     [6]     *See* SRA's Motion to Compel at 1-6.

28     [7]     The court understands SRA's limitation to source code to include human readable code
       for 51 data structures alleged by SRA to contain hyperlink information used to generate link analyses.

       [8]     12/14/10 Hearing Tr at 37:15-25; 38:1-4; 39: 9-16; 40:7-20, 24-25; 41:1-25.

1      In support of its request, SRA argues that the code and documents requested describe data
2  structures and computer logic processing steps in each analysis that SRA accuses of infringement.
3  According to SRA, these data strucures and processing steps, and thus the analyses in which they are
4  included, are each specifically accused of practicing one or more claim limitations of the asserted
5  patents.   SRA notes that Claim 27 of the '352 patent specifically claims the use of both non-
6  semantic and semantic methods.  According to SRA, this requires discovery of not just the link
7  analyses themselves but also analyses that use the results of both link and non-link analyses.  SRA
8  adds that it is not possible to limit production to particular portions of the accused analyses because
9  Google has failed to disclose what components, if any, are unrelated to the practice of any asserted
10  claim limitations as identified in SRA's infringement contentions.  Even if Google had disclosed
11  these components, SRA argues, the components are necessary to establish the relative value of the
12  various components for purposes of calculating damages.

13      With respect to wiki documents, Google responds that the wikis irrefutably contain numerous
14  documents that are unrelated to the accused analyses and thus SRA's request for all wiki documents
15  is overbroad.  Google also disputes the relevance of certain accused analyses, such as "SpamRank"
16  and "GoodLinkers," because they are not in production and thus "dead ends." Google disputes the
17  relevance of other accused analyses such as "PlaceRank" and "Worst_page_rank," because they do
18  not use the results of any link analysis or themselves conduct any link analysis.  Google also notes
19  that its has nevertheless produced numerous wiki documents, including various wiki "contents"
20  pages. With respect to source code, Google responds that it has agreed to produce "a large number of
21  source code files."[9]  Google adds that SRA's demands for the entire code base for its search engine
22  calls for many millions of lines of code written by hundreds of engineers over the last 14 years and
23  includes competitively sensitive trade secrets relating to areas not relevant to this case.

24      It is well-established that the federal discovery rules reflect a broad and liberal approach to

25

26

27      [9]      According to Google, as early as January 8, 2010, Google pledged to make available for
28  inspection approximately 875 source code files for numerous Google systems and processes.  Google
specifically notes that, with respect to the link spam analysis E-Score, it has produced all three source
code files that it has been able to locate. Google also notes that it has made available source code and
data files for Y-Score.

1   achieving the goal of informing parties in civil cases of all material facts prior to trial.[10]  This

2   standard applies with no less force in patent cases.  In patent cases in this court, even before

3   discovery requests are served, parties must make substantial disclosures, including disclosures

4   relating to the operation of the Accused Instrumentalities.[11]  It is nevertheless equally well-

5   established that civil discovery in both patent and non-patent cases is always subject to "ultimate and

6   necessary boundaries" imposed by the trial court.[12]

7        Google does not dispute the relevance of documents concerning each of what it agrees is a

8   link analysis (e.g. Page Rank).  Instead Google argues that analyses other than link

9   analyses–including semantic analyses that analyze a document's words and other content– are

10  distinguished in the asserted patents and thus irrelevant.  But even if the court's ultimate claim

11  construction establishes that non-link analyses do not practice any limitation of any asserted claim,[13]

12  the operation of such analyses may nevertheless be material for purposes of comparing the relative

13  value of infringing and non-infringing analyses within Google's search functionality under a

14  *Georgia-Pacific*  reasonable royalty analysis.[14]  Furthermore, that one or more of these analyses was

15  a "dead end" or  "experimental," as Google alleges, is irrelevant; there is no "dead end" or

16  "experimental" exception to the liability for infringement under 35 U.S.C. § 271.

17        As to the burden of a wiki production, beyond generic attorney argument, Google offers no

18  concrete, particularized evidence regarding the undue burden of production of all requested

19  documents from each of the wikis identified by SRA.  This leads the court to conclude that no such

20  undue burden is present, and that a production is warranted of all documents concerning all accused

21

22        [10]    *See Herbert v Lando*, 441 U.S. 153, 177, 99 S.Ct. 1635, 60 L.Ed.2d 115 (1979).

