UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

|  |  |
|---|---|
| ) | Case No.: C-08-03172 RMW (PSG) |
| ) |  |
| ) | **ORDER RE PLAINTIFF SRA'S (1)** |
| ) | **MOTION FOR PROTECTIVE** |
| ) | **ORDER; (2) MOTION TO COMPEL** |
| **IN RE GOOGLE LITIGATION** ) | **GOOGLE TO PRODUCE** |
| ) | **DISCOVERY AND FOR** |
| ) | **SANCTIONS; (3) MOTION TO** |
| ) | **COMPEL AOL TO PRODUCE** |
| _____ ) | **DISCOVERY** |

**(Re: Docket Nos. 367, 369, 377)**

In this patent infringement suit, Plaintiff Software Right Archive, Inc. ("SRA") moves:

(1) for a protective order against discovery sought by Defendants Google, Inc. ("Google") and

AOL, Inc. ("AOL") (collectively "Defendants") regarding SRA's standing to pursue its claims;[1]

(2) to compel Google to produce discovery related to damages and for sanctions;[2] and (3) to

compel AOL to produce damages-related discovery.[3]  Google and AOL oppose these motions.

---

[1]   *See* Docket No. 367.

[2]   *See* Docket No. 369.

[3]   *See* Docket No. 377.

Having reviewed the papers and considered the arguments of counsel, the court rules as follows:

(1) SRA's motion for protective order regarding discovery on standing, attorney conduct and the prosecution bar is GRANTED;

(2) SRA's motion to compel Google to produce damages-related discovery and for sanctions is GRANTED; and

(3) SRA's motion to compel AOL to produce damages-related discovery is GRANTED.

## I. BACKGROUND

As discussed in Judge Whyte's December 16, 2010 order,[4] Daniel Egger ("Egger"), a named inventor of United States Patent Nos. 5,544,352; 5,832,494; and 6,233,571 (the "asserted patents") acquired rights to the asserted patents in 1998. Egger then created Software Rights Archive, Inc. ("SRAI") and assigned the asserted patents to that entity. SRAI signed a binding letter of intent with Altitude Capital Partners, LP ("Altitude"). The agreement described in that letter would provide SRAI with funding to enforce the asserted patents, but would give Altitude "control of all settlement, litigation, enforcement and licensing decisions." In preparing to implement this agreement, Egger converted SRAI into SRA – the plaintiff in this lawsuit.

In May 2007, Egger executed a "Membership Interest Purchase Agreement" on behalf of Egger Holdings, Inc. to sell Software Rights Archive, LLC to SRA LLC. SRA LLC is a wholly owned subsidiary of Patent River LLC, which is in turn funded by Altitude and several passive investors. The agreement granted SRA LLC "the sole and exclusive right, power and authority to manage and control all licensing, enforcement, settlement and other commercialization efforts with respect to [Software Rights Archive, LLC] and the Patents without prior consent or approval of" Egger, but also provided that Software Rights Archive, LLC would retain title to the patents, and that SRA LLC would "cause [Software Rights Archive, LLC] to be vested with sole and exclusive ownership and control over the Patents."

On November 21, 2007, SRA filed suit against Google, AOL, Yahoo!, IAC Search & Media, Inc. ("IAC"), and Lycos, in the United States District Court for the Eastern District of

---

[4]   *See* Docket No. 296.

Texas, alleging that each of the asserted patents was infringed.[5]  Google, AOL, Yahoo!, IAC, and Lycos later filed suit against Egger, SRA and Site Technologies, Inc. ("STI") in this court, seeking a declaratory judgment of non-infringement and invalidity of the asserted patents, among other claims.  After  an order by the Eastern District of Texas granting a motion to transfer, Judge Whyte related and consolidated the two actions here, realigning SRA as the plaintiff and Google, AOL, Yahoo!, IAC,[6] and Lycos as defendants.[7]

## II.  LEGAL STANDARDS

"Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense."[8]  However,

> the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
>
> (i)   the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii)  the pary seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.[9]

"A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending  - or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken."[10]  "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or

---

[5]    *See* Docket No. 318.

[6]    SRA and IAC have settled their dispute, and IAC has voluntarily dismissed its claims against SRA and STI.  *See* Docket No. 145.