23   [11]    *See* Patent L.R. 3-4(a) (requiring a party defending a claim of infringement to make
     available "[s]ource code, specifications, schematics, flow charts, artwork, formulas, *or* other
24   documentation sufficient to show the operation of any aspects or elements of an Accused Instrumentality
     identified by the patent claimant in its Patent L.R. 3-1(c) chart.").

25   [12]    *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S.Ct. 2380, 57 L.Ed.2d 253
26   (1978) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507, 67 S.Ct. 385, 91 L.Ed. 451 (1947)).

27        [13]    Claim construction is, of course,  a matter for the District Judge, not the undersigned.
     *See* General Order 42 ¶ 5.

28        [14]    *See, e.g. Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1332 (Fed. Cir. 2009)
     (noting that *Georgia-Pacific* Factor 13 requires an analysis of "[t]he portion of the realizable profit that
     should be credited to the invention as distinguished from non-patented elements").

1   Google analyses (including link analyses themselves, inputs to any link analysis, and further

2   analyses that use data from such link analyses, (including but not limited to Y-Score, E-Score,

3   Ascorer, superroot, twiddlers and classifiers) from all Google wikis from Google spam indexing and

4   search and search departments.[15]  Google shall make this production no later than February 28,

5   2011.[16]

6          As to source code, there is no serious question that source code for all Google link analyses

7   and further analyses of the results of link analyses is material to SRA's contention that these

8   analyses practice one or more limitation of SRA's asserted patent claims.   And once again, beyond

9   attorney argument, Google offers no <u>evidence</u>–no declaration, no deposition testimony,

10  nothing–providing a concrete or particularized assessment of the risk or burden of such a production.

11  The court nevertheless appreciates the potential harm from the disclosure of a firm's proprietary

12  source code, even with the safeguards offered by a protective order.[17]  The appropriate balance

13  between these competing concerns at this time is to require that, no later than February 28, 2011,

14  Google produce all source code for each accused link analysis, any input to any link analysis (such

15  as the "Surfer" algorithm), and any components of any further analysis (including but not limited to

16  Y-Score, E-Score, Ascorer, Superroot, twiddlers, and classifiers) that use the results of any link

17  analysis.  With respect to any other component of any further analysis that use the results of any link

18  analysis (including components related to any semantic analysis or the weighting of various inputs,

19  such as "Lightweight Scoring"), no source code need be produced at this time.  But if Google's wiki

20  document or other document production by February 28, 2011 does not sufficiently describe the

21  operation of these other components, the court will entertain a motion to compel and motion for

22

23          [15]  *Cf. Cryptography Research, Inc. v. Visa Int'l Serv. Ass'n,* Case No. C 04-4143 JW (HRL), 2005 WL 1787421, at *2 (N.D. Cal. Jul. 27, 2005) (ordering production of "enough documentation to sufficiently show the operation of any aspects or elements of an Accused Instrumentality").

24

25          [16]  Alternatively, Google may simply produce electronic copies of the wikis at issue.  In any event, no later than February 14, 2011, Google also shall provide a list of all its wikis from its spam, indexing and search departments and describe the content of each of those wikis in sufficient detail to determine their materiality.  *See* 12/14/10 Hearing Tr. at 65:21-25; 66:1-16.   No later than February 28, 2011, Google also shall produce the entirety of the "Mergeserver" program.  *See id.* at 48:4-13.

26

27

28          [17]  *See, e.g., Viacom Int'l, Inc. v. YouTube, Inc.*, 253 F.R.D. 256, 260 (S.D.N.Y. 2008) (noting that "the protections set forth in the stipulated confidentiality order are careful and extensive, but nevertheless not as safe as nondisclosure "of proprietary source code").

ORDER, *page 8*

1   sanctions by SRA on shortened time.