[7]    *See* Docket No. 190.

[8]    Fed. R. Civ. P. 26(b).

[9]    Fed. R. Civ. P. 26(b)(2)(C).

[10]   Fed. R. Civ. P. 26(c).

1  undue burden or expense."[11]

2                              **III.  DISCUSSION**

3  A.      **SRA's Motion for Protective Order**

4          1.      **Discovery on Standing**

5          SRA moves for a protective order against any further discovery by Google regarding

6  SRA's standing to prosecute this action.  Google and AOL contend that SRA is a sham and seeks

7  discovery regarding the extent of control Altitude exercises over SRA, and in turn, the asserted

8  patents.

9          SRA argues that any such discovery is moot in light of at least two prior court rulings on

10  the issue.  Both the Eastern District of Texas and this court have concluded that SRA owns the

11  asserted patents and that it has standing to bring suit.[12]  During the pendency of Google's first

12  motion to dismiss on standing grounds in Texas, Google was served with more than fifty boxes

13  of documents responsive to its standing-related requests, conducted at least three depositions,

14  and issued numerous third-party subpoenas.  By its motion, SRA does not seek to preclude

15  depositions of Egger or of SRA that will provide Google with a further opportunity to address

16  standing-related issues.  In addition, SRA recognizes that Fed. R. Civ. P. 26(e) requires that SRA

17  supplement its discovery responses in the event it learns that in some material respect that its

18  current standing-related responses are incomplete or incorrect.  To that end, SRA provided a

19  _____

20      [11]   *See id.*

21      [12]   Before transfer of the Texas action to this district, Google disputed whether SRA was an
22  assignee of the asserted patents and therefore whether it had standing to bring suit.  Google
    specifically alleged that there was a defect in SRA's chain of title.  After looking to Delaware's
23  alter ego law, Judge Everingham concluded that the assignment of the patents in 1998 to Egger
    was proper, and that SRA therefore had standing to bring suit.  *See SRA, LLC v. Google, Inc., et*
24  *al.,* Case No. 2:07-cv-511-CE (E.D. Tex.)(Docket No. 138).  Judge Everingham affirmed his
    conclusion once again when he denied defendants' request for reconsideration.  *See Id.* (Docket
25  No. 154).

26      After  transfer of the Texas action to this district (and the consolidation of that action
    with the action pending here), Judge Whyte similarly concluded that "Software Rights Archive
27  LLC holds all important rights in the asserted patents, and thus has standing in this case."  Judge
    Whyte rejected Google's theory of contract interpretation (as applied the "Membership Interest
28  Purchase Agreement") and theory of corporate structure related to parental control of subsidies.

1   supplemental declaration from Altitude's principal, Robert Kramer, who confirmed that the

2   information he provided in his November 2010 declaration in support of SRA's opposition to the

3   motion to dismiss remains current.

4       Google and AOL respond that serving SRA with discovery on the standing issue is

5   entirely proper because standing is a threshold jurisdictional requirement open to review at all

6   stages of the litigation.  While Defendants did challenge SRA's standing to bring the action in

7   two prior motions to dismiss, the discovery now sought was never previously propounded.  It is

8   therefore appropriate, says Defendants, to persist in seeking discovery on this standing issue so

9   that Google may further develop the record for a renewed motion to dismiss, a motion for

10  reconsideration, or later, for appeal because "the factual underpinnings will carry the day."[13]

11      Defendants are right that the discovery sought may be relevant, and standing is certainly

12  subject to review at all stages of the case.  Defendants also correctly state that Judge Whyte's

13  December 16 order did not expressly preclude the further discovery Defendants seek.  But that

14  order clearly resolved that SRA "holds all important rights in the asserted patents, and thus has

15  standing in this case."  Absent some extraordinary showing – a showing not made here – it is

16  unreasonable for Defendants to insist upon still more standing-related discovery.  This is

17  especially true when Defendants complain repeatedly about SRA's unwillingness to narrow this

18  case. In sum, in light of the orders on standing previously entered, the court agrees with SRA

19  that further standing-related discovery, including discovery regarding SRA's dealing with

20  Altitude, is unwarranted.

21      SRA's motion for protective order on this subject is GRANTED.

22      **2.      Discovery on Attorney Conduct and the Prosecution Bar**

23      SRA moves for protective order on certain discovery regarding the conduct of SRA

24  attorney Andrew DiNovo ("DiNovo").