2   **III.     GOOGLE'S MOTION FOR PROTECTIVE ORDER**

3         Google moves for protective order (1) to permit Google to locate responsive documents

4   (including technical documents) through electronic searching as opposed to manual searching as

5   SRA has insisted and (2) to protect from disclosure the nature, identity, and computation of Google's

6   semantic "topicality" signals.[18]

7         With respect to (1), Google asks that the court order SRA to work with Google in good faith

8   to arrive at a set of relevant and appropriate search terms.  Google notes that plaintiff SRA has

9   propounded more than 300 document requests.  Google also notes that SRA's infringement

10  contentions span almost 500 pages, assert 64 claims from 3 patents, and accuse 118 Google features,

11  products, and systems of infringement.[19]  Given the volume of material required by SRA's demands,

12  Google argues that electronic searches based on keywords are required to avoid an undue burden in

13  producing responsive documents.  But beyond these attorney arguments, Google once again offers

14  no evidence to support its undue burden claims.  In particular, Google fails to serve even a single

15  declaration from a competent witness describing the resources required to complete a manual, as

16  opposed to electronic, search of documents responsive to SRA's requests.  As a result, no estimate of

17  the number of hours, business distraction, or cost of production is included in the record.  Nor does

18  the record include any specific proposal for a keyword search (including, for example, the proposed

19  keywords themselves and the comparative results of a statistically significant split sample of one or

20  more document sources or custodians) that demonstrates the efficacy of the proposed search as

21  opposed to manual review.  The court is thus left to presume undue burden, as opposed to evaluating

22  burden in light of an evidentiary record.  This the court will not do.[20]

23  _____

24  [18]     In its original motion, Google further sought to protect the precise identity of certain key Google websites (i.e. "seeds").  At the hearing, however, both SRA and Google represented this issue

25  has been resolved, or at a minimum "tabled."  12/14/10 Hearing Tr. at 51:14-23.  In light of these representations, the court denies this element of Google's motion.

26  [19]     At argument, the parties represented that the number of asserted claims has been reduced

27  to 20, and that the District Judge has ordered a further reduction to 10 asserted claims after the issuance of the claim construction.  12/14/10 Hearing Tr. at 10:19-25; 11:1-11; 69:19-25; 70:15-16, 23-25.

28  [20]     The parties remain free, of course, to negotiate a set of electronic search terms, and the court encourages them to do so.  To the extent such negotiations prove fruitless, and it can provide some particularized evidence of the burden of a manual review of its documents, Google may again move for

With respect to (2), Google argues extensively that various claims in the asserted patents exclude analyses other than link analyses including semantic topicality analyses. But there is no genuine dispute that Google's semantic topicality signals, like the accused Google link analyses, can influence Google's search results and hence its search-related revenue. As a result, as noted above, even if the court's claim construction establishes that semantic topicality signals falls outside the scope of the asserted claims, discovery of these signals is nevertheless appropriate for purposes of a *Georgia-Pacific* reasonable royalty analysis. Google's motion for protective order is therefore denied.

**IV. SRA'S MOTION TO COMPEL NON-PARTY STANFORD UNIVERSITY TO COMPLY WITH SUBPOENA**

SRA moves to compel seven categories of document requests included in a subpoena to Stanford served on July 1, 2010. The first five requests relate to five patents assigned by Google employees to Stanford (and all of which explicitly cite at least one of the asserted patents). The sixth request seeks documents relating to Egger, his patents, his patent applications and his publications. The seventh request relates to agreements between Stanford and Google and its co-founders Larry Page and Sergey Brin.

On July 15, 2010, Stanford served various objections to the subpoena. On October 29, 2010, Stanford produced 109 pages of documents. Stanford produced an additional 861 pages thereafter. All of Stanford's documents were produced from its Office of Technology Licensing. SRA nevertheless complains that the production is deficient. SRA specifically contends that Stanford has not produced any internal memos, any evaluations of the alleged improvements of these five patents over the prior art, including the asserted patents, any letters or other correspondence, or any other information on the prosecution of the five patents that cite the asserted patents.

Stanford's only objection in its papers is to dispute the relevance of the first five requests relating to five patents citing the asserted patents. But documents regarding these citing references are material to at least Google's pre-suit awareness of the asserted patents and thus SRA's willfulness and indirect infringement claims. Stanford's papers offer no other objection to the first five requests and offer no objection at all regarding the remaining requests. Accordingly, Stanford's

relief.

objections to SRA's subpoena (other than its objection to production of privileged communications and attorney work product) are overruled.  Stanford shall produce any additional documents responsive to SRA's subpoena no later than February 28, 2011.