25      Like many others in patent cases, the protective order in this case prohibits any person

26  who has had access to a party's confidential information from participating in reexamination

27
        [13]    *Id.* 16:19-20.
28
    Case No. 08-3172 RMW (PSG)
    ORDER RE SRA'S MOTION FOR PROTECTIVE ORDER                                    5

activities related to the asserted patents.

> Attorneys and staff involved in patent prosecution of claims involving methods, apparatus, or systems for computer research tools for indexing, searching and/or displaying data on the Internet and/or through a network shall be ethically walled, in those matters from attorneys and staff with access to PROSECUTION BAR materials.[14]

Google seeks discovery of the nature and extent of DiNovo's access to any of its confidential information obtained during the course of the litigation and to further understand his involvement in reexamination proceeding related to at least one of the asserted patents.

SRA argues that while DiNovo has participated in reexamination, he has not reviewed any of Google's confidential information.  In a sworn declaration, DiNovo explains that as soon as his law firm determined that he would engage in prosecution activity, he undertook not to review so-called "prosecution bar" materials.[15]  He further states that as required under the protective order, he has been "ethically walled" from discussing prosecution activity with members of the litigation team.[16]  Google has noticed the deposition of the lawyer and firm that was involved in the prosecution and reexamination of the asserted patents.  SRA urges that Google will have the opportunity at that deposition to allay any legitimate concerns regarding DiNovo's access, or lack thereof, to any of Google's confidential information.

As SRA notes, DiNovo has provided a declaration explaining his exclusive role in reexamination.  SRA also represents that DiNovo has not been involved, and has not reviewed, any of Google's confidential information.  While Google has suggested that DiNovo has received emails with confidential prosecution bar attached, it has not produced any evidence to

---

[14] *See SRA, LLC v. Google, Inc., et al.,* Case No. 2:07-cv-511-CE (E.D. Tex. Docket No. 161).

[15] *See* Docket No. 440.

[16] *See id.  See also* 6/14/2011 Hearing Tr. at 21:19-22:25.

1   that effect.[17]  In the absence of something more than Google's mere concern or speculation that

2   DiNovo and SRA's statements and representations are not trustworthy, the court is not persuaded

3   that it should permit discovery of what is otherwise clearly attorney-client privileged or work-

4   product material.        SRA's motion for a protective order on this subject is GRANTED.

5   **B.   SRA's Motion to Compel Google to Produce Damages Discovery**

6        SRA complains that Google continues to withhold damages-related discovery in violation

7   of Section VI of the court's January 27 order.[18]  SRA again moves to compel production of this

8   discovery and for sanctions.

9        The court will not endeavor to repeat the order in all its detail.  It is sufficient simply to

10  note that the order required that Google respond to interrogatory nos. 6 and 12 and produce

11  documents responsive to document request nos. 13, 19, 20, 21, 22, 24, 25 and 26 served in July

12  2009 and document request nos. 123, 125, 126, 131, 133, 137, 139, 141, 142, 143, 144, 145, 147,

13  148, 150, 151, 152, 153, 154, 155, 156, 161, 164 and 165 served in May 2010.  Google produced

14  technical and financial documents shortly before the February 28, 2011 deadline set by the order.

15  Google did not produce additional documents, however, until after the deadline, in early March

16  and mid-April.  Notwithstanding Google's production of these materials, SRA claims that

17  documents and interrogatory responses have been withheld and its extensive efforts to obtain

18  such discovery have proven futile.

19       In a March 23, 2011 letter to Google, SRA highlighted the deficiencies in Google's

20  production, including:

21   •   Search service agreements with Microsoft (Document Request No. 19);

22   •   Documents relating to how the royalty or the value of the license (in the form of
23        Google stock) was reached between Google and Yahoo! (Document Request No.
         22);

24

25   [17]   As promised at the hearing, the court has reviewed the footnoted material Google points
     to as proof that DiNovo received prosecution bar materials.  Nothing in the materials as
26   presented to the court demonstrates that DiNovo has reviewed or even received any of these
     materials.
27
     [18]   *See* Docket No. 369 at 1.
28