## V.    SRA'S MOTION TO COMPEL DISCOVERY REGARDING THE LOCATION OF ACCUSED ACTIVITY

In an effort to obtain discovery related to the expected defense by Google and AOL that activity accused of infringing SRA's asserted method claims occur solely outside the United States, SRA served a document request in May 2010 and an interrogatory in June 2010 on the issue. Specifically, SRA requests documents reflecting the "[l]ocation of Google's search related servers and the volume and origin of searches processed through these servers."  SRA further requests that Google and AOL respond to the following interrogatory:

> Please identify (1) each and every central processing unit (CPU) used to calculate each of PageRankNS, PageRank, and IndyRank and (2) to the extent that any such CPU is outside the United States, or any other activity accused of infringement is performed outside of the United States, please describe in detail the precise activity and the precise location of the activity and any computers that perform the activity. "Identify" with respect to a CPU or computers, both within and without the United States, includes providing the following information: (1) the ranking algorithm that the CPU or other processor was used to calculate; (2) the manufacturer of the CPU or other processor, (3) the name of the CPU; (4) the model number of the CPU; and (5) the physical location (including address and country) of the CPU used to calculate PageRank NS, PageRank or IndyRank when used to calculate those ranks.  If a CPU is used to calculate multiple ranks, please segregate the identifying information for each rank calculation.  Non-limiting CPU model examples manufactured by Intel include: Pentium II, Pentium II Xeon, Pentium III, Pentium III Xeon, Pentium 4, Xeon, Itanium, Itanium 2, Pentium M, Pentium D, Core, Core 2, Core i5, Core i7, and Atom.  Non-limiting CPU model examples manufactured by AMD include: Athlon, Duron, Athlon XP, Sempron (K7), Opteron (K8), Athlon 64, Sempron (K8), Turion 64, Athlon 64 X2, Turion 64 X2, Opteron (K10), Phenom FX/X4/X3, Athlon 6-series, Athlon 4-series, Athlon X2, Sempron (K10), Opteron (K10), Phenom II, and Athlon II.  To the extent that other manufacturers were used by Google, please identify those manufacturers and the processor families used.

According to SRA, notwithstanding an order by the court in the Eastern District of Texas dating from September 2008, which required that the parties produce "a copy of all documents . . . relevant to the pleaded claims or defenses involved in this action," as well as Plaintiff SRA's own discovery requests, Google and AOL have raised only objections and produced no responsive discovery to date.

SRA seeks an order either compelling Google and AOL to provide discovery responsive to its

1    requests or precluding Google and AOL from asserting any defense at trial based on the location of

2    accused activity outside the United States.

3          The location of the accused Google and AOL activity is relevant.  A "process cannot be used

4    within the United States as required by section 271(a) unless each of the steps is performed within

5    this country."[21]  Google and AOL again offer no evidence beyond attorney argument regarding the

6    burden of responding and indeed represent in their papers that they will produce "the very

7    information that SRA moves to compel."  SRA's motion is therefore granted as follows.  No later

8    than February 28, 2011, Google and AOL shall produce documents sufficient to show what accused

9    activity is conducted inside the United States and what accused activity is conducted outside the

10   United States, including the location of each of its search-related servers and the volume of search

11   queries processed on those servers.  Alternatively, Google and AOL may provide such information

12   in a supplementary interrogatory response.[22]

13   **VI.    SRA'S MOTION TO COMPEL DAMAGES DISCOVERY**

14         SRA moves to compel Google to respond to the following discovery requests related to

15   damages: (1) interrogatories nos. 6 and 12 served in August 2008; (2) document request nos. 13, 19,

16   20, 21, 22, 24, 25 and 26 served in July 2009; and (3) document request nos. 123, 125, 126, 131,

17   133, 137, 139, 141, 142, 143, 144, 145, 147, 148, 150, 151, 152, 153, 154, 155, 156, 161, 164 and

18   165 served in May 2010.