- Documents pertaining to Larry Page, Sergey Brin, and/or Google's discussions with Yahoo! Alta Vista, or Excite concerning the sale, license or use of Page's, Brin's or Google's technology in the late 1990s (Document Request No. 24);

- Documents sufficient to show revenues by month and year, profits by month and year, gross margins by month and year, and net margins by month and year for each of the following: (a) search related advertising; (b) licensing of web search technology; and (c) licensing of search solutions (Document Request No. 25);

- Documents relating to each offer (whether made or received by you) or agreement related to the transfer (including but not limited to licenses and sales) of intellectual property rights encompassing any aspect of the generation or delivery of search results in response to user queries (Document Request No. 26);

- Pricing information for Google's search engine appliance, or any other products that would be covered by the definition of "Accused Products" beyond the search agreements with AOL, Lycos and Yahoo! (See GLE0135978, which states that Google has over 100 companies that it sells search to) (Document Request No. 123);

- Documents relating to an appraisal or valuation of any patent, licenses, royalty, technology transfer, or authorization-to-use agreement (Document Request No. 125);

- Documents concerning Google's licensing policies regarding in-bound and out-bound licensing practices (Document Request No. 126);

- Detailed cost or profit information or any internal accounting records showing all sales, revenue, costs, and profit information from January 1, 2001 to the present. For the Accused Products, please provide product line financial statements indicating the direct costs related to the Accused Products or Services (Document Request No. 133);

- Actual surveys or results concerning the importance of search engine features or performance (Document Request No. 139);

- Search engine ranking or reporting data from any third party sources such as ComScore, Nielsen's or NetRatings (which is now Nielsen) (Document Request No. 141);

- Comprehensive list or data showing the number of searches, impressions or click-throughs processed by Google by month, quarter and year and the number of searches, impressions and click-throughs processed on Google's sites (Document Request No. 142);

- Documents relating to any studies or analyses concerning the basis for pricing differentiation with any competitor's product offerings (Document Request No. 144);

- Monthly/quarterly management financial reports or other types of performance measures, i.e., internal executive/management reports or presentations or reports to its venture capital investors by Google (Document Request No. 148);

- Documents relating to the accounting practices used by Google to account for the

sales, expenses and income for the Accused products (Document Request No. 151);

- Documents relating to Google's market share for search capability/functionality since Google first launched search capability on the Internet (Document Request No. 153);

- Patent licenses, other than GLE0467022 and GLE0466978, concerning license, royalty, technology transfer or authorization-to-use agreements entered into by Google relating to search capability/functionality and any products/services which rely on or are based on search capability/funcyionality (Document Request No. 154);

- Documents relating to policies or practices concerning Google's entry into license, royalty, technology transfer or authorization-to-use agreements since Google first launched search capability on the Internet (Document Request No. 155);

- Search service agreements by third parties, other than for Yahoo!, Lycos and AOL, for Google's search engine appliance (Document Request No. 156);

- Documents relating to the value of patents, intellectual property rights, or technology acquired through the purchase, acquisition, or change of control of any third party business entity, so long as the patent, intellectual property right or technology related to the accused search capability/functionality and the Accused Products (Document Request No. 161);

- Google's agreements with third-parties, other than Stanford, AOL, Lycos and Yahoo! (Document Request No. 164);

- Settlement agreements or negotiations of settlements, other than the one between Google and IP Innovation, in cases involving actual or potential patent infringement (Document Request No. 165);

- Location of Google's search-related servers and the volume and origin of searches processed through these servers (Document Request No. 166 and Interrogatory No. 20).

As further evidence that Google's production remains deficient, SRA refers to a list of trial exhibits from *Function Media, LLC v. Google, Inc., et al.*[19]  The descriptions of certain documents from the list of trial exhibits in that action more than suggest that such documents are responsive to SRA's discovery requests and yet have not been produced.

Google responds simply that even if certain documents responsive to SRA's requests remain outstanding, it has undertaken extensive and reasonable efforts to locate and produce responsive documents in compliance with the January 27 order.  Google also notes that SRA's

---

[19]   Case No. 2:07-cv-279 (E.D. Tex.).

1  reliance on the *Function Media* exhibit list is inappropriate in light of the court's prior ruling

2  denying SRA's motion to compel discovery from the *Function Media* action.