19         Google filed no opposition to SRA's motion.  Instead, in a non-opposition response, Google

20   simply states that it has produced "at least some materials" responsive to the requests. At the

21   hearing, Google confirmed it "was going to produce these documents"[23] and that it did not object to

22   production of the documents and interrogatory responses as requested.[24]

23         SRA's requests have been pending in some cases for over two years.  While Google

24   represents that a complete document production and interrogatory responses are forthcoming, an

25

26         [21]      *NTP, Inc. v. Research in Motion, Ltd.,* 418 F.3d 1282, 1318 (Fed. Cir. 2005).

27         [22]      To the extent SRA seeks a preclusion order based on Google's failure to provide this
         information, SRA should direct its request to the District Judge, not the undersigned.

28         [23]      12/14/10 Hearing Tr. at 82:9.

           [24]      12/14/10 Hearing Tr. at 84:14-21.

order is nevertheless appropriate in light of the substantial delay to date.  SRA's motion is therefore granted.  Google shall respond to the above-specified interrogatories and document requests no later than February 28, 2011.

**VII.   SRA'S MOTION TO COMPEL *FUNCTION MEDIA* DISCOVERY AND TRANSCRIPT**

SRA moves to compel three categories of discovery: (1) all transcripts of depositions of Google employees, past and present; (2) all expert reports and depositions; and (3) the entire trial transcript from  *Function Media, LLC v. Google, Inc.,* Case No. 2:07-cv-279 (E.D. Tex.).

According to SRA, in the *Function Media* action, Google's percipient and expert witnesses testified at deposition and trial regarding the company's business model, revenues, and licensing history.  Other Google witnesses allegedly described the company's history and development of the same search advertising technology accused of infringement in this case.  SRA argues that this testimony is relevant to damages in this case, especially for determining a reasonable royalty rate, and is therefore discoverable.  SRA also argues generally that the discovery sought is relevant to infringement, willful infringement, and other defenses asserted by Google, including unclean hands and laches.  SRA further represents that Function Media, LLC has confirmed they do not object to SRA's requested production.

Google states that the discovery sought is not relevant because the two cases involve different underlying technologies and patents.  In the *Function Media* action, the patents and technologies relate to user interfaces for formatting and managing advertisements.  Here, the patents and technologies relate to the analysis of non-semantic hyperlink relationships.  Indeed, in an effort to show SRA that the *Function Media* materials are not relevant, Google produced 900 pages of condensed full deposition transcripts from seventeen depositions in that action.

SRA has not made any particularized showing that the additional discovery sought from the *Function Media* action is relevant.  But SRA identifies no specific transcripts or reports that address information material to this case, choosing instead to speculate what the transcripts and reports "likely contain" and ultimately resting its position on the proposition that both lawsuits address "how Google makes its money."  At best, SRA has suggested that both cases generally address Google's overall business models, projected revenues, market share, and profitability for its damages

1  analysis.  Under this reasoning, however, all discovery beyond those already produced taken from a

2  defendant in prior patent infringement cases must necessarily be produced.  SRA cites no authority

3  for such an expansive proposition, and the court can find none.  Furthermore, while SRA represents

4  that Function Media, LLC does not object to its request, it offers no evidence of such consent.  SRA

5  also offers no copy of the protective order from *Function Media* that would demonstrate what steps,

6  if any, Google must be take in the Eastern District of Texas even with Function Media LLC's

7  consent to modify that court's protective order to permit production of the requested materials in this

8  case.[25]  Principles of comity, at a minimum, require more than this.  SRA's motion is therefore

9  denied.

10       IT IS SO ORDERED.

11  Dated:      January 27, 2011

    _____
12  PAUL S. GREWAL
    United States Magistrate Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

---

26      [25]    *Cf. SSL Servs., LLC v. Citrix Sys., Inc.,* Case No. 2:08-cv-158-TJW, 2010 WL 547978,
    at *3 (E.D. Tex. Feb. 10, 2010) ("The burden on Citrix to produce these reports includes petitioning the
27  courts in other cases for a modification of the protective order.  The benefit that SSL will receive is
    minimal.  SSL already has the relevant underlying data and the analyses will be of little value because
28  they come from different experts, relate to different patents, different financial data, and different
    plaintiffs.  The benefit of saving litigation expenses by short-cutting the damages analysis does not
    affect the burden-benefit analysis.").

ORDER, *page 14*