3          Having reviewed SRA's proffer and the declaration of Google paralegal Stephanie

4  Milani describing Google's production efforts, there is little doubt that Google's production is

5  deficient.  As was made clear at the hearing, at a minimum, Google's production relies upon an

6  erroneous conclusion that the court's earlier *Function Media* order insulated all documents

7  produced in *Function Media* even if they are otherwise within the scope of the damages-related

8  discovery in this case that Google was ordered to produce.

9          The history of this dispute is worth noting: Google did not oppose SRA's first motion to

10  compel damages discovery.[20]  Indeed, at the December 14, 2010 hearing, Google confirmed that

11  it "was going to produce these documents"[21] responsive to discovery that had been pending in

12  some cases for over two years.  By its non-opposition and unequivocal pledge at the hearing,

13  Google thus waived whatever legitimate relevance and burden arguments it might have raised.

14  Months later, and only after putting SRA to the expense and burden of motion practice, Google

15  may not now present the opposition it might now wish it had presented earlier.

16          SRA's present motion to compel therefore is granted.  No later than November 18, 2011,

17  Google shall produce all damages-related discovery required by the court's January 27 order.

18  Lest there be any confusion or misunderstanding, <u>all</u> means <u>all</u>.  In addition, SRA's motion for

19  sanctions is granted.  No later than November 18, 2011, counsel for SRA shall serve a

20  declaration setting forth the attorneys' fees and costs incurred in bringing this motion and the

21  motion underlying the court's January 27 order.  All such fees and costs shall be paid by Google.

22  **C.    SRA's Motion to Compel AOL to Produce Discovery**

23          SRA moves to compel AOL to produce documents responsive to document request nos.

24  13, 19, 20, 21, 22, 24, 25 and 26 (served in July 2009) and to provide further responses to

26      [20]   *See* Docket No. 318 at 12.

27      [21]   12/14/10 Hearing Tr. at 82:9.  At the hearing on the present motion, Google reaffirmed
28  this previous commitment.  *See* 6/14/11 Hearing Tr. at 83:17.

1  interrogatory nos. 6 and 12 (served in August 2009).  The discovery sought relates to damages.

2  After determining that AOL's initial production was deficient, SRA then served AOL with new

3  discovery requests on May 5, 2010.  AOL never served any responses to the discovery requests

4  and only produced four pages of additional documents on April 1, 2011.  SRA contends that

5  AOL's production and interrogatory responses remain deficient.

6        AOL responds that SRA failed to meet and confer before filing the instant motion.  It

7  confirms that in February and October of 2009, it produced over 90,000 pages of responsive

8  documents.  These productions were made even before SRA served AOL with document

9  requests and they included financial, advertising/promotion documents as well as documents

10  related to damages.  Beginning on March 31, 2011, AOL supplemented its production by serving

11  updated revenue summaries and other financial and advertising/promotion documents for the

12  post-2009 time period.  Lastly, AOL states it has no record of having received the document

13  requests served in July 2009.

14        Based on the arguments presented and in consideration of both SRA's legitimate need for

15  this discovery and the burden to AOL from producing it, the court rules as follows:

16        (1)     No later than November 18, 2011, AOL shall supplement its responses to

17  interrogatory nos. 6 (seeking information regarding AOL's gross revenue, expenses and profits

18  from January 1, 2001 to the present, on a year-by-year and quarterly basis and identifying each

19  source of business activity from which the revenue was derived and the amount of revenue

20  attributable to that revenue source) and 12 (seeking a list of all persons or entities for which

21  AOL has manufactured, sold, offered to sell, licensed, or offered to license AOL's products or

22  services relating to search engine technology).

23        (2)     No later than November 18, 2011, AOL shall produce all documents responsive

24  to document request nos. 125, 133, 136, 138, 142, 148, 155.

25  ### III.  CONCLUSION

26        For the foregoing reasons, (1) SRA's motion for protective order is GRANTED; (2)

27  SRA's motion to compel and for sanctions for failure to produce damages-related discovery is

28

1  GRANTED; and (3) SRA's motion to compel AOL to produce damages-related discovery is

2  GRANTED.

3     **IT IS SO ORDERED**.

4

Dated:     October 31, 2011

5

6                                        PAUL S. GREWAL
                                         United States Magistrate Judge
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28